JEROME J. SCHLICHTER (SBN 054513)
jschlichter@uselaws.com
MICHAEL A. WOLFF (admitted *pro hac vice*)
mwolff@uselaws.com
SEAN E. SOYARS (admitted *pro hac vice*)
ssoyars@uselaws.com
STEPHEN M. HOEPLINGER (admitted *pro hac vice*)
shoeplinger@uselaws.com
ETHAN D. HATCH (admitted *pro hac vice*)
ehatch@uselaws.com
SCHLICHTER, BOGARD & DENTON LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone:  (314) 621-6115
Facsimile:  (314) 621-5934
*Counsel for Plaintiffs*

WILLIAM A. WHITE (SBN 121681)
wwhite@hillfarrer.com
HILL, FARRER & BURRILL LLP
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Facsimile:  (213) 620-4840
*Local Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### (Western Division)

| | |
|---|---|
| CLIFTON W. MARSHALL, ET AL.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>NORTHROP GRUMMAN CORP., ET AL.,<br><br>    *Defendants*. | Case No. 16-CV-6794 AB (JCx)<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS [DOC. 45]<br><br>DATE:  January 23, 2017<br>TIME:   10:00 a.m.<br>Courtroom 7B – 7th floor<br><br>Hon. André Birotte Jr. |

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

## TABLE OF CONTENTS

I.      Introduction ........................................................................... 1

II.     Background............................................................................ 2

III.    Standards of Review............................................................. 3

IV.     Argument .............................................................................. 6

   A.   Plaintiffs' unlawful payment claims are timely. ........................ 6

      1.   Judicial estoppel bars Defendants' continuing violation argument. ........ 6

      2.   Defendants have not shown "actual knowledge." ................... 7

      3.   *Northrop* tolled the statute of limitations............................. 10

      4.   The six-year limitation also does not bar Plaintiffs' claims. ............... 11

   B.   The complaint states claims based upon payments of Plan assets to Northrop (Counts I, IV, V)..................................................... 13

   C.   Count II states a claim based on excessive administrative fees................ 17

   D.   Count III states plausible claims as to the Emerging Markets Fund. ........ 21

   E.   Plaintiffs have Article III standing to assert all of their claims. .............. 23

   F.   The complaint alleges that Northrop acted as a fiduciary and failed to monitor the executives it appointed to the committees......................... 24

V.      Conclusion.......................................................................... 25

NO. 16-CV-6794-AB (JCX)

# TABLE OF AUTHORITIES

**CASES**

*Albano v. Shea Homes LP*,
  634 F.3d 524 (9th Cir. 2011) ....................................................................... 12, 13

*Allen v. GreatBanc Trust Co.*,
  835 F.3d 670 (7th Cir. 2016) ........................................................................ 4, 5, 15

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974) ................................................................................ 10, 11, 12, 13

*Arizona State Carpenters Pension Trust Fund v. Citibank*,
  125 F.3d 715 (9th Cir. 1997) ........................................................................ 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 3

*Barboza v. California Association of Professional Firefighters*,
  799 F.3d 1257 (9th Cir. 2015) ...................................................................... 5

*Baughman v. Walt Disney World Co.*,
  685 F.3d 1131 (9th Cir. 2012) ...................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 1, 3

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ........................................................ 4, 5, 15, 19, 24

*Cafasso v. General Dynamics C4 Sysems*,
  637 F.3d 1047 (9th Cir. 2011) ...................................................................... 1

*Carter v. San Pasqual Fiduciary Tr. Co.*,
  No. 15-01507-JVS, 2016 U.S.Dist.LEXIS 163017 (C.D.Cal. Apr.
  18, 2016) ...................................................................................................... 25

*Catholic Social Services. v. INS*,
  232 F.3d 1139 (9th Cir. 2000) ...................................................................... 10, 11

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983) ..................................................................................... 10

*Fish v. Greatbanc Trust Co.*,
  749 F.3d 671 (7th Cir. 2014) ........................................................................ 9

*Gelardi v. Pertec Computer Corp.*,
  761 F.2d 1323 (9th Cir. 1985) ...................................................................... 25

*George v. Kraft Foods Global, Inc.*,
  641 F.3d 786 (7th Cir. 2011) .............................................................. 17, 18, 19, 20

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
  465 F.3d 1123 (9th Cir. 2006) ............................................................. 23

*Haas v. Pittsburgh Nat'l Bank*,
  526 F.2d 1083 (3d Cir. 1975) ............................................................. 24

*Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*,
  530 U.S. 238 (2000) ........................................................................ 5, 6

*Harris v. Amgen*,
  573 F.3d 728 (9th Cir. 2009) ............................................................. 23

*Howard v. Shay*,
  100 F.3d 1484 (9th Cir. 1996) ................................................ 4, 5, 15, 22

*Jones v. Harris Assocs. L.P.*,
  559 U.S. 335 (2010) ........................................................................... 20

*Joseph v. Wiles*,
  223 F.3d 1155 (10th Cir. 2000) .......................................................... 13

*Kruger v. Novant Health, Inc.*,
  131 F.Supp.3d 470 (M.D.N.C. 2015) ........................................... 17, 21

*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of
  Nassau County, Inc.*,
  558 F.Supp.2d 378 (E.D.N.Y. 2008) .................................................... 8

*LaRue v. DeWolff, Boberg & Associates*,
  552 U.S. 248 (2008) ............................................................................ 23

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  No. 07-9329, 2014 U.S.Dist.LEXIS 139001 (S.D.N.Y. Sep. 30,
  2014) ..................................................................................................... 8

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) .............................................................................. 6

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
  692 F.3d 983 (9th Cir. 2012) ................................................................ 7

*Munoz v. Ashcroft*,
  339 F.3d 950 (9th Cir. 2003) .............................................................. 12

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) .............................................................................. 6

*Patelco Credit Union v. Sahni*,
  262 F.3d 897 (9th Cir. 2001) ................................................................ 5

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) .............................................................................. 4

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

**PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION TO DISMISS**

*Penaloza v. Select Portfolio Servicing*,
   No. 14-2571-AB, 2014 U.S.Dist.LEXIS 173806 (C.D.Cal. Dec. 8,
   2014) ................................................................................................. 3, 21

*Perez v. City Nat'l Corp.*,
   176 F. Supp.3d 945 (C.D.Cal. 2016) .................................................... 5

*Pilkington PLC v. Perelman*,
   72 F.3d 1396 (9th Cir. 1995) ................................................................ 4

*Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*,
   919 F.2d 1216 (7th Cir. 1990) .............................................................. 9

*Reich v. Compton*,
   57 F.3d 270 (3d Cir. 1995) .................................................................... 5

*Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins.
   Co.*,
   311 F.3d 581 (3d Cir. 2002) .................................................................. 8

*Ringgold Corp. v. Worrall*,
   880 F.2d 1138 (9th Cir. 1989) .............................................................. 9

*Rivera v. Peri & Sons Farms, Inc.*,
   735 F.3d 892 (9th Cir. 2013) ................................................................ 8

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
   642 F.3d 560 (7th Cir. 2011) .............................................................. 10

*Sheppard v. David Evans & Assoc.*,
   694 F.3d 1045 (9th Cir. 2012) .............................................................. 3

*Sprint Communications Co. v. APCC Services, Inc.*,
   554 U.S. 269 (2008) ............................................................................ 24

*Tibble v. Edison Int'l*,
   135 S.Ct. 1823 (2015) ............................................................ 2, 4, 6, 12

*Tibble v. Edison Int'l*,
   No. 10-56406, 2016 U.S.App.LEXIS 22366 (9th Cir. *en banc* Dec.
   16, 2016) ................................................ 2, 4, 5, 6, 12, 17, 18, 21, 22

*Tibble v. Edison Int'l*,
   729 F.3d 1110 (9th Cir.), *vacated on other grounds*, 135 S.Ct. 1823
   (2015) ........................................................................................ 9, 10, 21

