1  JEROME J. SCHLICHTER (SBN 054513)
   jschlichter@uselaws.com
2  MICHAEL A. WOLFF (admitted *pro hac vice*)
   mwolff@uselaws.com
3  STEPHEN M. HOEPLINGER (admitted *pro hac vice*)
   shoeplinger@uselaws.com
4  KURT S. STRUCKHOFF (admitted *pro hac vice*)
   kstruckhoff@uselaws.com
5  SCHLICHTER, BOGARD & DENTON LLP
   100 South Fourth Street, Suite 1200
6  St. Louis, MO 63102
   Telephone:  (314) 621-6115
7  Facsimile:  (314) 621-5934
   *Lead Counsel for Plaintiffs*
8
   WILLIAM A. WHITE (SBN 121681)
9  wwhite@hillfarrer.com
   HILL, FARRER & BURRILL LLP
10 One California Plaza, 37th Floor
   300 South Grand Avenue
11 Los Angeles, CA 90071-3147
   Telephone: (213) 620-0460
12 Facsimile:  (213) 620-4840
   *Local Counsel for Plaintiffs*
13

14          **IN THE UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
15                      **(Western Division)**

16

17 | CLIFTON W. MARSHALL, et al., | Case No. 16-CV-6794 AB (JCx) |

18 | *Plaintiffs*, | **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM FOR L.R. 37-2 JOINT STIPULATION RE: ESI PROTOCOL** |
   | v. | |
19 | | **[DOC. 94]** |

20 | NORTHROP GRUMMAN | DATE:      August 15, 2017 |
   | CORPORATION, et al., | TIME:      9:30 A.M. |
21 | | CTRM:      20 – 3rd Floor |

22 | *Defendants*. | Hon. Jacqueline Chooljian |

23 | | Discovery Cut-off Date: Aug. 1, 2018 |
24 | | Pretrial Conference Date: Nov. 19, 2018 |
   | | Trial Date: Dec. 11, 2018 |
25

26

27

28

1
2
3

Plaintiffs respectfully submit this supplemental memorandum under L.R. 37-2.3 in support of their positions in the L.R. 37-2 Joint Stipulation re: ESI Protocol (Doc. 94).

4
5

**ISSUE 1: REDACTING DOCUMENTS FOR REASONS OTHER THAN PRIVILEGE OR PRIVACY.**

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Defendants' argument that portions of minutes and materials for Northrop Grumman board of directors meetings are irrelevant and non-discoverable is contradicted by their positions in meet and confer discussions. When the parties initially conferred on a Protective Order and ESI Protocol, Defendants did not believe these materials were outside the bounds of discovery and did not wish to redact them. They instead proposed producing them as "Highly Confidential"— akin to an "attorneys' eyes only" designation. "Highly Confidential" materials could not be shared with the Named Plaintiffs, but Plaintiffs' Counsel would have full access to them. *See* the Supplemental Declaration of Stephen Hoeplinger ("Suppl. Hoeplinger Decl.") Ex. 16 (Defs.' May 26 draft Protective Order) at 3, 5. Defendants' concern was not that these materials were irrelevant, but rather (1) they contained sensitive information, and (2) Defendants feared, for reasons still unexplained, that the Named Plaintiffs purposely would violate the Protective Order and make board materials public in an effort to embarrass Northrop. Doc. 94 at 11– 12; Doc. 95-13 at 1. Defendants then changed their stance and proposed redacting materials as an alternative to the "Highly Confidential" designation. *See* Suppl. Hoeplinger Decl. Ex. 17 (Defs.' June 12 draft Protective Order) at 3 ("Defendants are agreeable to removing the Highly Confidential designation if the parties can agree on the edited redaction section in the ESI protocol."). If board materials truly were irrelevant and non-discoverable, or if their production would "entail unjustifiable business risks" (Doc. 94 at 16:22–25), Defendants would not have initially proposed producing them under the Protective Order.

28

That Defendants can cite to a handful of cases in which a few courts allowed

1  unilateral relevance redactions is hardly noteworthy. Plaintiffs have acknowledged

2  that not all district courts have been uniform in their treatment of this issue. *Id.* at

3  10:5. But in the related *In re Northrop Grumman Corp. ERISA Litigation*, No. 06-

4  6213, Doc. 255 (C.D.Cal. June 24, 2010), this Court found

5      cases which disapprove of redacting portions of documents which otherwise

6      contain discoverable information based upon relevance to be more persuasive

7      especially where, as here, a multitude of documents are in issue and a

8      protective order is in place to address concerns regarding privacy and

9      potential misuse of information.

10  *Id.* at 4. There, the Court rejected the defendants' arguments in support of unilateral

11  relevance redactions and ordered them to re-produce previously-redacted

12  documents in unredacted form. *Id.* at 5. In doing so, the Court quoted its previous

13  holding in *In re Medeva Securities Litigation*, No. 93-4376-Kn(AJWx), 1995 U.S.

14  Dist.LEXIS 21895, *8 (C.D.Cal. May 30, 1995):

15      The Court does not welcome unilateral editing of documents by the

16      producing party. Even when implemented with restraint and in good faith,

17      the practice frequently gives rise to suspicion that relevant material harmful

18      to the producing party has been obscured. It also tends to make documents

19      confusing and difficult to use. All too often, the practice results in litigation

20      of collateral issues and in camera review of documents by the Court, with the

21      result that the time of both counsel and the Court is wasted. These drawbacks

22      ordinarily outweigh the minimal harm that may result from disclosure of

23      some irrelevant material.