*Tosti v. City of Los Angeles*,
   754 F.2d 1485 (9th Cir. 1985) ............................................................ 10

*Tussey v. ABB, Inc.*,
   746 F.3d 327 (8th Cir. 2014) .................................................. 17, 18, 19

*Urakhchin v. Allianz Asset Mgmt. of Am., LP*,
   No. 15-1614-JLS, 2016 U.S.Dist.LEXIS 104244 (C.D.Cal. Aug. 5,
   2016) ..................................................................................................... 8

NO. 16-CV-6794-AB (JCX)

*Waller v. Blue Cross of California*,
  32 F.3d 1337 (9th Cir. 1994) ............................................................................... 9

*White v. Chevron Corp.*,
  No. 16-0793, 2016 U.S. Dist. LEXIS 115875 (N.D.Cal. Aug. 29,
  2016) ............................................................................................... 15, 19, 20

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*,
  668 F.2d 1014 (9th Cir. 1981) ....................................................................... 11, 12

*Williams v. Cavalli*,
  No. 14-6659-AB (JEMx), 2015 U.S.Dist.LEXIS 34722 (C.D.Cal.
  Feb. 12, 2015) ................................................................................................. 3

*Young v. GM Inv. Mgmt. Corp.*,
  325 F.App'x 31 (2d Cir. 2009) ........................................................................... 20

**STATUTES**

15 U.S.C. §77m ............................................................................................... 13

29 U.S.C. §1002(14) .......................................................................................... 5

29 U.S.C. §1002(21)(A) ..................................................................................... 24

29 U.S.C. §1002(21)(A)(i) ................................................................................. 25

29 U.S.C. §1002(34) ........................................................................................... 2

29 U.S.C. §1102(a) ........................................................................................... 24

29 U.S.C. §1103(c)(1) ....................................................................................... 20

29 U.S.C. §1104 .................................................................................................. 5

29 U.S.C. §1104(a)(1)(A) ............................................................................... 4, 14

29 U.S.C. §1104(a)(1)(A)(ii) ............................................................................. 20

29 U.S.C. §1104(a)(1)(B ..................................................................................... 5

29 U.S.C. §1106 ............................................................................................... 1, 5

29 U.S.C. §1106(a) ......................................................................................... 5, 15

29 U.S.C. §1106(a)(1)(A) ................................................................................. 15

29 U.S.C. §1106(a)(1)(C) .............................................................................. 15, 20

29 U.S.C. §1106(a)(1)(D) ................................................................................. 15

29 U.S.C. §1106(b) ........................................................................................ 5, 16

29 U.S.C. §1106(b)(1) ..................................................................................... 5, 16

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION TO DISMISS

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

29 U.S.C. §1106(b)(2) ..................................................................... 13, 16, 17

29 U.S.C. §1108 ......................................................................................... 5

29 U.S.C. §1108(b) ................................................................................... 15

29 U.S.C. §1108(b)(2) ............................................................................... 20

29 U.S.C. §1108(c) ................................................................................... 15

29 U.S.C. §1109(a) ......................................................................... 3, 6, 24

29 U.S.C. §1113 ....................................................................................... 12

29 U.S.C. §1132(a)(2) ................................................................................ 3

29 U.S.C. §1132(a)(3) .......................................................................... 3, 23

29 U.S.C. §1132(a)(3)(B) ........................................................................... 6

**RULES**

Fed.R.Civ.P. 8(a)(2) ................................................................................... 3

**REGULATIONS**

29 C.F.R. §2509.75-8 (FR-17) ................................................................ 25

29 C.F.R. §2550.408b-2(e)(1) ................................................................... 5

Reasonable Contract Or Arrangement Under Section 408(b)(2), 72
    Fed.Reg. 70988 (Dec. 13, 2007) ........................................................ 17

**OTHER**

DOL Adv. Op. 97-15A. ........................................................................... 17

Eugene F. Fama & Kenneth R. French, *Luck Versus Skill in the Cross-
    Section of Mutual Fund Returns*, 65 J.FIN. 1915 (2010) .................... 21

RESTATEMENT (THIRD) OF TRUSTS §90 ............................................ 21, 22

William F. Sharpe, *The Arithmetic of Active Management,* 47 FIN.
    ANALYSTS J. 7 (Jan./Feb. 1991) ......................................................... 21

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION TO DISMISS

1

## I.   Introduction

Northrop Grumman Corporation offers a 401(k) plan to allow its employees to save for retirement. In a case involving the same plan, same class, and same administrative services arrangements—just a different time period—Judge Morrow found, in a detailed 66-page order, that the employees' evidence presented genuine issues of fact as to whether the plan's fiduciaries unlawfully allowed Northrop to take millions of dollars from the plan in the guise of "administrative fees" —*i.e.*, to use its employees' retirement savings for corporate expenses. *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213 MMM (JCx), Doc. 606 at 65 (C.D. Cal. Nov. 24, 2015)(*Northrop*). The Court denied summary judgment as to claims "that defendants breached their duties of loyalty and prudence by causing the Plans to distribute plan assets to Northrop as payment for improper and unreasonable administrative fees" and "that the administrative fees Northrop charged the Plans constituted prohibited transactions" under 29 U.S.C. §1106. *Id.*

Because this case arises from the same scheme of diverting plan assets to Northrop in the guise of administrative fees—only for the time period following the point at which the Court cut off damages discovery in *Northrop* (No. 06-6213, Doc. 652 at 3, 7–8), Plaintiffs' allegations that Defendants engaged in similar misconduct are necessarily sufficient to state similar claims here. Because discovery in *Northrop* yielded substantial evidence of misconduct, the complaint here, alleging that Defendants violated ERISA in the same way, necessarily raises "a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The complaint also plausibly alleges that Defendants caused the plan to overpay its recordkeeper (Hewitt Associates LLC) and imprudently managed the plan's Emerging Markets Equity Fund as a high-fee, underperforming, actively managed investment. Defendants' motion should be denied.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

**PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION TO DISMISS**

## II.   Background

Plaintiffs are retired and former employees of Northrop Grumman who participate in the Northrop Grumman Savings Plan ("the Plan"). Doc. 1 ¶¶10–16 (complaint).[1] The Plan is an individual account, defined contribution retirement plan under 29 U.S.C. §1002(34). Doc. 1 ¶6. In a defined contribution plan, "participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, No. 10-56406, 2016 U.S.App.LEXIS 22366, at *4 (9th Cir. *en banc* Dec. 16, 2016)(quoting *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1826 (2015)); Doc. 1 ¶6. Administrative expenses "can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 2016 U.S.App.LEXIS 22366, at *4–5 (quoting *Tibble*, 135 S.Ct. at 1826); *see also id.* at *22 & n.5 (calculating losses of retirement savings from seemingly modest increases in fees).

The Plan has over $19 billion in assets and 103,000 participants as of year-end 2015. Doc. 1 ¶9. Defendants are Northrop Grumman Corporation, two fiduciary committees designated in the plan document with authority and responsibility over Plan administration and investments (Administrative Committee and Investment Committee), and individuals currently known to Plaintiffs who served on the committees since 2009. *Id.* ¶¶17–49; Doc. 45-4 at 69 (§§16.01, 16.02), 73–74 (§§17.05–17.08).[2] The members of the committees are all executive officers or directors of Northrop. Doc. 1 ¶¶19, 23.

The complaint asserts Defendants breached their fiduciary duties and committed prohibited transactions by: (1) unlawfully causing the Plan to distribute

---

[1] They are not the same named plaintiffs and class representatives as in *Northrop*. Plaintiffs' counsel recently determined that Maria Midkiff is a participant in the second plan involved in *Northrop*, the Northrop Grumman Financial Savings and Security Plan, but not a participant in the Northrop Grumman Savings Plan. Plaintiffs intend to amend the complaint accordingly. The other six plaintiffs are participants in the Plan.