24  No. 06-6213, Doc. 255 at 4–5.

25      Moreover, many of the cases Defendants themselves cite support Plaintiffs'

26  position. In *Beverage Distributors, Inc. v. Miller Brewing Co.*, 08-827, 2010 U.S.

27  Dist.LEXIS 50732, *15–16 (S.D.Ohio Apr. 28, 2010), the court held that the

28  defendants' unilateral redactions were improper. In *David v. Alphin*, No. 07-11,

2010 U.S.Dist.LEXIS 144275, *23 (W.D.N.C. Mar. 30, 2010), the court recognized that unilateral relevance redactions increase the chances of disputes later on, since there is "no better way to ensure that a motion to compel will be filed than to unilaterally black out large portions of documents as the human mind is naturally curious." The *Alphin* court further found that redactions were inappropriate because a protective order was in place, and ordered the defendants to re-produce in unredacted form documents that had unilaterally been redacted for relevance. *Id.* at *23–24. In *Evon v. Law Offices of Sidney Mickell*, No. 09-760, 2010 U.S.Dist. LEXIS, *6 (E.D.Cal. Feb. 3, 2010), the court allowed redactions only for "multi-volume manuals or large documents separated by express designations" and ordered that where "a document is an integral document which is not separated by express designations the entire document must be produced." And while the court in *New England Life Insurance Co. v. Linkowski*, No. 07-300, 2007 U.S.Dist. LEXIS 57458, *3–4, 6–7 (W.D.Pa. Aug. 7, 2007), allowed the producing party to redact "confidential and proprietary information" from responsive documents, no protective order had yet been entered. In this case, by contrast, the parties have agreed to a protective order and have been producing documents under its terms.

**ISSUE 2: DEADLINE FOR PRODUCTION OF DOCUMENTS RESPONSIVE TO THE PARTIES' ALREADY-SERVED REQUESTS FOR PRODUCTION.**

Defendants offer no facts to substantiate their claim that Plaintiffs' requests require "extensive collection" that would prevent Defendants from producing responsive non-ESI documents within the timeframe Plaintiffs propose. Doc. 94 at 20:25. They do not explain their collection efforts, the data sources they have identified, or the number of responsive documents they believe exist. They state that documents responsive to "one" of Plaintiffs' requests must be collected from "several" departments, which requires "detailed ongoing collection" (*id.* at 20:26–21:1), but do not identify how many such departments there are how onerous this

actually is. Nor do they explain whether responsive documents are found in centralized data sources, in custodial files, or some combination of the two. They also claim to face difficulty identifying auditors (*id.* at 21:2–4), but do not explain how, since Plaintiffs served these requests on April 11, they have not been able to complete this task. Defendants simply ask the Court to take it as read that collecting and producing documents is so burdensome there is no way it could have been done in the nearly 4 months since Plaintiffs served their requests.

Defendants next try to blame their own delay on Plaintiffs. *Id.* at 21:6–12. That Defendants may have expanded the scope of their initial collection in light of meet and confers does not explain their delay in producing documents they agreed to produce over 2 months ago. Moreover, while the meet and confer process may necessarily enlarge Defendants' production somewhat, Defendants do not state how many more documents they now plan to produce following these negotiations or how long it will take to collect and produce them. And some of the documents should not cause any delay at all. For example, Defendants originally stated they would produce minutes and materials for the Northrop Grumman Savings Plan ("NGSP") Administrative and Investment Committees "reflecting Northrop's services to the NGSP and related fees, Hewitt Associate LLC's ('Hewitt's') services to the NGSP and related fees, Financial Engines' services to the NGSP and related fees, and the Emerging Market Equity fund and related investment management fees." Doc. 95-4 at 6:37. Defendants later agreed to produce "all Administrative and Investment Committee meeting minutes" for the relevant time period. Doc. 97-3 at 3. It simply is common sense that all meeting minutes would be stored in the same place, and Defendants have not shown why their production will take much more time.

While the fact discovery deadline in this case is not until May 1 of next year, that deadline will be impossible to meet unless discovery actually gets going. For example, the discovery deadline in *In re Northrop Grumman* had to be extended so

that the plaintiffs could "secure document production from [d]efendants that [was] long overdue" in response to the plaintiffs' earlier requests for production. No. 06-6213 Docs. 268 at 2:23–25 (plaintiffs' *ex parte* application) and 334 (order granting application). Plaintiffs do not simply need to obtain responsive documents before the deadline, they have to actually review them and prepare for depositions with them. A delayed production increases the likelihood that the parties will not be able to meet the current deadline.

For the foregoing reasons, as well as those in the L.R. 37-2 Joint Stipulation re: ESI Protocol, Plaintiffs respectfully request that the Court enter Plaintiffs' requested ESI Protocol.

Dated: August 1, 2017                          Respectfully submitted,


By: /s/ Stephen M. Hoeplinger
Stephen M. Hoeplinger, *admitted p.h.v.*
SCHLICHTER, BOGARD & DENTON
*Lead Counsel for Plaintiffs*

WILLIAM A. WHITE (SBN 121681)
HILL, FARRER & BURRILL LLP
*Local Counsel for Plaintiffs*