[2] "Doc." page references refer to the page number shown on the ECF header.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

Plan assets to Northrop Grumman under the guise of "administrative fees" (Doc. 1 ¶¶50–62, Count I, ¶¶105–10, Count IV, ¶¶122–29, Count V, ¶¶130–34), (2) causing the Plan to pay unreasonable fees to the Plan's recordkeeper (*id.* ¶¶63–78, Count II, ¶¶111–16, Count VI, ¶¶135–41), and (3) imprudently managing the Emerging Markets Equity Fund as an actively managed investment that underperformed for years despite paying higher fees and would have been better managed as a low-fee index fund (*id.* ¶¶79–90, Count III, ¶¶117–21, Count VI, ¶¶135–41). Count VII contends that Northrop separately breached its fiduciary duty to monitor the performance of other fiduciaries for which it had oversight responsibility— including the Investment and Administrative Committees and their members—to ensure that the Plan was being managed prudently and loyally. *Id.* ¶¶142–48. Count VIII seeks disgorgement and restitution from Northrop under §1132(a)(3) of any ill-gotten Plan assets and Northrop's profits earned on those assets, to the extent full relief is not obtained under §1132(a)(2) and §1109(a). *Id.* ¶¶149–53. Plaintiffs seek to represent a class of all participants and beneficiaries in the Plan since May 11, 2009 who were affected by the conduct described in the complaint. *Id.* ¶99.

## III.   Standards of Review

"A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains a 'short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Penaloza v. Select Portfolio Servicing*, No. 14-2571-AB, 2014 U.S.Dist. LEXIS 173806, at *3 (C.D.Cal. Dec. 8, 2014)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662,  677–78 (2009)); Fed.R.Civ.P. 8(a)(2). The statement is sufficient if it provides "enough detail to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Williams v. Cavalli*, No. 14-6659-AB, 2015 U.S.Dist.LEXIS 34722, at *3 (C.D.Cal. Feb. 12, 2015)(quoting *Twombly*, 550 U.S. at 555). "The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task[.]'" *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1051 (9th Cir. 2012)(quoting *Iqbal*, 556 U.S. at 679). In the

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

"practical context of ERISA litigation" certain facts "tend systemically to be in the sole possession of defendants." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009); *see also id.* at 597 n.8, 602. In that context, a fiduciary breach claim is plausible if the court may "infer from what is alleged that the process was flawed" and "tainted by failure of effort, competence, or loyalty." *Id.* at 596. "[A]n ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

ERISA's fiduciary duties "are the highest known to the law." *Tibble*, 2016 U.S.App.LEXIS 22366, at *20 (quoting *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996)). The duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]" 29 U.S.C. §1104(a)(1)(A). Fiduciary "decisions must be made with *an eye single to the interests of the participants and beneficiaries.*" *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1402 (9th Cir. 1995)(citation omitted)(emphasis in original). While ERISA allows corporate officers to serve as plan fiduciaries, and in that sense wear two "hats," it does require that they "*wear only one [hat] at a time, and wear the fiduciary hat when making fiduciary decisions.*" *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000)(emphasis added). "When it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries.'" *Howard*, 100 F.3d at 1488–89 (citation omitted).

To satisfy the duty of prudence, "[a]n ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." *Tibble*, 2016 U.S.App.LEXIS 22366, at *20 (quoting *Tibble*, 135 S.Ct. at 1828); 29 U.S.C.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

- 4 -

§1104(a)(1)(B). Because "[w]asting beneficiaries' money is imprudent," fiduciaries have a duty to be "cost-conscious" and "to minimize costs." *Id*. at \*21–22.

To supplement the general fiduciary duties of §1104, Congress enacted §1106, which categorically bars "certain transactions deemed 'likely to injure'" a plan. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000)(citation omitted); 29 U.S.C. §1106. Section 1106(a) prohibits transactions between a plan and a "party in interest," which Congress defined to encompass "those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries," including employers, other fiduciaries, and service providers. *Harris*, 530 U.S. at 242 (citing 29 U.S.C. §1002(14)).

Section 1106(b) forbids transactions between a plan and a fiduciary. 29 U.S.C. §1106(b). Its purpose is to "prevent[] a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *Reich v. Compton*, 57 F.3d 270, 287 (3d Cir. 1995)(quotation omitted); *see also* 29 C.F.R. §2550.408b-2(e)(1). There is no "reasonable compensation" defense to a violation of §1106(b). *Patelco Credit Union v. Sahni*, 262 F.3d 897, 911 (9th Cir. 2001). A fiduciary that pays itself from plan assets has engaged in a prohibited transaction under 29 U.S.C. §1106(b)(1)— even when an administrative services agreement authorizes the payment. *Barboza v. Cal. Assoc. of Prof'l Firefighters*, 799 F.3d 1257, 1270 & n.5 (9th Cir. 2015); *see also Perez v. City Nat'l Corp.*, 176 F. Supp.3d 945, 948–49 (C.D.Cal. 2016) (company violated §1106(b) when it received compensation from profit sharing plan and failed to keep time records to calculate direct expenses actually incurred in servicing the plan). ERISA provides certain exemptions from its broad prohibited transactions, but they are affirmative defenses that Defendants bear the burden of pleading and proving. *Allen*, 835 F.3d at 676; *Braden*, 588 F.3d at 601–02; *accord Howard*, 100 F.3d at 1488 (burden is on fiduciary to prove that plan "received adequate consideration" and thus qualified for §1108 exemption)

ERISA's fiduciary duties are ongoing, meaning that a fiduciary must remedy excessive fee arrangements, remove imprudent investments, and stop and recover prohibited transactions, no matter how long ago those practices started. *Tibble*, 2016 U.S.App.LEXIS 22366, at *19; *Tibble*, 135 S.Ct. at 1826–29.

A breaching fiduciary is "personally liable" for "any losses to the plan resulting from [the] breach," must restore any profits of the fiduciary "made through use of assets of the plan," and is "subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. §1109(a). Any plan participant may bring an action in a representative capacity to pursue these remedies on behalf of the plan. 29 U.S.C. §1132(a)(2); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) . Section 1132(a)(3) authorizes "appropriate equitable relief" against a non-fiduciary who participates in a prohibited transaction. 29 U.S.C. §1132(a)(3)(B); *Harris*, 530 U.S. at 244–45, 250–53.

## IV. Argument

### A. Plaintiffs' unlawful payment claims are timely.

#### 1. Judicial estoppel bars Defendants' continuing violation argument.

Defendants contend, without authority, that because plaintiffs' counsel argued in *Northrop* that the post-2009 payments to Northrop arise from the same course of conduct as the pre-2009 payments, the Plaintiffs in this case are "estopped" from denying their "actual knowledge" of the claims. Doc. 45-1 at 11. On the contrary, Defendants themselves are estopped. Having successfully argued in *Northrop* that the post-2009 payments were not part of an existing claim in order to avoid supplementing their discovery responses, Defendants cannot now take the opposite position that those payments are part of a "continuing violation" that predates 2009. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)(judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase")(citation omitted);[3] *Baughman*

---

[3] The doctrine applies "not only against actual parties to prior litigation, but also

NO. 16-CV-6794-AB (JCX)

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

*v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012)(elements).

In *Northrop*, Defendants repeatedly argued that evidence of any post-2009 payments to Northrop did not relate to "the claims that survived summary judgment" but instead involved "new claims." No. 06-6213, Doc. 646 at 2:15–17, 6–10. Having prevailed on that argument, Defendants now take the inconsistent position that the post-2009 payments do not represent new claims at all, but instead are "'continuing violations' stemming from the same conduct at issue in *In re Northrop*," such that Plaintiffs' supposed "actual knowledge" of the pre-2009 scheme bars any claim regarding similar payments to Northrop after 2009. Doc. 45-1 at 11 n.4. Defendants persuaded the Court to accept their prior position, as shown by the denial of plaintiffs' motion for updated discovery in *Northrop*. Although the Court ultimately found it unnecessary to determine if plaintiffs were trying to make new claims as Defendants argued (No. 06-6213, Doc. 652 at 6), had Defendants conceded that the post-2009 payments "stemmed from the same conduct" as the claims in *Northrop* as they now admit, it seems unlikely the Court would have deprived plaintiffs of the opportunity to obtain *any* discovery supplementation for an admittedly ongoing claim. If Defendants' new position were accepted, they would derive an unfair benefit and impose an unfair detriment on Plaintiffs. Having avoided discovery regarding post-2009 payments in *Northrop*, if the new "continuing violation" argument is accepted and claims as to those payments are found time-barred, Defendants would be immunized from defending the propriety of Northrop receiving over $10 million of employees' retirement assets from 2010– 14, while Plaintiffs in *Northrop* and this case would be deprived of any opportunity to obtain the discovery needed to support their claims to recover those payments.

**2.     Defendants have not shown "actual knowledge."**

The three-year actual knowledge limitation is an affirmative defense on which

---

against a party that is in privity to a party in a previous litigation[,]" such as the individual committee member defendants here. *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996 (9th Cir. 2012)(citation omitted).

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

Defendants bear the burden of proof. *Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002); *Urakhchin v. Allianz Asset Mgmt. of Am.*, *LP*, No. 15-1614-JLS, 2016 U.S.Dist.LEXIS 104244, at *16 (C.D.Cal. Aug. 5, 2016). Plaintiffs have no obligation to "plead on the subject of an anticipated affirmative defense." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013)(citation omitted). To establish an affirmative defense at this stage, the defendant must show that the "affirmative defense is obvious on the face of [the] complaint[.]" *Id.* (citation omitted).

Defendants do not even attempt to make that showing. Nothing in the complaint suggests any particular date that any Plaintiff obtained "actual knowledge" of their claims. Defendants instead rely solely on statements by Plaintiffs' attorneys in *Northrop* to the effect that they expected that the post-2009 payments were part of the same course of conduct as the pre-2009 scheme. But a reasonable belief that something is true is not the same as "actual knowledge" of facts showing that it is true. *See Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-9329, 2014 U.S.Dist. LEXIS 139001, at *13–14 & n.5 (S.D.N.Y. Sep. 30, 2014)(noting "that a plaintiff must possess more facts to know of a breach than she must possess to plausibly allege that breach on information and belief."). If Plaintiffs' attorneys had documentation showing that nothing had changed after May 2009, they would not have needed supplemental discovery in *Northrop*.

Even if Plaintiffs' *attorneys* had somehow obtained actual knowledge of the post-2009 claims in *Northrop* even without receiving any discovery for that period, that knowledge would not be imputed to the Plaintiffs here merely because they have the same attorneys. *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau County, Inc.*, 558 F.Supp.2d 378, 397–99 (E.D.N.Y. 2008)(citing cases).[4] Moreover, "imputed knowledge" is not "*actual* knowledge[.]"

---

[4] Defendants marked "Confidential" and sealed virtually all documents in *Northrop*, and the protective order does not allow disclosure to unnamed class members. No. 06-6213, Doc. 77; *see, e.g.*, Docs. 454, 501, 511 (sealed filings).

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

*Fish v. Greatbanc Tr. Co.*, 749 F.3d 671, 679 (7th Cir. 2014).[5]

Northrop's disclosure of payments in annual reports filed with the Department of Labor (Form 5500) also provided no "actual knowledge" of this claim. Because Northrop cannot show that any participant received these reports, the reports at most would be a basis for arguing that Plaintiffs had "constructive," not "actual" knowledge of Northrop's payments. *Id*.; *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1222 (7th Cir. 1990). And knowledge of payments to Northrop alone does not show a breach or violation. "The disclosure of a transaction that is not inherently a statutory breach of fiduciary duty ... cannot communicate the existence of an underlying breach." *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1341 (9th Cir. 1994)(citation omitted). When a claim depends on the process used by the fiduciary, knowledge of the "breach or violation" requires knowledge of the process. *Tibble v. Edison Int'l*, 729 F.3d 1110, 1121 (9th Cir. 2013)(citation omitted), *vacated on other grounds*, 135 S.Ct. 1823 (2015); *Fish*, 749 F.3d at 680–81. When a fiduciary claims a §1108 exception applies to a prohibited transaction, as Defendants do here, "the plaintiff does not have actual knowledge of an alleged violation until she knows that the exception does not apply." *Fish*, 749 F.3d at 687.

As Defendants admit, payments to an employer are not illegal *per se*. Doc. 45-1 at 18:3–5. Plaintiffs do not contend that the mere payment of administrative fees alone was a fiduciary breach or prohibited transaction. Instead, Plaintiffs contend that Defendants failed to follow a prudent and loyal process for determining whether Northrop's services were necessary and its payments reasonable, including failing to follow their own ASAs that required an *independent* party to make those determinations. Doc. 1 ¶¶50–62. The Forms 5500 disclose none of those facts, as Defendants' counsel conceded in *Northrop*. No. 06-6213, Doc. 650 at 38:12–23.

Defendants' citation concerns knowledge of a trial setting imputed to the client *in the same case*, not knowledge of substantive facts imputed to the lawyer's clients in a *different case*. *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141–42 (9th Cir. 1989); *cf*. Doc. 45-1 at 11 n.5.

[5] *Fish* follows the Ninth Circuit's standard for actual knowledge. *Id*. at 681, 687.

Mere notice that Northrop received payments from the Plan "falls short of providing 'actual knowledge of the breach or violation.'" *Tibble*, 729 F.3d at 1121.

### 3.    *Northrop* **tolled the statute of limitations.**

Regardless of any Plaintiff's actual knowledge, "the filing of a class action tolls the statute of limitations as to all asserted members of the class," including those members who file a new action. *Catholic Soc. Servs. v. INS*, 232 F.3d 1139, 1146–47 (9th Cir. 2000)(citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983)). The *American Pipe* rule avoids "needless multiplicity of actions"—as would be the case if 100,000 class members had to each file suit individually to preserve their claims—while also serving "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights[.]" *Id.* at 1147 (quoting *Crown*, 462 U.S. at 351–52). The statute "remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown*, 462 U.S. at 354.[6] The later suit need not be "identical in every respect" to the original suit, so long as it involves the same subject matter and the defendant had notice of the nature of the claims. *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985).

As participants in the Plan, each of the Plaintiffs is a member of the class in *Northrop*. The operative *Northrop* complaint put Defendants on notice that the class was asserting claims based on improper administrative fee payments to Northrop. No. 06-6213, Doc. 338 ¶¶61–74. The complaint seeks to recover losses to the Plan and to enjoin future violations. *Id.* ¶¶26–27. The class has no end date, and is defined to include both current and future participants, which would have been

---

[6] *American Pipe*'s "goal of enabling members of a putative class to rely on a pending action to protect their interests can be achieved only if the way in which the first suit ends—denial of class certification by the judge, abandonment by the plaintiff, or any other fashion—is irrelevant." *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (7th Cir. 2011). The Court's ruling that it would not require Defendants to produce post-May 11, 2009 damages discovery effectively imposed an end date on the *Northrop* class period.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

unnecessary if the conduct described in the complaint had ceased. *Id.* ¶25. Thus, because the improper payment claims in this case are encompassed within the scope of the *Northrop* complaint, Defendants had fair notice of these claims, and the statute of limitations was tolled under *American Pipe*. *See Catholic Soc. Servs.*, 232 F.3d at 1149 (statute of limitations was tolled where substantive claims asserted in later action were "within the scope of those asserted in the earlier action" and plaintiffs in later case were "not attempting to relitigate an earlier denial of class certification, or to correct a procedural deficiency in an earlier would-be class.").

Defendants' own case—*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014 (9th Cir. 1981)(*see* No. 06-6213, Doc. 650 at 18:25–19:2)—further supports tolling here. The Ninth Circuit explained that if claims in a "supplemental complaint" "are unrelated to those alleged in the initial complaint, or rely on conduct or events different from those involved in the original action, the statute of limitations should be applied." *Id.* at 1057. But if "the original pleading gave notice that the alleged wrongful conduct was of a continuing nature, supplemental pleadings addressed to the same conduct should not encounter statute of limitations questions." *Id.* Thus, where a complaint "alleged a continuing course of conduct and contained prayers for injunctive relief as well as for damages," the statute was tolled. *Id.* Although the continued conduct encompassed "new events," those events were "a continuation of the old cause of action." *Id.* at 1058. That is what happened here. Based on the open-ended class period in *Northrop* and plaintiffs' requests for damages and injunctive relief to prevent future violations (No. 06-6213, Doc. 338 ¶25), Defendants knew that the *Northrop* plaintiffs alleged a continuing course of conduct. The complaint here addresses continuation of the same course of conduct for the time after the cut-off in *Northrop*. The limitations period thus was tolled.

### 4.   The six-year limitation also does not bar Plaintiffs' claims.

The unanimous Supreme Court ruling in *Tibble* forecloses Defendants'

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

argument that the six-year limitation period bars these claims because Defendants initially executed the ASAs in 1999. "[R]egardless of when an investment was initially selected, 'a fiduciary's allegedly imprudent retention of an investment' is an event that triggers a new statute of limitations period." *Tibble*, 2016 U.S.App. LEXIS 22366, at *7–8 (quoting *Tibble*, 135 S.Ct. at 1826, 1828–29). In *Northrop*, Judge Morrow considered the "nature of the underlying fiduciary duty, as the Supreme Court directed in *Tibble*," and found that based on the common law trust duty of loyalty and continuing duty to eliminate conflicts of interest, ERISA fiduciaries have an ongoing duty to stop prohibited transactions. No. 06-6213, Doc. 606 at 51–52. The Court thus found it "clear" that mere execution of the ASAs outside the limitations period "does not render breach of fiduciary duty and prohibited transactions claims challenging payments under the ASAs during the limitations period time-barred." *Id*. at 52–53.[7] The Court therefore allowed plaintiffs to proceed on claims as to "breaches of fiduciary duty and prohibited transactions during the six years prior to commencement of this action," *i.e.*, those occurring on or after September 28, 2000. *Id*. at 53. So here, Plaintiffs are entitled to recover for payments made at least within the past six years, and under *American Pipe* and *William Inglis* are entitled to recover for payments made since May 11, 2009, the date of the class cutoff in *Northrop*.

Defendants assert, without citation of pertinent authority, that "statutes of repose" are not subject to "equitable tolling." Doc. 45-1 at 13.[8] ERISA's six-year limitation is not a statute of repose, because it provides for equitable tolling in cases of "fraud or concealment." 29 U.S.C. §1113. But even statutes of repose are subject to the rule of *legal* tolling, and most courts hold that *American Pipe* is legal tolling. *Albano v. Shea Homes LP*, 634 F.3d 524, 535–38 (9th Cir. 2011)(citing *Joseph v.*

---

[7] Plaintiffs do not contend mere execution of the ASAs is a breach or prohibited transaction. There would be no breach had Northrop received no payments. And Defendants do not even claim they followed the compliance procedures in the ASA.
[8] *Munoz v. Ashcroft*, 339 F.3d 950, 957 (9th Cir. 2003), is not a class action and does not address *American Pipe*.

- 12 -                                                                NO. 16-CV-6794-AB (JCX)

*Wiles*, 223 F.3d 1155, 1166–67 (10th Cir. 2000), applying *American Pipe* to three-year statute of repose in 15 U.S.C. §77m, among others). If the *American Pipe* rule did not apply, thousands of class members would have had to file individual actions to preserve their claims, creating the multiplicity of suits that Rule 23 was designed to avoid. *Albano*, 634 F.3d at 531 (citing *Am. Pipe*, 414 U.S. at 550–51). The Court should thus hold that Plaintiffs may pursue any claims back to May 11, 2009.

**B.      The complaint states claims based upon payments of Plan assets to Northrop (Counts I, IV, V).**

In denying summary judgment in *Northrop*, the Court found that Plaintiffs raised triable issues on their claims that (1) payments of plan assets to Northrop for administrative services violated §1106 (No. 06-6213, Doc. 606 at 54–55), and (2) defendants breached their fiduciary duties by allowing contracts with Northrop for administrative services to remain in force during the statutory period (*id.* at 57–61). The Court found that plaintiffs proffered evidence showing "defendants improperly delegated control over budget approval to Northrop personnel, relied inappropriately on the advice of Northrop's in-house counsel, and failed to heed warnings about excessive administrative expenses." *Id.* at 55, 58. The Court found that "members of the Administrative Committees were supervisors of the very Northrop departments providing the services for which the Plans paid," and certain of those individuals, such as Director of Benefits Administration and Services Dennis Wootan, appeared "to have been more concerned about reducing costs incurred by their corporate departments and '[m]axing the trust charge aspect' of work being performed by Northrop employees" than protecting the interests of the Plan. *Id.* The Court held this would allow a reasonable factfinder to conclude that the defendants both (1) committed §1106(b)(2) prohibited transactions by "act[ing] ... on behalf of a party[, Northrop,] ... whose interests [were] adverse to the interests of the plan" and allowing unreasonable compensation to pay for corporate expenses that "were not 'necessary to the operation of the plan'"; and (2) breached

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

their duty under §1104(a)(1)(A) by failing to "discharge [their] duties with respect to [the] [P]lan[s] solely in the interest of the participants and beneficiaries[.]" *Id.*

The Court found sufficient evidence that Northrop, rather than the committees, "had final control over the plan's expenditures" and "exercised the purse strings[.]" *Id.* at 59. Northrop executives were not concerned about charges to the Plan because the charges did not affect their "own pocketbooks or comp[ensation]," which indicated "that the fiduciaries were cavalier about increasing expenses because the expenses were paid by the Plans rather than Northrop or its officers." *Id.* An auditor found that Northrop fiduciaries had "a perception that expenses charged to the plan trusts are not 'real money.'" *Id.* at 58–59. A request from Northrop's in-house counsel to an outside lawyer asking whether she could "think of any way we could charge the plans for the part-time computer support services" supported an inference that the in-house lawyer was "seeking to circumvent ERISA's 'but-for' compensation requirement so that Northrop could charge a greater share of its corporate IT expense to the Plans." *Id.* at 60. Plan fiduciaries were repeatedly warned that total administrative costs were excessive compared to market benchmarks. *Id.* at 60–61. The fact that Northrop continued in its role after reports from an outside consultant put the ccommittee "on notice that Northrop was charging more for administrative services than the Plans might have had to pay had they outsourced performance of the services," supported a finding that defendants breached their duty of prudence by failing to make a reasoned decision "whether to allow the ASAs with Northrop to remain in force or to outsource the services it performed." *Id.* at 60–61.

Plaintiffs make similar allegations here, and bring their claims to recover plan damages from Defendants' continuation of this scheme after the cut-off the Court imposed in *Northrop*. Doc. 1 ¶¶50, 55–56. The facts that defeated summary judgment in *Northrop* are sufficient to state claims for prohibited transactions and breach of fiduciary duties here.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

To avoid this, Defendants focus on isolated allegations in the complaint and mischaracterize Plaintiffs' claims. "Plaintiffs' primary theory" is *not* that Defendants had to "consider outsourcing" the services or to put the services out to "competitive bidding[.]" *Cf.* Doc. 45-1 at 17. Plaintiffs' theory is that Defendants hired Northrop "to provide purported administrative services, which served as a scheme to" offset corporate expenses by "direct[ing] Plan assets to Northrop that were not payments reasonably related to any service the Plan needed or was provided." Doc. 1 ¶50. Failing to consider outsourcing and to obtain bids after repeatedly being informed that Northrop's compensation was excessive tends to show that Defendants were not acting in the exclusive interests of participants and failed to make a reasoned decision whether to end the arrangement. *Northrop*, No. 06-6213, Doc. 606 at 60–61.

That ERISA allows plan sponsors to provide services to a plan if certain conditions are met in statutory exemptions is beside the point. *Cf.* Doc. 45-1 at 18 (citing 29 U.S.C. §1108(b)). Prohibited transaction exemptions are affirmative defenses on which Defendants have the burden of pleading and proof, not Plaintiffs. *Allen*, 835 F.3d at 676; *Braden*, 588 F.3d at 601–02; *Howard*, 100 F.3d at 1488.[9] Moreover, the complaint alleges that Northrop's services were not necessary and its compensation was not reasonable.[10] Defendants do not dispute that they did not follow their own ASAs (such as by retaining an independent consultant to approve Northrop's services and compensation), which were drafted in an attempt to comply

_____

[9] Similarly, Defendants erroneously contend *Plaintiffs* have not addressed whether Northrop qualifies for a §1108(c) exemption to Plaintiffs' §1106(a)(1)(A) prohibited transaction claim (Count IV). Doc. 45-1 at 21. Defendants fail to address several additional §1106(a) prohibited transaction claims, including claims in Count IV under §1106(a)(1)(C) and (D) (Doc. 1 ¶¶126–27), and Count VI, regarding service providers other than Northrop (*id.* ¶¶135–41). Those claims therefore cannot be dismissed.

[10] *White v. Chevron Corp.*, No. 16-0793, 2016 U.S. Dist. LEXIS 115875 (N.D.Cal. Aug. 29, 2016) is inapposite for several reasons, including that the court found no allegation "that the Plan fiduciaries engaged in self-dealing or failed to act 'solely in the interest' of the Plan's participants." *Id.* at *14, 35–36, 47. The complaint here is replete with such allegations. *See e.g.*, Doc. 1 ¶¶50, 55–56, 58, 61, 107, 123–133.

NO. 16-CV-6794-AB (JCX)

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

with ERISA's prohibited transaction exemptions. They argue only that they were free to do so because they were not part of the "governing plan documents." Doc. 45-1 at 18 n.12 (citing Doc. 1 ¶55). Defendants will have to explain at trial why they chose not to follow those detailed procedures and will have to prove that in doing so they nonetheless satisfied all conditions for whatever prohibited transaction exemption they will attempt to rely on. That is not something that can be resolved at the pleading stage.

Defendants' assertion that Plaintiffs have alleged only the existence of a conflict of interest but no "actual disloyal conduct" ignores the facts. *Cf.* Doc. 45-1 at 19–20. In *Northrop*, Judge Morrow found that evidence that fiduciaries sought to "maximize the trust charge aspect" of their employees' work was sufficient to show disloyal conduct. No. 06-6213, Doc. 606 at 58:7–18. Here, Plaintiffs similarly allege not only the existence of the conflict ("the heads of the very departments that were to be paid from Plan assets" had "the authority to authorize payment of Plan assets to those departments"), but that Defendants acted on that conflict by "maximiz[ing] the amounts charged to the Plan for expenses incurred by Northrop's corporate departments regardless of whether those expenses were reasonable and necessary for the services provided or directly incurred in the operation and administration of the Plan." Doc. 1 ¶¶55–56.

As to Plaintiffs' §1106(b) claims (Count V), Defendants contend that Plaintiffs have not alleged facts showing that Defendants were acting "on behalf of a party" who had an adverse interest to the interest of the Plan or participants, so as to state a violation of §1106(b)(2). Doc. 45-1 at 21–22.[11] In *Northrop*, Judge Morrow found that evidence that committee members were "more concerned about reducing costs incurred by their corporate departments and '[m]axing the trust charge aspect' of work being performed by Northrop employees" than protecting the interests of the

---

[11] Defendants fail to address Plaintiffs' claims under 29 U.S.C. §1106(b)(1) and (3). *Id.*; *see* Doc. 1 ¶¶131, 133. Those claims therefore cannot be dismissed.

Plan would allow a reasonable factfinder to conclude that defendants violated §1106(b)(2) by "act[ing] . . . on behalf of a party[, Northrop,] … whose interests [were] adverse to the interests of the plan. . . ." No. 06-6213, Doc. 606 at 55. Here, Plaintiffs similarly allege that the department head/committee members were acting on Northrop's instruction and behalf when they sought to "maximize the amounts charged to the Plan for expenses incurred by Northrop's corporate departments" regardless of whether the expenses were reasonable or the services necessary. Doc. 1 ¶¶55–56. Under *Northrop*, these facts state an §1106(b)(2) violation.

**C.     Count II states a claim based on excessive administrative fees.**

Two weeks ago, the Ninth Circuit made clear that the duty of prudence includes a duty to be cost-conscious and "to minimize costs", because "[w]asting beneficiaries' money is imprudent[.]" *Tibble*, 2016 U.S. App. LEXIS 22366, at *21–22. A failure to properly "monitor and control recordkeeping fees" is a breach of fiduciary duties. *Tussey v. ABB, Inc*., 746 F.3d 327, 336 (8th Cir. 2014); *Kruger v. Novant Health, Inc.*, 131 F. Supp.3d 470, 479 (M.D.N.C. 2015)(finding plaintiffs stated plausible claim based on fiduciaries' "failure to monitor the sudden spike in recordkeeping fees"). Fiduciaries must obtain information regarding all sources of a recordkeeper's compensation, and then assess whether that amount is reasonable for the services provided. *Tussey*, 746 F.3d at 336; Reasonable Contract Or Arrangement Under Section 408(b)(2), 72 Fed.Reg. 70988, 70989 (Dec. 13, 2007) ("plan fiduciaries need information concerning all compensation to be received by the service provider[.]"); DOL Adv. Op. 97-15A.

Recordkeeping is a commodity service for defined contribution plans. Numerous providers in the market are capable of providing a high level of service and will eagerly provide competitive bids in an attempt to win the business of a multi-billion dollar plan. Doc. 1 ¶¶64, 66. Often the only means to determine if a recordkeeper's compensation level is reasonable is to obtain competitive bids. *See George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 800 (7th Cir. 2011)(reversing

- 17 -

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

summary judgment based in part on the opinion of an independent consultant that "'without an actual fee quote comparison'—*i.e.,* a bid from another service provider—[consultant] 'could not comment on the competitiveness of [Hewitt's] fee amount for the services provided.'"); *see also Tussey*, 746 F.3d at 336 (fiduciaries' failure to control fees included failures to "calculate the amount the Plan was paying," to "determine whether [the recordkeeper's] pricing was competitive," and to "leverage the Plan's size to reduce fees"). If a plan overpays for recordkeeping services due to a "failure to solicit bids" from other providers, the fiduciaries have breached their duty of prudence. *See George*, 641 F.3d at 798–99.

In 2007, Defendants contracted with Hewitt Associates LLC to provide recordkeeping and administrative services to the Plan, agreeing to pay Hewitt $500,000 per month to provide recordkeeping for all of Northrop's defined contribution plans, the vast majority of which was paid by the Plan. Doc. 1 ¶¶63, 68. From 2009 to 2015, the number of participant accounts Hewitt was required to recordkeep declined by over 31,000—from 134,000 to 103,000—yet its compensation did not decline, resulting in a 54% increase in Hewitt's compensation on a per-participant basis. *Id.* ¶72. In addition to the $500,000 monthly fee, beginning in 2012, Hewitt also received a portion of Financial Engines' asset-based advice charges (despite providing no advice), the amount of which grew from $258,120 to $2.3 million—almost ten-fold—from 2013 to 2015. *Id.* ¶¶69, 73. After initially hiring Hewitt in 2007 until its termination in 2016, Defendants *never* assessed whether Hewitt's fee was reasonable compared to market rates, either by hiring an independent consultant to benchmark Hewitt's fees or by obtaining bids from other providers at regular intervals. *Id.* ¶¶71, 76–77. As a result, the Plan overpaid for recordkeeping compared to market rates for similar services, resulting in a total of over $30 million in Plan losses. *Id.* ¶¶74–75, 78.

These facts plausibly show that Defendants breached their duty to minimize costs, *Tibble*, 2016 U.S.App.LEXIS 22366, at *21–22, and to monitor and control

NO. 16-CV-6794-AB (JCX)

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

fees, *Tussey*, 746 F.3d at 336, *George*, 641 F.3d at 798–99, and that their process for doing so was "flawed" and "tainted by failure of effort, competence, or loyalty," *Braden*, 588 F.3d at 596. Once the Plan's participant level declined by 23%, a prudent, cost-conscious fiduciary acting for the benefit of participants would have reduced Hewitt's compensation commensurately, to avoid wasting beneficiaries' money. A prudent fiduciary would not allow Hewitt to receive up to an additional $2.3 million from the Plan without assessing whether that amount was reasonable compensation for services. Upon discovering that Hewitt was also receiving a $2.3 million kickback from the Plan's investment advice provider even though Hewitt was not providing investment advice, a prudent, cost-conscious fiduciary would have negotiated to recover those sums for the benefit of the Plan and sought to eliminate such excessive advice charges in the future. A prudent, cost-conscious fiduciary would not have neglected to benchmark Hewitt's fees for years, but would have obtained bids or hired a consultant to ensure that participants' money was not being wasted.

Defendants mischaracterize this claim as primarily challenging payments to Financial Engines. Doc. 45-1 at 23. Regardless of those payments, which did not begin until 2012, it was imprudent to continue paying Hewitt the same $500,000 monthly fee after the substantial decline in the number of participants and thus the services Hewitt was providing to the Plan. That Hewitt *also* received up to $2.3 million in kickbacks from participants' financial advice payments despite providing no advice is merely one fact showing that Hewitt received excessive compensation for the services it actually provided to the Plan. Although Defendants speculate that one could "imagine" that Hewitt was providing legitimate services to Financial Engines in exchange for those fees (Doc. 45-1 at 23), Plaintiffs are not required to "rule out every possible lawful explanation" at this stage. *Braden*, 588 F.3d at 597.

Defendants cite *White v. Chevron* for the point that "changes to the recordkeeping agreement" suggest that the fiduciaries were monitoring fees. Doc.

- 19 -

45-1 at 24. Here, however, Plaintiffs allege that Defendant did not make such changes. Instead, Defendants allowed Hewitt to continue to receive the same $500,000 monthly fee even as the number of participants sharply declined. That Defendants finally replaced Hewitt in 2016, toward the end of the class period, does not suggest they were monitoring its compensation over the preceding six years.

Defendants also rely on *White* to suggest they had no responsibility to solicit competitive bids during Hewitt's tenure. Doc. 45-1 at 24–25. But as Defendants acknowledge, *White* recognizes "that the failure to solicit competitive bids might be imprudent where ... plaintiffs presented concrete evidence about the objective level of fees and why they were unreasonable." *Id*. at 19 (quoting *White*, 2016 U.S.Dist. LEXIS 115875, at *45). Here, the complaint shows that the Plan paid $48–$73 per participant per year, while competitive bids would have allowed Defendants to reduce fees to $25 per participant, the market rate for plans with over 100,000 participants. Doc. 1 ¶¶74–75, 77. The very contract that Defendants negotiated in 2007 also shows that the Plan was overpaying; the contract provided for a rate of $37–$39.47 per participant based on the Plan's then-participant level. *Id*. ¶68. This resulted in millions of dollars of excessive fees. Defendants allowed that rate to grow unchecked without taking steps to reduce fees to reasonable levels. *Id*. ¶¶71–77. And Defendants did not *only* fail to solicit bids, they failed to conduct any fee monitoring whatsoever, such as using an outside consultant to benchmark the Plan's fees compared to similar plans. *Id*. ¶76.[12]

Finally, Defendants suggest that Plaintiffs are required to provide more detail as to how the costs were excessive in light of the specific "services rendered." Doc. 45-1 at 24. Such "detailed factual allegations" are not required at the pleading stage.

---

[12] Jones v. Harris Assocs. L.P., 559 U.S. 335 (2010), addresses a different statute (§36(b) of the Investment Company Act) that does "not permit a compensation agreement to be reviewed in court for 'reasonableness.'" Id. at 341. In contrast, ERISA requires reasonableness. 29 U.S.C. §1103(c)(1), §1104(a)(1)(A)(ii), §1106(a)(1)(C), §1108(b)(2); George, 641 F.3d at 789 (ERISA "states that plan administrative costs must be 'reasonable.'"). Young v. GM Inv. Mgmt. Corp., 325 F.App'x 31 (2d Cir. 2009), likewise ignores this reasonableness requirement.

NO. 16-CV-6794-AB (JCX)

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

*Penaloza*, 2014 U.S.Dist.LEXIS 173806, at *3; *see also Kruger*, 131 F.Supp.3d at 479 (determining whether fees were excessive in light of the services provided were "the types of facts warranting discovery"). Regardless of the precise services Hewitt provided, the level of services clearly declined when the participants decreased by 31,000, yet the Plan continued to pay the same amount, resulting in excessive compensation for the remaining services.

### D.   Count III states plausible claims as to the Emerging Markets Fund.

A fiduciary "is duty-bound 'to make such investments and only such investments as a prudent [person] would make of his own property having in view the preservation of the [Plan] and the amount and regularity of the income to be derived.'" *Tibble*, 729 F.3d at 1134 (citations omitted). "'[C]ost-conscious management is fundamental to prudence in the investment function,' and should be applied 'not only in making investments but also in monitoring and reviewing investments.'" *Tibble*, 2016 U.S. App.LEXIS 22366, at *21 (quoting RESTATEMENT (THIRD) OF TRUSTS §90, cmt. b).

Investment options may be "actively managed," meaning the portfolio manager attempts to generate returns that exceed a benchmark by picking stocks, or "passively managed," meaning the investment manager attempts to match the performance of a given benchmark index by holding a representative sample of securities in that index. Doc. 1 ¶81. Because no stock selection or research is necessary, passively managed or "index" funds charge much lower fees than actively managed funds. *Id*. A vast body of academic research shows that virtually no active investment manager consistently beats the market over time after fees.[13]

---

[13] *See, e.g.*, William F. Sharpe, *The Arithmetic of Active Management*, 47 FIN. ANALYSTS J. 7, 8 (Jan./Feb. 1991)("Properly measured, the average actively managed dollar must underperform the average passively managed dollar, net of costs."); Eugene F. Fama & Kenneth R. French, *Luck Versus Skill in the Cross-Section of Mutual Fund Returns*, 65 J.FIN. 1915, 1915 (2010)("After costs . . . in terms of net returns to investors, active investment must be a negative sum game."). Plaintiffs do not contend that active management is *per se* imprudent. *Cf.* Doc. 45-1 at 19.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

Thus, while a fiduciary may consider higher-cost, actively-managed mutual funds as an alternative to index funds, "active management strategies involve investigation expenses and other transaction costs . . . that must be considered, realistically, in relation to the likelihood of increased return from such strategies." RESTATEMENT (THIRD) OF TRUSTS ch. 17, intro. note; *id*. §90 cmt. h(2). In assessing the prudence of an investment decision, the Ninth Circuit considers both "the merits of the transaction" and "the thoroughness of the [fiduciary's] investigation[.]" *Tibble*, 2016 U.S. App. LEXIS 22366, at *20 (quoting *Howard*, 100 F.3d at 1488)(internal quotation marks omitted).

In 2010, Defendants rejected active management for many of the Plan's funds, converting five of the Plan's equity and fixed income options to passive management, including funds that had recently *outperformed* their benchmarks. *Id*. ¶¶83, 85. At that time, the $1.3 billion Emerging Markets Equity Fund had the highest fees of any fund in the Plan, yet had *underperformed* its benchmark over the preceding one-, three-, five-, and seven-year periods, meaning those high fees were not providing superior results. *Id*. ¶¶83–84. Defendants nevertheless chose to *maintain* the active management strategy for the Emerging Markets Equity Fund. *Id*. ¶¶80, 86–87. The Fund (predictably) continued to severely underperform until Defendants finally converted it to a passive investment strategy in late 2014, after the Plan suffered over $30 million in performance losses and over $12 million in losses due to excessive investment management fees. *Id*. ¶¶87–90. These facts plausibly show that by continuing to pay much higher active management fees despite sustained subpar results, Defendants breached their duties to minimize costs and to thoroughly investigate whether to convert the fund to passive management. *Tibble*, 2016 U.S. App. LEXIS 22366, at *20–22. Although Defendants cite their conversion of five other funds as evidence of a thorough process (Doc. 45-1 at 26–27), that only highlights the imprudence of not doing the same thing for the Fund when it was consistently and abysmally underperforming under active management.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

**E.     Plaintiffs have Article III standing to assert all of their claims.**

Defendants do not dispute that Plaintiffs have standing to pursue claims regarding unlawful payments to Northrop (Counts I, IV, V), excessive recordkeeping fees paid to Hewitt Associates (Counts II, VI), Northrop's alleged failure to monitor (Count VII), and equitable relief from Northrop under §1132(a)(3) (Count VIII). Defendants challenge standing only as to the Emerging Markets Equity Fund (Count III) and "Financial Engines." Doc. 45-1 at 14–15. They claim there is no allegation any Plaintiff invested in the Fund or used Financial Engines. Plaintiffs do not need to allege that. But even were that required, at least two Plaintiffs invested in the Emerging Markets Fund and used Financial Engines.[14] *See* Sean E. Soyars Decl., ¶¶2–3 and Exs. 1–2; Thomas Hall Decl., attached.[15]

Section 1132(a)(2) allows recovery only for a plan and does not provide a remedy for individual injuries distinct from plan injuries. *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008). The plaintiff sues derivatively on behalf of the plan, because the plan is the victim of the breach and the recipient of any recovery. *Id*. at 254. Section 1132(a)(2) claims "to recover losses occasioned by a breach of fiduciary duty are redressable and meet the constitutional standing requirements of Article III." *Harris v. Amgen*, 573 F.3d 728, 736 (9th Cir. 2009).[16]

---

[14] Defendants misunderstand the Financial Engines allegations. Revenue sharing from Financial Engines is merely one component of the total excessive compensation paid to Hewitt. Doc. 1 ¶¶69–73. Every participant in the Plan paid a portion of Hewitt's fees. Defendants cite no authority requiring a claim to be parsed component by component for standing purposes.

[15] Participants who did *not* invest in the Emerging Markets Fund or use Financial Engines were also harmed because they were deprived of the opportunity to grow their retirement savings by investing in a prudent option with reasonable fees and to obtain investment advice at a reasonable cost, which would have been available if Defendants had acted prudently.

[16] *Harris* distinguished *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006), as "involv[ing] fundamentally different facts"—a prescription drug plan rather than a defined contribution plan—and because the "plaintiffs relied not directly on fiduciary recovery but on the assumption that the defendants would voluntarily change co-payment requirements." 573 F.3d at 735–36.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

Here, Plaintiffs allege that Defendants' breach of duty related to the Emerging Markets Equity Fund and Financial Engines caused millions of dollars in losses to the Plan and those plan injuries can be redressed by the comprehensive remedies provided in §1109(a). Doc. 1 ¶¶73, 78, 90.

Since each of the Plaintiffs has suffered individually from the damages Defendants caused the Plan, they may pursue a class action based on conduct that harmed them, but which sweeps "more broadly than the injury [they] personally suffered." *Braden*, 588 F.3d at 592–93 (citing *Sprint Communs. Co. v. APCC Servs., Inc.*, 554 U.S. 269, 287–88 (2008)); *see also Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1088 (3d Cir. 1975)(plaintiff without individual standing may represent class of plaintiffs with standing if Rule 23 satisfied). Plaintiffs thus have Article III standing.

**F.    The complaint alleges that Northrop acted as a fiduciary and failed to monitor the executives it appointed to the committees.**

Although Northrop is not a "named fiduciary" under the Plan (29 U.S.C. §1102(a)), it is a "functional" fiduciary based on the "broad definition of fiduciary" under §1002(21)(A). *See Az. State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997). "Fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives. ERISA defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan ... thus expanding the universe of persons subject to fiduciary duties—and to damages—under § 409(a)." *Id.* (citations omitted).

Northrop, acting through its Board of Directors and CEO, appointed Northrop executives to serve on the Committees. Doc. 1 ¶¶19–20, 23–24. Those individuals had the authority to determine how much to pay Northrop from the Plan. *Id.* ¶¶53–54. By controlling committee membership and appointing high-ranking executives—Northrop agents—to serve in those positions, Northrop exercised de facto and "unfettered control" over Plan assets and its own compensation. *Id.* ¶55.

As the former Director of Benefits Accounting put it: "[I]t is naive to think that the Admin Committee had the final control over the plan's expenditures when the corporate management controls the purse strings." No. 06-6213, Doc. 606 at 15. By exercising such control, Northrop acted as a fiduciary. 29 U.S.C. §1002(21)(A)(i).[17]

   Because Northrop, through its Board of Directors and CEO, was responsible for appointing and replacing members of the committees, it retained a fiduciary duty to monitor those individuals "to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. §2509.75-8 (FR-17); *see also Carter v. San Pasqual Fiduciary Tr. Co.*, No. 15-01507-JVS, 2016 U.S.Dist.LEXIS 163017, at *15 (C.D.Cal. Apr. 18, 2016)(citing same). Plaintiffs allege that Northrop failed to review the performance of these individuals at regular intervals to ensure compliance with ERISA fiduciary standards. Doc. 1 ¶¶143–47. Indeed, the complaint shows that Northrop encouraged and instructed these individuals to violate ERISA by paying excessive and unreasonable amounts from the Plan. *Id.* ¶55. Accordingly, there is no basis for dismissing the fiduciary breach or failure to monitor claims as to Northrop.

## V.   Conclusion

   The Court should deny the motion to dismiss.

December 30, 2016                    Respectfully submitted,

                                     By: /s/ Jerome J. Schlichter
                                     Jerome J. Schlichter (SBN 054513)
                                     SCHLICHTER, BOGARD & DENTON
                                     *Lead Counsel for Plaintiffs*

                                     WILLIAM A. WHITE (SBN 121681)
                                     HILL, FARRER & BURRILL LLP
                                     *Local Counsel for Plaintiffs*

---

[17] *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985)(per curiam), holds only that an employer is not a fiduciary *merely* because employees of the employer serve on a fiduciary committee that decides benefits claims. That is far from what Plaintiffs allege here. Judge Morrow refused to allow the *Northrop* plaintiffs to amend their complaint to allege Northrop's fiduciary status for Rule 16 reasons, not because of insufficient factual allegations. *See* No. 06-6213, Doc. 359. Judge Real's prior order dismissing Northrop with prejudice has no reasoning and was based on a much different complaint. Doc. 64; *cf.* Doc. 43.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102