1    Nancy G. Ross
      *nross@mayerbrown.com*
2    Brian D. Netter
      *bnetter@mayerbrown.com*
3    Laura Hammargren
      *lhammargren@mayerbrown.com*
4    Samuel P. Myler
      *smyler@mayerbrown.com*
5    MAYER BROWN LLP
      71 South Wacker Drive
6    Chicago, IL 60606
      Telephone:   312.782.0600
7    Facsimile:    312.701.7711

8    Dale J. Giali (SBN 150382)
      *dgiali@mayerbrown.com*
9    MAYER BROWN LLP
      350 South Grand Avenue, 25th Floor
10   Los Angeles, CA 90071
      Telephone:   213.229.9500
11   Facsimile:    213.625.0248

12   *Attorneys for Defendants*

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| 16   CLIFTON W. MARSHALL, et al., | Case No. 16-CV-6794 AB (JCx) |
| 17              Plaintiffs, | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| 18              v. | |
| 19   NORTHROP GRUMMAN CORPORATION, et al., | Date:  October 13, 2017 |
| 20              Defendants. | Time: 10:00 a.m. |
| 21 | Courtroom 7B |
| 22 | Judge: Hon. André Birotte Jr. |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 2

LEGAL STANDARD ...................................................................................... 3

ARGUMENT .................................................................................................... 4

I.  CLASS CERTIFICATION ON PLAINTIFFS' EMERGING MARKETS CLAIM IS IMPROPER BECAUSE PLAINTIFFS HAVE FAILED TO ESTABLISH STANDING ............................................................... 4

II.  NONE OF THE NAMED PLAINTIFFS SATISFIES THE TYPICALITY REQUIREMENT AS TO THE FINANCIAL ENGINES CLAIM ..................................................................................... 7

III.  PLAINTIFFS HAVE NOT ESTABLISHED COMMONALITY AS TO THEIR RECORDKEEPING CLAIM ....................................................... 9

IV.  PLAINTIFFS ARE NOT TYPICAL OF THE PUTATIVE CLASS ON THE REIMBURSEMENT CLAIM ..................................................... 12

V.  NONE OF THE NAMED PLAINTIFFS IS A SUITABLE CLASS REPRESENTATIVE ............................................................................. 14

    A.  The Named Plaintiffs who voluntarily released their ERISA claims cannot adequately represent a  class....................................... 14

    B.  Named Plaintiffs who are former participants do not share current participant interests................................................................ 16

    C.  Plaintiffs' exceptional ignorance of their claims proves them inadequate representatives of a class .............................................. 18

VI.  PLAINTIFFS DO NOT SATISFY ANY OF THE REQUIREMENTS OF RULE 23(b)................................................................................... 21

    A.  A Rule 23(b)(1) class is inappropriate............................................. 21

    B.  A Rule 23(b)(3) class is inappropriate............................................. 24

CONCLUSION.............................................................................................. 25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*Abbott v. Lockheed Martin Corp.*,
   286 F.R.D. 388 (S.D. Ill. 2012), *rev'd in part on other grounds*,

6

   725 F.3d 803 (7th Cir. 2013) ............................................................................... 15

7

*Abdullah v. U.S. Sec. Assocs., Inc.*,

8

   731 F.3d 952 (9th Cir. 2013) ................................................................................. 9

9

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
   465 F.3d 1123 (9th Cir. 2006) ............................................................................... 5

10

11

*Blackwell v. SkyWest Airlines, Inc.*,
   245 F.R.D. 453 (S.D. Cal. 2007) ........................................................................... 8

12

13

*Blanton v. Anzalone*,
   760 F.2d 989 (9th Cir. 1985) ................................................................................. 8

14

15

*Bodner v. Oreck Direct, LLC*,
   2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ..................................................... 20

16

17

*Bowles v. Reade*,
   198 F.3d 752 (9th Cir. 1999) ................................................................... 15, 16, 17

18

19

*Brown v. Medtronic, Inc.*,
   628 F.3d 451 (8th Cir. 2010) ................................................................................. 5

20

21

*Buus v. WAMU Pension Plan*,
   251 F.R.D. 578 (W.D. Wash. 2008) ..................................................................... 19

22

*Carr v. Int'l Game Tech.*,
   2012 WL 909437 (D. Nev. Mar. 16, 2012) ........................................... 15, 17, 23

23

24

*CE Design Ltd. v. King Arch. Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ................................................................................. 8

25

26

*Colesberry v. Ruiz Food Prods., Inc.*,
   2006 WL 1377011 (E.D. Cal. May 18, 2006) ..................................................... 24

27

28

*In re Comp. Sci. Corp.*,
2008 Wl 7527874 (C.D. Cal. Sept. 2, 2008) ....................................................... 24

*Cryer v. Franklin Templeton Res., Inc.*,
2017 WL 818788 (Jan. 17, 2017) ...................................................................... 15

*DaimlerChrysler v. Cuno*,
547 U.S. 332 (2006) ........................................................................................ 5

*Daniels v. Fed. Reserve Bank of Chi.*,
194 F.R.D. 609 (N.D. Ill. 2000) ....................................................................... 13

*DeFazio v. Hollister, Inc.*,
636 F. Supp. 2d 1045 (E.D. Cal. 2009) ............................................................ 17

*Deirmenjian v. Deutsche Bank, A.G.*,
2010 WL 11505699 (C.D. Cal. May 13, 2010)..................................................... 8

*Duprey v. Connecticut Dep't of Motor Vehicles*,
191 F.R.D. 329 (D. Conn. 2000) ...................................................................... 13

*Edes v. Verizon Communications, Inc.*,
417 F.3d 133 (1st Cir. 2005) ........................................................................... 13

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)....................................................................... 4, 7

*In re First Am. Corp. ERISA Litig.*,
258 F.R.D. 610 (C.D. Cal. 2009) ................................................................ 10, 23

*In re Fremont Gen. Corp. Litig.*,
2010 WL 3168088 (C.D. Cal. Apr. 15, 2010)...................................................... 23

*Gen. Tele. Co. v. Falcon*,
457 U.S. 147 (1982) ............................................................................. 4, 9, 10

*Gonda v. Permanente Med. Group, Inc.*,
2017 WL 2241824 (9th Cir. May 22, 2017) ...................................................... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998).............................................................. 7, 14, 25

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)...............................................................7

*Harris v. Amgen, Inc.*,
    573 F.3d 728 (9th Cir. 2009)..............................................................17

*Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011)..............................................................15

*In re JDS Uniphase Corp. ERISA Litig.*,
    2006 WL 2597995 (N.D. Cal. Sept. 11, 2006)....................................15

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007)..........................................12, 15, 17, 18

*LaRue v. DeWolff, Boberg & Assocs.*,
    552 U.S. 248 (2008) ...................................................................17, 23

*Levine v. Berg*,
    79 F.R.D. 95 (S.D.N.Y. 1978)............................................................20

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012)..............................................................10

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership*
    *Plan & Tr.*,
    268 F.R.D. 670 (W.D. Wash. 2010).....................................................23

*Messner v. Northshore Univ. Health System*,
    669 F.3d 802 (7th Cir. 2012)..............................................................10

*In re Nigeria Charter Flights Contract Litig.*,
    233 F.R.D. 297 (E.D.N.Y. 2006) .......................................................23

*In re Northrop Grumman Corp. ERISA Litig.*,
    2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ............................19, 23

*In re Northrop Grumman Corp. ERISA Litig.*,
    2015 WL 10433713 (C.D. Cal. Nov. 24, 2015)....................................8

*In re Northrop Grumman Corp. ERISA Litig.*,
    Dkt. No. 382, 06-cv-6213 (C.D. Cal. Jan. 31, 2011) .........................12

iv

*O'Connor v. Boeing North American, Inc.*,
  197 F.R.D. 404 (C.D. Cal. 2000) ......................................................... 8

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ................................................................... 23, 24

*In re Paxil Litig.*,
  212 F.R.D. 539 (C.D. Cal. 2003) ....................................................... 24

*Piazza v. EBSCO Industries, Inc.*,
  273 F.3d 1341 (11th Cir. 2001) .......................................................... 5

*In re Principal U.S. Property Account ERISA Litig.*,
  2013 WL 7218827 (S.D. Iowa Sept. 30, 2013) ................................... 25

*In re Quarterdeck Office Systems, Inc., Securities Litig.*,
  1993 WL 623310 (C.D. Cal. Sept. 30, 1993) ................................ 20, 21

*Russell v. Kohl's Dep't Stores, Inc.*,
  2015 WL 12748629 (C.D. Cal. Dec. 4, 2015) ................................... 23

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ............................................................. 17

*Schikore v. BankAmerica Supplemental Retirement Plan*,
  269 F.3d 956 (9th Cir. 2001) .............................................................. 9

*Serna v. Big A Drug Stores, Inc.*,
  2007 WL 7665762 (C.D. Cal. Oct. 9, 2007) ..................................... 21

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ....................................................................... 4

*Taylor v. KeyCorp*,
  680 F.3d 609 (6th Cir. 2012) .............................................................. 5

*Tibble v. Edison Int'l*,
  843 F.3d 1187 (9th Cir. 2016) (en banc) ............................................ 8

*Vu v. Fashion Inst. Of Design & Merch.*,
  2016 WL 6211308 (C.D. Cal. Mar. 22, 2016) ................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................ 4, 9

*Warnick v. Dish Network LLC*,
   301 F.R.D. 551 (D. Colo. 2014) ........................................................................ 10

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   2014 WL 6888549 (C.D. Cal. Sept. 3, 2014) ............................................... 12, 26

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................................... 25

*Zinser v. Accufix Research Inst.*,
   253 F.3d 1180 (9th Cir. 2001) .......................................................................... 22

**Statutes**

29 U.S.C. § 1113(2) ............................................................................................. 8

**Other Authorities**

7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
   FEDERAL PRACTICE AND PROCEDURE § 1773 (2d ed. 1986) ............................... 22

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 18

Fed. R. Civ. P. 23(b) ................................................................................... 1, 4, 22

Fed. R. Civ. P. 23(b)(1) ................................................................................. 22, 24

Fed. R. Civ. P. 23(b)(1)(A) ........................................................................... 22, 23

Fed. R. Civ. P. 23(b)(1)(B) ........................................................................... 23, 24

Fed. R. Civ. P. 23(b)(3) ................................................................................. 25, 26

5 Moore's Federal Practice § 23.25[2][c] (3d ed. 2016) ....................................... 19

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

Six current and former participants in the Northrop Grumman Savings Plan (the "Plan") allege that sixteen defendants breached duties they owed under ERISA at varying times by: (1) operating the Emerging Markets Equity Fund with active investment management; (2) permitting portfolio-advisory vendor Financial Engines Inc. ("Financial Engines") to charge supposedly excessive fees; (3) paying purportedly excessive fees to Hewitt LLC ("Hewitt"), the Plan's recordkeeper; and (4) reimbursing Northrop Grumman Corp. ("Northrop") for services provided to the Plan.

Plaintiffs now ask this Court to certify their case as a class action, with a class consisting of all individuals:

> who are or were participants or beneficiaries of the Northrop Grumman Savings Plan at any time between September 9, 2010 and the date of judgment, and were affected by the conduct set forth in th[e] Complaint, as well as those who will become participants or beneficiaries [of the] Northrop Grumman Savings Plan.

Mem. in Support of Class Cert., Dkt. No. 83-1, at 20.

In their motion for class certification, Plaintiffs must demonstrate factually that they are entitled to represent a class of similarly-situated individuals.  Here, Plaintiffs fail to satisfy the standards for certification for any of their claims.  The Emerging Markets claim lacks a named Plaintiff with standing; the Financial Engines claim lacks a named Plaintiff with a timely claim; and the recordkeeping and reimbursements claims fail the tests for commonality and typicality. Moreover, none of the proposed class representatives is suitable and Plaintiffs fail to satisfy the requirements of Fed. R. Civ. P. 23(b).

## BACKGROUND

In a typical 401(k) plan, participants make contributions into tax-preferred accounts and elect an investment strategy that suits their personal financial situation. Such is the case for Northrop's plan. During the relevant timeframe, the Plan served more than 100,000 participants and beneficiaries. Am. Compl. ¶ 75. Those individuals have invested their portfolios in a menu of eight core funds and five retirement path funds, plus a brokerage window for investors seeking to pursue a more sophisticated investment strategy.[1] In addition to participants' own contributions, Northrop contributes generously to its employees' retirements, providing between $275 and $308 million per year in funding for participant accounts during the relevant timeframe.[2]

Only a few aspects of the Plan are relevant to the instant motion:

*Recordkeeping*. As the name suggests, a plan's recordkeeper maintains the plan's records, tracking the assets in each participant's account and sending account statements and other disclosures. In 2007, the Plan's Administrative Committee retained Hewitt as recordkeeper. Hewitt served as recordkeeper until 2016, when Fidelity Investments was retained for that function. Am. Compl. ¶ 64. While Hewitt was the recordkeeper, some of the "administrative and investment-related services" were performed by Northrop, which was reimbursed for those services. Am. Compl. ¶ 52.

*Financial Engines*. In 2012, the Plan retained Financial Engines to offer investment advisory and retirement planning services to Plan participants. Am. Compl. ¶ 70. Under the Plan, all participants have access to Financial Engines' online advice platform, which allows participants to use Financial Engines' expert

---

[1] *See* 2010 Summary Plan Description ("SPD"), Dkt. No. 45-6, at 77 (discussing available investments); 2015 SPD, Dkt. No. 45-7, at 9-10 (same).
[2] Declaration of Samuel P. Myler in Support of Opposition to Class Certification ("Myler Decl.") at ¶ 3 (*citing* Myler Decl. Ex. A at 227, and 326).

recommendations and forecasting tools to create a retirement plan and strategy on their own.[3]  Participants wanting individualized assistance can elect to enroll in Financial Engines' professional management service.  *Id.*  Participants electing Financial Engines' professional management service are charged a monthly fee of 0.0417% of their account balance.[4]

*Emerging Markets.*  Among the Plan's investment options is the Emerging Markets Equity Fund, which consists of a diversified portfolio of stocks issued by foreign companies based in developing countries.[5]  The Emerging Markets Fund was restructured by the Plan's Investment Committee in November 2014; Plaintiffs allege that prior to that date, the Fund improperly engaged in "active management"—an approach under which investment managers pick stocks to structure a portfolio, seeking to identify good values in inefficient markets.  Am. Compl. ¶¶ 80-81.  Since November 2014, the Fund has been passively managed to track a benchmark index. *Id.* at ¶ 81.

Plaintiffs name as Defendants not only Northrop and the two committees that oversee the Plan's administration (the Plan Administrative Committee) and investments (the Plan Investment Committee), but, additionally, thirteen current and former Northrop employees as well as ten John Does who allegedly constituted fiduciaries of the Plan at some point during the putative class period. Am. Compl. ¶¶ 17-49.  Plaintiffs do not distinguish between the Defendants in alleging which one(s) had fiduciary responsibility for the specific actions complained of at any particular time.

## LEGAL STANDARD

Class certification is proper "only if 'the trial court is satisfied, after a

---

[3] 2010 SPD, Dkt. No. 45-6, at 10; 2015 SPD, Dkt. No. 45-7, at 89-90.
[4] 2015 SPD, Dkt. No. 45-7, at 90 (informing participants that Financial Engines' services cost "$4.17 a month for each $10,000 in your account").
[5] 2010 SPD, Dkt. No. 45-6, at 94 (discussing Emerging Markets Fund); 2015 SPD, Dkt. No. 45-7, at 105 (same).

3

rigorous analysis, that the prerequisites … have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *Gen. Tele. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).  Because "Rule 23 does not set forth a mere pleading standard," Plaintiffs' burden is to demonstrate that they "*in fact*" satisfy each of the requirements for certification.  *Wal-Mart*, 564 U.S. at 352.

To obtain class certification, Plaintiffs must demonstrate: (1) that they have Article III standing (*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978-79 (9th Cir. 2011)); (2) that they satisfy each of Rule 23(a)'s "four requirements," namely "numerosity, commonality, typicality, and adequate representation" (*Wal-Mart*, 564 U.S. at 349); and (3) that "at least one of the three requirements listed in Rule 23(b)" is satisfied (*id.* at 345).

## ARGUMENT

For the factually diverse claims in their Amended Complaint, Plaintiffs seek certification of a single class that includes both former and future Plan participants. They have not met their burden to justify that class for any of their causes of action, nor do they offer any suitable class representatives.

## I.  CLASS CERTIFICATION ON PLAINTIFFS' EMERGING MARKETS CLAIM IS IMPROPER BECAUSE PLAINTIFFS HAVE FAILED TO ESTABLISH STANDING.

As a prerequisite to class certification, Plaintiffs must demonstrate Article III standing.  The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong" and "ensure[s] that federal courts do not exceed their authority."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

In an ERISA class action—as with any other class action—the plaintiffs must allege that they have a "direct stake in the outcome of the litigation." *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1126 (9th Cir. 2006).  They must make that showing for "each claim" and

"for each form of relief that is sought."  *DaimlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006).

Where, as here, the plaintiffs challenge the appropriateness of a particular investment fund, they have standing only if "they individually invested in that fund such that they have suffered a concrete injury."  Order, Dkt. No. 68, at 16.  If all fund investors have been injured equally, then a plaintiff could theoretically demonstrate standing by establishing that he was invested in the challenged fund.  But where injury depends on *when* the participant invested in the challenged fund, then a plaintiff must come forward with evidence establishing that he was among those who were injured.

Numerous courts have held that, when challenging the long-term performance of an investment vehicle, a plaintiff must establish that his *particular* portfolio—which might have had short-term *gains*—suffered a net injury during the challenged period.  A participant who *benefited* from an investment option lacks standing to challenge it.[6]

Such is the situation here.  Plaintiffs' theory is that, over the long-run, the Emerging Markets Fund would have performed better if it had been structured as a passive investment fund.  But documents produced by Plaintiffs confirm that for certain time periods the Emerging Markets Fund performed *better* than the passively managed benchmark.[7]  So Plaintiffs must demonstrate that *their* accounts

---

[6] *See, e.g.*, *Piazza v. EBSCO Industries, Inc.*, 273 F.3d 1341 (11th Cir. 2001) (reversing an order certifying a class on a claim for breach of fiduciary duty because the plaintiff did not sustain a net loss under his theory of the case); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010) (dismissing ERISA case for lack of standing when a comparison of the dates of a share-price change and the plaintiff's purchases and sales of shares revealed that he was "was a net beneficiary of … [his employer's] actions or failures to act"); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010) (similar); *see also Taylor v. KeyCorp*, 680 F.3d 609, 613 n.3 (6th Cir. 2012) (similar).

[7] *See, e.g.*, Myler Decl. Ex. K, Northrop Grumman Savings Plan Performance Update, at 2 (showing that the Emerging Markets Fund's performance in 2013's fourth quarter was 2.3%, and the benchmark's was 1.8%).

5

would have performed better if the Fund had been passively managed; otherwise, they cannot benefit from their own lawsuit and lack standing.

Plaintiffs' motion for class certification is silent with respect to whether any of the putative class representatives invested in the Emerging Markets Fund at all.[8] And while the Amended Complaint alleges that two of the six named plaintiffs— Messrs. Hall and Brooks—invested in the Emerging Markets Fund "[d]uring the proposed class period," Am. Compl. ¶ 6.d, it does not state whether either invested in the Fund between December 2010 and November 2014, the time period in which the Fund was allegedly mismanaged. *See* Am. Compl. ¶¶ 80-81. Moreover, when questioned at their depositions, neither Mr. Brooks nor Mr. Hall could recall whether he invested in the Fund during the period it was allegedly mismanaged. *See* Myler Decl. Ex. C, Deposition of Phillip B. Brooks ("Brooks Dep.") at 52:21-53:4; Myler Decl. Ex. G, Deposition of Thomas William Hall ("Hall Dep.") at 21:10-25 (testifying that he could only speak to how he was invested as of March 2016). In fact, although Mr. Brooks alleged in the Amended Complaint that he was one of the two class representatives that invested in the Fund during the class period, at his deposition he testified unequivocally that he did not know anything about the Fund. Brooks Dep. at 52:21-53:4.[9]

Neither of these named Plaintiffs has adduced evidence that he was invested in the Emerging Markets Fund during the period when it was actively managed—

---

[8]  Another Plaintiff, Clifton Marshall, stated in his response to Defendants' interrogatories that he "may have" invested in the Fund, but "does not recall the dates of his investment, the amount of his possible investment, or that Fund's returns during that potential time period." *See* Myler Decl. Ex. I, Responses and Objections to Defendants' Interrogatories to Marshall, at 5:7-12. These vague assertions are insufficient to establish standing.

[9]  Account statements dated July 2013 and June 2016, which were produced by Mr. Brooks after his deposition, show that he was invested in the Emerging Markets Fund in June 2016 (*i.e.*, *after* the Fund had been restructured) but was *not* invested in the Fund in July 2013 (*i.e.*, *during* the period of supposed imprudence). *See* Myler Decl. Ex. J, Account Statements of Phillip Brooks ("Brooks Statements") at 4 (2013) & 10 (2016).

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 16-CV-6794 AB (JCx)

let alone evidence that he suffered a net loss by having an investment that was actively, as opposed to passively, managed.  Accordingly, Plaintiffs have not met their burden to establish standing on their Emerging Markets claim.[10]

## II.   NONE OF THE NAMED PLAINTIFFS SATISFIES THE TYPICALITY REQUIREMENT AS TO THE FINANCIAL ENGINES CLAIM.

As this Court has found, the only individuals with a stake in Plaintiffs' challenge to the fees paid to Financial Engines are those who utilized the advice service, because "participants who opted to receive Financial Engines' services paid those fees, not the Plan itself."  Order, Dkt. 68, at 17.  Per the Amended Complaint, only one named Plaintiff—Mr. Brooks—enrolled in the advice service.  Am. Compl. ¶ 6.c.  But he is subject to an individualized defense—ERISA's three year statute of limitations—that destroys typicality and precludes him from serving as a class representative with respect to this claim.

Typicality requires that the class representatives' claims be "reasonably co-extensive with those of absent class members."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

When a putative class representative faces an individual defense that is not representative of the class, typicality is lacking and class certification should be denied.  *See Ellis*, 657 F.3d at 985; *Hanon*, 976 F.2d at 508.  Indeed, "[t]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation."  *CE Design Ltd. v. King Arch. Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011).

---

[10] In addition to Plaintiffs' lack of standing, certification of this claim should also be denied for the reasons set forth in Sections V and VI below.

One example of such an individualized defense is a time bar.  It is well established that, "where a proposed class representative's claims are time-barred, certification cannot be granted." *Deirmenjian v. Deutsche Bank, A.G.*, 2010 WL 11505699, at *17 (C.D. Cal. May 13, 2010); *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 462-63 (S.D. Cal. 2007) (denying class certification on typicality grounds because plaintiff's claim was time barred); *O'Connor v. Boeing North American, Inc.*, 197 F.R.D. 404, 412 (C.D. Cal. 2000) (same).

Here, Mr. Brooks filed his claim after the limitations period had expired. ERISA claims must be brought within "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."   29 U.S.C. § 1113(2).   "Under the standard [for actual knowledge] adopted by the Ninth Circuit, the 'statute of limitations is triggered by [plaintiffs'] knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law.'"  *In re Northrop Grumman Corp. ERISA Litig.*, 2015 WL 10433713, at *18 (C.D. Cal. Nov. 24, 2015) (quoting *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985)).   "When a plaintiff has actual knowledge of a breach, § 1113(2) operates to keep her from sitting on her rights and allowing the series of related breaches to continue." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1196 (9th Cir. 2016) (en banc).

Mr. Brooks alleges that fiduciaries breached their duties under ERISA with respect to the Financial Engines service because Financial Engines made payments to Hewitt, which, by his accounting, means that "Financial Engines provided its advice services for less than the fee that was being charged to participants who paid it."  Am. Compl. ¶ 71.  As a factual matter, however, Mr. Brooks enrolled in the Financial Engines professional management service on August 13, 2012, *see* Declaration of Marie Vader ("Vader Decl.") ¶ 4, whereupon he was mailed the following disclosure:

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 16-CV-6794 AB (JCx)

> In order to maintain secure communication links and data connectivity between Financial Engines and Provider, and for other services, Financial Engines pays a portion of the Program Fees to the Provider [Hewitt], as described below. Financial Engines does not charge you any additional fees in order to pay the Provider.

Vader Decl., Ex. A, Financial Engines Terms and Conditions, at 8.

By virtue of the above mailed disclosure, Mr. Brooks had knowledge *in 2012* that Financial Engines was making payments to Hewitt. But he waited until *2016* to challenge those payments. Accordingly, his individual claim is time-barred.[11]

Because Mr. Brooks' claim with respect to Financial Engines is time-barred, and Plaintiffs have not alleged or set forth any facts to support an inference that any of the other putative class representatives paid fees to Financial Engines, Plaintiffs cannot certify the proposed class with respect to this claim.[12]

## III. PLAINTIFFS HAVE NOT ESTABLISHED COMMONALITY AS TO THEIR RECORDKEEPING CLAIM.

Plaintiffs' challenge to the Plan's recordkeeping expenses fails for a different reason—there is no common claim to resolve on a class-wide basis.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349 (quoting *Falcon*, 457 U.S. at 157). The requirement is satisfied when the plaintiff identifies a common question "apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 962 (9th Cir. 2013). Commonality is important for at least two reasons. *First*, absent a common contention capable of class-wide resolution, there is no advantage to class treatment. *Second*, the existence of a

---

[11] In this Circuit, when a document is mailed to an ERISA plan participant, there is a rebuttable presumption under the "mailbox rule" that the document has been received, providing the recipient with actual knowledge of the document's contents. *Schikore v. BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 961 (9th Cir. 2001).

[12] Mr. Brooks is also ineligible to serve as a class representative for the reasons expressed in Sections V and VI below.

9

common claim is necessary to confirm that there is a cohesive class with aligned interests—rather than a class divided by an internal conflict.

The vague nature of Plaintiffs' recordkeeping claim and the lack of clarity with respect to the time period covered precludes the conclusion that the claim satisfies Rule 23(a)'s commonality requirement.    Plaintiffs do not allege that the recordkeeping arrangement with Hewitt was unreasonable from outset, nor do they allege that the recordkeeping arrangement was unreasonable as of September 9, 2010, which is the earliest date covered by the class period.  Instead, Plaintiffs argue that the arrangement became unreasonable as the number of participants in the Plan fell and the amount paid for recordkeeping services accordingly rose when measured on a per participant basis.  Am. Compl. ¶ 73.  However, Plaintiffs do not identify the tipping point at which the fees, when measured on a per participant basis, became unreasonable.    Without that information, it is impossible to determine whether the claim is common among all members of the putative class.

Sometimes, an apparent lack of commonality can be cured by narrowing  an overbroad class definition, or by designating subclasses to be represented by separate counsel.[13]  It is not Defendants' burden to design Plaintiffs' class, but even if it were, this is not a case in which Plaintiffs have identified an inflection

---

[13] For example, the proposed classes for the Financial Engines and Emerging Markets claims appear to be dramatically overbroad, given that the vast majority of Plan participants have no stake in the claims.  Indeed, the named Plaintiffs themselves demonstrate the overbreadth of Plaintiffs' proposed class, given that only one and two of them, respectively, claim to have rights under the Financial Engines and Emerging Markets claims.  The Supreme Court has recognized "the potential unfairness to the class members bound by a judgment if the framing of the class is overbroad." *Falcon*, 457 U.S. at 161.  "A class is overbroad, and should not be certified, if it includes 'a great number of members who could not have been harmed by the defendant's allegedly unlawful conduct.'" *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 557 (D. Colo. 2014) (quoting *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 824 (7th Cir. 2012)); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (finding class to be "overbroad" because most class members had not seen the misleading advertisements and yet the class encompassed all purchasers of the product).

point that partitions individuals into categories.  Rather, it would appear from Plaintiffs' allegations that the existence and extent of injury would occur at some point on a continuum.  It is not clear to Defendants how that inflection point would be identified.  And it would be problematic to certify a class of everybody now and to delegate to Class Counsel the power to determine which of its clients' claims to abandon and which to pursue.

Relatedly, Plaintiffs' recordkeeping claims fail to meet Rule 23(a)'s commonality requirement because their allegations do not show that putative class members share common claims against the same Defendants.  Plaintiffs' own allegations demonstrate that the time that various defendants allegedly served as plan fiduciaries differed significantly.  *See, e.g.*, Am. Compl. ¶ 33 ("Defendant Kenneth L. Bedingfield was Northrop's Corporate Vice President and Controller in 2011-2013."); *id.* ¶ 35 ("Defendant Talha A. Zobair has been Northrop's Vice President, Taxation since 2014"); *id.* ¶ 39 ("Defendant Daniel Hickey was Northrop's Vice President, Compensation and Benefits in 2013-2016.").  Notwithstanding that the putative class members Plaintiffs seek to represent were not all participants in the Plan at the same time or for the same duration, Plaintiffs ask this Court to certify a class of "[a]ll persons … who are or were participants or beneficiaries of the [Plan] at any time between September 9, 2010 and the date of judgment, . . . as well as those who will become participants or beneficiaries [of the Plan]." *Id.* ¶ 100.  But logic dictates that a participant who did not join the Plan until 2014, for instance, cannot have common fiduciary breach claims against the same Defendants with a participant who left the Plan before that time.  These temporal differences in Plan participation by putative class members undermines Plaintiffs' ability to satisfy the commonality test of Rule 23(a).  *See Vu v. Fashion Inst. Of Design & Merch.,* 2016 WL 6211308 at *8 (C.D. Cal. Mar. 22, 2016) (explaining that commonality and typicality were not satisfied because each

individual's claim for relief depended on how and when they sought plan relief); *see also* Newberg on Class Actions §3:49 (5th ed.) ("[A] proposed class representative's claims will not be deemed to be typical of those of the class when the representative had no dealing with a particular defendant."). A court in this District has previously denied class certification in the face of similar circumstances. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 2014 WL 6888549, at \*7 (C.D. Cal. Sept. 3, 2014); *see also Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007). Plaintiffs have not shown how over 100,000 participants moving into and out of the Plan over the seven-year period at issue—with different Defendants allegedly at the helm at different times—each share common claims and have suffered a common injury.

Accordingly, Plaintiffs have failed to meet their burden to establish that their recordkeeping claim presents a question common to the putative class.

## IV. PLAINTIFFS ARE NOT TYPICAL OF THE PUTATIVE CLASS ON THE REIMBURSEMENT CLAIM.

As the Court is aware, Plaintiffs' claim challenging the reimbursements to Northrop for services it provided to the Plan is similar to the claim made by the plaintiffs (represented by the same counsel) in *Grabek*, covering a later time period.[14] After this Court refused Plaintiffs' request to extend the time period covered in *Grabek* from 2009 to 2014, Plaintiffs' counsel recruited new plaintiffs to file this lawsuit.

The named Plaintiffs offered as class representatives in this case have

---

[14] Judge Morrow certified a class pertaining to that claim in *Grabek,* over defendants' objections. Defendants respectfully disagree with Judge Morrow's determination—which was never appealed—and incorporate by reference the arguments made in opposition to class certification by the *Grabek* defendants. *See* Defts' Mem. In Opp. to Pltfs' Class Cert. Mot., *In re Northrop Grumman Corp. ERISA Litig.*, Dkt. No. 382, 06-cv-6213 (C.D. Cal. Jan. 31, 2011). Additionally, it bears noting that at the time of certification, *Grabek* involved claims against seven individual defendants, unlike the twenty-three potential defendants Plaintiffs assert claims against here.

12

consistently professed their ignorance of the earlier litigation.[15]   That unfamiliarity separates them from large numbers of putative class members—perhaps a majority—who would have acquired knowledge of the *Grabek* allegations outside of the applicable limitations period here.  Such knowledge is not speculative; it is a matter of common sense.  *Grabek* class members would have acquired actual knowledge of the reimbursement allegations from any number of sources—from briefings by class representatives; from news reports about the case; from their own personal involvement in *Grabek*; or from workplace conversations. Indeed, Marshall testified in his deposition that the "Northrop Retirement Club" met once a month and that he discussed the issues of fees with other retirees at those gatherings as early as 2012. *See* Myler Decl. Ex. F, Deposition of Clifton W. Marshall ("Marshall Dep.") at 10:8-12:11, 15:2-25.  And yet Plaintiffs purport to represent both a group of individuals who were basically sequestered, individuals who somehow managed to avoid acquiring knowledge of the earlier litigation,[16] while at the same time seeking to represent a class whose purported membership includes numerous individuals whose claims are time-barred, *but cf. Duprey v. Connecticut Dep't of Motor Vehicles*, 191 F.R.D. 329, 340 (D. Conn. 2000) ("A class action cannot proceed on behalf of class members whose claims are time-barred."); *Daniels v. Fed. Reserve Bank of Chi.*, 194 F.R.D. 609, 618 (N.D. Ill. 2000) ("[I]ndividuals with time-barred claims may not be included within a proposed class.") (citation omitted).

Class representatives are supposed to typify individuals in the class, so that

---

[15]  After Plaintiffs filed their complaint, Defendants moved to dismiss the reimbursement claim on the theory that Plaintiffs had actual knowledge of the claims they were pursuing in *Grabek*.  The Court denied Defendants' motion, finding that Defendants will need to identify "facts particular to each claim that would support this theory" of limitations. Order, Dkt. 68, at 10.

[16]  Plaintiffs essentially claim willful blindness of the entire *Grabek* litigation. *But cf. Edes v. Verizon Communications, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005) ("[W]e do not think Congress intended [ERISA's] actual knowledge requirement to excuse willful blindness by a plaintiff.").

13

the rights of the absent class members are vindicated and so that Defendants are not deprived of their due process rights to advance a defense. The limitations issue is obviously significant; it was debated by the parties in *Grabek* even before this case was filed. Notwithstanding that Plaintiffs have been on notice of that defense by the Defendants' motion to dismiss, this Court's order, and Defendants' answer to the amended complaint, Plaintiffs have come forward with no evidence to suggest that their isolation from *Grabek* and purported ignorance of the acts giving rise to the claims is typical of the class. *Hanlon,* 150 F.3d at 1020. That absence of evidence fatally undermines their request to represent a class of participants relitigating the *Grabek* dispute.

## V.  NONE OF THE NAMED PLAINTIFFS IS A SUITABLE CLASS REPRESENTATIVE.

Even if Plaintiffs' *claims* were susceptible to class treatment, there must be suitable class representatives and class counsel for certification to be granted. Here, the class representatives are each subject to individual defenses that render them atypical of the plan participants they seek to represent.

### A.  The Named Plaintiffs who voluntarily released their ERISA claims cannot adequately represent a class.

Five of the six named Plaintiffs signed agreements voluntarily releasing their claims against Northrop in exchange for severance benefits.[17]   Messrs. Brooks, Gonzalez, Hendrickson, Hylton, and Marshall all left Northrop as part of a reduction in force. Each was offered a severance package. Each accepted that package. The terms of Mr. Brooks' severance package are representative: in exchange for compensation, he agreed to release "all of [his] claims, demands or causes of action, known or unknown, against the Company and the Released

---

[17] *See* Myler Decl. Ex. H, Separation Agreement and General Releases executed by Brooks, Gonzalez, Hylton, and Marshall ("Release Agreements"). *See also* Myler Decl. Ex. D, Deposition of Ricky Hendrickson ("Hendrickson Dep.") at 41:24-43:3 (confirming receipt of severance payment and execution of separation agreement).

14

Parties, based on anything occurring on or before" June 30, 2012, when he signed his agreement.  Myler Decl. Ex. H, Release Agreements, at 1. The agreement also specifically lists the "Employee Retirement Income Security Act" as one of the statutes under which employees were releasing claims. *Id.* at 1-2.

As a general rule, claims under ERISA are waived if they are "clearly and expressly" released.  *Gonda v. Permanente Med. Group, Inc.*, 2017 WL 2241824, at *1 (9th Cir. May 22, 2017).  That standard is plainly satisfied here. The named Plaintiffs accepted compensation in exchange for a release that specifically includes ERISA claims.

We acknowledge, however, that courts are divided on whether a different standard applies to breach of fiduciary duty claims.  In *Bowles v. Reade*, 198 F.3d 752 (9th Cir. 1999), the Ninth Circuit held that a particular plan participant in a defined-benefit plan (*i.e.*, not an individual account plan, as is at issue here) could not grant a release of a claim for breach of fiduciary duty without the consent of her plan.  Some district courts in this Circuit have applied *Bowles* to mean that a plan participant can *never* individually release an ERISA claim for breach of fiduciary duty.[18]  One district court in this Circuit (and several courts outside the Circuit) have held otherwise.[19]

The correct interpretation of *Bowles* limits its application to traditional, defined-benefit pensions, where participants have no individual claims and instead share a common stake in a plan's single claim for breaches of fiduciary duty that undermine the plan's funding.  The claimant in *Bowles* was a participant in a

---

[18]  *See, e.g.*, *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 818788 (Jan. 17, 2017); *In re JDS Uniphase Corp. ERISA Litig.*, 2006 WL 2597995 (N.D. Cal. Sept. 11, 2006).

[19]  *See, e.g.*, *Howell v. Motorola, Inc.*, 633 F.3d 552, 560 (7th Cir. 2011); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 313 (5th Cir. 2007); *Abbott v. Lockheed Martin Corp.*, 286 F.R.D. 388, 396 (S.D. Ill. 2012), *rev'd in part on other grounds*, 725 F.3d 803 (7th Cir. 2013); *Carr v. Int'l Game Tech.*, 2012 WL 909437 (D. Nev. Mar. 16, 2012).

pension plan who filed a breach of fiduciary duty action against the executrix of the plan's original trustee, alleging that the late fiduciary had imperiled participants' pensions by paying excessive benefits to himself.  After the plaintiff purported to settle her individual claim with the executrix, the executrix sought to be dismissed from the case entirely.  The Ninth Circuit held that the executrix could not be dismissed "[b]ecause [the plaintiff's] claims are not truly individual." 198 F.3d at 760.  That makes sense because a pensioner in a defined benefit plan cannot pursue a breach of fiduciary duty action to receive an individual payment; she can only seek to have the plan made whole, which increases the chances that there will be money from which her benefits will be paid.

Since *Bowles*, the Supreme Court has materially distinguished the defined-benefit from the defined-contribution context for fiduciary breach cases.  In *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008), the Court held that, whereas a defined-benefit plan participant can file a breach-of-fiduciary-duty action only if all plan participants will benefit equally, a defined-contribution plan participant can file a breach-of-fiduciary-duty action that benefits only his individual account. In the defined-contribution context, a plan participant is not necessarily pursuing a claim for all plan participants; there is no reason why an individual claim cannot be released.  Neither the text nor the spirit of *Bowles* invalidates or limits the releases these Plaintiffs signed.  They are, therefore, not suitable representatives of a class of individuals whose claims are untarnished by waiver.[20]

**B.    Named Plaintiffs who are former participants do not share current participant interests.**

Messrs. Hall and Hylton are also atypical because they withdrew all of the money from their accounts and are no longer Plan participants.  Six months before

---

[20] *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594-95 (3d Cir. 2009) (vacating class certification order in light of execution of release by class representative); *Langbecker*, 476 F.3d at 313; *Carr*, 2012 WL 909437, at *6 (same).

16

filing this action, Mr. Hall used the proceeds of his Plan account to purchase an annuity.  Hall Dep. at 20:14-25.  Mr. Hylton rolled over his Plan account to a new employer's account approximately three years ago.  Myler Decl. Ex. B, Deposition of Harold Hylton ("Hylton Dep.") at 12:2-13:13.

We do not doubt that Messrs. Hall and Hylton would be entitled to participate in any class-wide recovery that pertains to the period they were participants in the Plan (setting aside Mr. Hylton's release of claims).  *See, e.g.*, *Harris v. Amgen, Inc.*, 573 F.3d 728, 734 (9th Cir. 2009).  But the limited timeframe of their claims gives them a different set of interests from those who remain in the Plans.  *See, e.g.*, *DeFazio v. Hollister, Inc.*, 636 F. Supp. 2d 1045, 1076 (E.D. Cal. 2009) (finding that former participants lack standing to seek prospective injunctive relief).

The timing of plaintiffs' claims matters because they are suing a changing cast of individual fiduciaries for decisions and omissions that occurred at particular points in time:

> Unlike a securities fraud lawsuit, in which class members have a uniform purpose in proving material misrepresentations by company defendants at specific points, here the goal is to second-guess judgments made by the [defendants] involving a multitude of considerations over a period of years.  The facts, once known, may bear out different legitimate theories as to when EDS Stock Fund became an imprudent investment; each theory will have different consequences for class member's recovery.

*Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007) (vacating class certification order).  Here, too, each class member's recovery would require more than establishing that service fees were excessive in the aggregate.  This Court would be forced to examine the individual performance of each participant's account to adjudicate the appropriateness of the fees.  A participant satisfied with his or her earnings may not agree that the fees paid were excessive.  Another participant may desire a particular fund and have no qualms about paying for the

17

opportunity.  Just as the Plan did not invest as a whole, neither did the individual participants share common investment perspectives when structuring their retirement portfolios.  Because Messrs. Hall and Hylton are not in the same position as the typical class member who is still participating in the Plan, they are atypical representatives.

### C. Plaintiffs' exceptional ignorance of their claims proves them inadequate representatives of a class.

A class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To enforce that obligation, class certification must be denied "when the class representatives ha[ve] so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys."  *Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 587 (W.D. Wash. 2008) (internal quotation marks omitted); *see also* 5 Moore's Federal Practice § 23.25[2][c] (3d ed. 2016) ("[T]he class representative must possess at least a minimal degree of knowledge regarding the class action.  The class representative should also have a general understanding of the nature of class-action litigation.") (footnotes omitted).

Defendants frequently challenge the qualifications of putative class representatives, and their challenges are frequently overruled—as was the case in *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *14 (C.D. Cal. Mar. 29, 2011).  But if the adequacy standard *ever* excludes unqualified class representatives, it applies here, where the engagement of the named Plaintiffs, with the substance of "their" claims and the process for pursuing them, belies any suggestion that these individuals are bona fide representatives advocating for the interests of a class.  Rather, the deposition testimony of these Plaintiffs leaves no doubt that Plaintiffs lack sufficient knowledge and engagement to advocate for the interests of the class they seek to represent.

Take Mr. Brooks, the only proposed class representative who used the

18

Financial Engines advisory service and one of two proposed class representatives for the Emerging Markets claim.  On the latter claim, Mr. Brooks testified that he did not know whether he had invested in the Emerging Markets Fund and expressed no knowledge of the fact that he had filed a lawsuit challenging that Fund.  Brooks Dep. at 52:21-53:4.  With respect to Financial Engines, Mr. Brooks did not know whether his use of the service was mandatory or optional and did not know whether he paid fees for using the service.  *Id.* at 17:20-18:13.  His expressed concern about Financial Engines, seemingly unrelated to the claim in the case, is that if the value of a participant's account "go[es] down, you shouldn't have to pay."  *Id.* at 25:9-26:11.   Mr. Brooks could not identify the plaintiffs or the defendants in the case, the parties' claims, or the time period covered by the case. *Id.* at 38:14-41:2  He testified that he was not aware of any responsibilities that he would have as a class representative. *Id.* at 58:1-6. He did not review the responses to interrogatories that his counsel submitted on his behalf, *id*. at 38:2-13, and, indeed, revealed at his deposition that he has not been paying any attention to the proceedings:

> Q. Mr. Brooks, can you describe for me the status of this case?
>
> A. Can you rephrase the question, make it more meaningful? Exactly what are you—
>
> Q. Sure. I'm wondering what has happened so far in the lawsuit that you filed.
>
> A. What has happened?
>
> Q. Correct.
>
> A. What has happened. Nothing that I know of. This is the first thing that has happened, in my opinion.

*Id.* at 60:17-61:5.   Mr. Brooks' testimony revealed his "undeniable and overwhelming ignorance regarding the nature of th[e] action, the facts alleged, and the theories of relief." *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007); *see also Levine v. Berg*, 79 F.R.D. 95, 98 (S.D.N.Y. 1978) (denying class certification where plaintiff was "unable to articulate, with any

19

1   quantum of comprehension, the wrong purportedly practiced upon her and the
2   proposed class").

3        The other named Plaintiffs likewise have revealed themselves to be "true
4   'stand-in' parties, selected by lawyers to fill a required role." *In re Quarterdeck*
5   *Office Systems, Inc., Securities Litig.*, 1993 WL 623310, *6 (C.D. Cal. Sept. 30,
6   1993); *see Bodner*, 2007 WL 1223777, at *2 ("It is clear . . . that plaintiff's
7   counsel, and not the plaintiff, is the driving force behind this action.").

8        When Mr. Hylton was asked to explain the status of his lawsuit, he
9   responded colorfully: "No, I don't have a clue.  No."  Hylton Dep. at 40:17-22.
10  Mr. Hylton did not use Financial Engines and did not invest in the Emerging
11  Markets fund, so his only interest is in the claims that Northrop was improperly
12  reimbursed or permitted Hewitt to charge excessive fees.  But Mr. Hylton did not
13  know *whether* Northrop provides services to the Plan, let alone whether those
14  reimbursements are the topic of his lawsuit.  *Id.* at 41:11-14 ("Q. Do you know if
15  reimbursements to Northrop are part of the complaint that you have made to the
16  court?"; "A. I have no idea, no.").  As he explained his claim, he thinks that the
17  amount of fees was improperly "hidden" and not properly disclosed.  *Id.* at 16:3-
18  16.  He thought that Fidelity, not Hewitt, served as the recordkeeper, and had no
19  understanding of whether they were "paid too much or too little." *Id.* 42:14-43:10.

20       The lack of engagement pervades each of the named Plaintiffs, who were
21  recruited by Plaintiffs' counsel with advertisements placed on social media.  *Id.* at
22  37:4-18, 39:14-40:3.   Mr. Hendrickson and Mr. Gonzalez are unfamiliar with
23  Hewitt and do not know whether Hewitt ever provided any services to the Plan.
24  Hendrickson Dep. 35:8-13; Myler Decl. Ex. E, Deposition of Manuel Gonzalez
25  ("Gonzalez Dep.") at 36:18-37:6.  Mr. Hall does not know who his lawsuit is
26  against and is unfamiliar with Financial Engines.  Hall Dep. at 8:24-9:2, 26:13-15.
27  And Mr. Marshall has no view on whether Hewitt's fees were reasonable and does

28

not know whether Northrop provided services to the Plan or received fees from the Plan. Marshall Dep. at 76:1-77:9.[21]

"Class counsel must be monitored by an independent and informed client in order to protect the interests of the class members." *Serna v. Big A Drug Stores, Inc.*, 2007 WL 7665762, *3 (C.D. Cal. Oct. 9, 2007). The named Plaintiffs have exhibited no ability to serve that role.

## VI.   PLAINTIFFS DO NOT SATISFY ANY OF THE REQUIREMENTS OF RULE 23(b).

Finally, Plaintiffs' motion should be denied because they have not established their entitlement to proceed under any of the requirements of Rule 23(b), as they must for class certification. Plaintiffs' motion invokes subparts (1) and (3) of that Rule, but neither is appropriate for this case.

### A.   A Rule 23(b)(1) class is inappropriate.

Rule 23(b)(1) permits certification of a non-opt-out class where

> prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Certification under Rule 23(b)(1)(A) is available where a defendant would be subject to multiple lawsuits that could result in conflicting injunctions governing its future conduct. Certification under that provision is not available in cases where the plaintiffs are effectively seeking monetary relief. As the Ninth

---

[21] Mr. Marshall is also an atypical class representative because he is subject to an individualized defense. Mr. Marshall testified that he became aware of the excessive fees being charged by the Plan in 2012, but waited until 2016 to file suit. Marshall Dep. 10:8-12:11, 15:2-25. In light of the three-year limitations period, his claims are untimely.

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
Case No. 16-CV-6794 AB (JCx)

Circuit has held, that provision "requires more … 'than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts....'" *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1773, at 429 (2d ed. 1986)).

Plaintiffs claim that their class can be certified under Rule 23(b)(1)(A) because, "[i]n discharging their duties to the Plan, Defendants *were* obligated to treat all participants (hence all class members) alike." Mot. Class Cert., Dkt. 83-1, at 16 (emphasis added). But Rule 23(b)(1)(A) is concerned with a defendant's *future* conduct, not its past obligations, so Rule 23(b)(1)(A) is inapposite. *See In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 303 (E.D.N.Y. 2006) ("As plaintiffs seek only a declaration of legal liability for past acts, … Rule 23(b)(1)(A) certification is inappropriate in this case.").

Rule 23(b)(1)(B) is available in cases where the plaintiffs' rights are necessarily bound together—like when they must collect from a limited fund or are seeking joint relief. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832-37 (1999). That provision is typically used when participants in *defined benefit* plans seek relief under ERISA, because, as discussed above, the relief that they seek is necessarily for all plan participants collectively. *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 677 (W.D. Wash. 2010) ("Where, as here, the primary relief is to the Plan as a whole, then adjudications with respect to any individual member of the class would, as a practical matter, alter the interests of other members of the class.").

To be sure, some courts have applied the defined benefit cases certifying 23(b)(1)(B) classes to the defined contribution context. *See, e.g.*, *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, at *18 (C.D. Cal. Mar. 29,

22

2011).   But others have recognized that the distinction drawn by the Supreme Court in *LaRue* between defined benefit and defined contribution claims matters here, too.   As Judge Selna found in rejecting a Rule 23(b)(1)(B) class, "*LaRue* cures any concern that the potential class members' claims would essentially be disposed of by this litigation. … Because the putative class members have an individual remedy, they can pursue relief on their own behalf." *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 622 (C.D. Cal. 2009); *see also Russell v. Kohl's Dep't Stores, Inc.*, 2015 WL 12748629, at *4-5 (C.D. Cal. Dec. 4, 2015); *Carr*, 2012 WL 909437, at *7 (D. Nev. Mar. 16, 2012); *In re Fremont Gen. Corp. Litig.*, 2010 WL 3168088, at *5 (C.D. Cal. Apr. 15, 2010); *In re Comp. Sci. Corp.*, 2008 Wl 7527874 (C.D. Cal. Sept. 2, 2008).

Plaintiffs acknowledge that "there would be no *res judicata* effect against absent participants," but they claim that, "as a 'practical matter' a prior adjudication will at least influence a subsequent court's adjudication of the same claims." Dkt. 83-1, at 17.  If that were the standard, then virtually all cases would be certified under Rule 23(b)(1).  But, particularly in view of the due process concerns that accompany a non-opt-out class, courts have been unwilling to approve 23(b)(1) classes unless the circumstances so require.  *See In re Paxil Litig.*, 212 F.R.D. 539, 553 (C.D. Cal. 2003) ("[T]he class members are both bound by the judgment and yet not entitled to notice raises strong due process concerns. Hence, Rule 23(b)(1)(B) is narrowly construed and courts are wont to certify under Rule 23(b)(1)(B) except in the most compelling situations.") (citing *Ortiz*, 527 U.S. at 842-45); *see also Colesberry v. Ruiz Food Prods., Inc.*, 2006 WL 1377011, at *2-3 (E.D. Cal. May 18, 2006) (similar).

At a minimum, Plaintiffs have not shown and cannot show that adjudications here would be dispositive of all of the other participants' interests if not addressed as a class.  As explained previously, Plaintiffs have cast too wide a net in seeking

to represent past, present, and future participants in a lawsuit with a number of distinct claims against a number of alleged fiduciaries over a multi-year span. Logically, any adjudication as to the personal liability of a fiduciary in 2010 will have no bearing on a future participant's claim. The same can be said multiple times over, where myriad participants with fluctuating Plan tenures are seeking to make claims against twenty-three potential defendants, mostly long gone from the company. Simply said, this is not a neat package of identical claims by a set of similarly-situated participants over identical events during the same time period, which once adjudicated, would prejudice the rights of all of the other individuals plaintiffs seek to represent.

### B.    A Rule 23(b)(3) class is inappropriate.

Finally, Plaintiffs seek to certify a class under Fed. R. Civ. P. 23(b)(3). Under that provision, a class action may be certified if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

"In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. Here, the individual defenses overpower any common claim, which would make class determination unduly complex.

In the early stages of this case, a host of individualized defenses have

24

already been identified.   Participants with actual knowledge of the *Grabek* litigation are subject to statute of limitations defenses.   Individuals who signed releases are subject to dismissal.   And temporal differences about who participated in the Plan at different points in time—and who was serving as a fiduciary—create a web of individualized considerations, making it virtually impossible to manage Plaintiffs' claims as a class action.

Plaintiffs cannot show commonality, let alone make the "far more demanding" showing that common issues predominate over individualized inquiries, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). *See, e.g.*, *In re Principal*, 2013 WL 7218827, at *34–36 (denying motion to certify § 502(a)(2) claims under Rule 23(b)(3)); *see also In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2014 WL 6888549, at *21 (C.D. Cal. Sept. 3, 2014). Plaintiffs challenge a multitude of plan practices—the relationship with Financial Engines, the charges by Hewitt, the administration of the Emerging Markets Fund, and Northrop's services.   Plaintiffs have not shown—nor realistically could they show—that each past, present, and future participant experienced the acts of which they complain.   Plaintiffs themselves have defeated their ability to represent a Rule 23(b)(3) class by their expansive "kitchen sink" approach.

## CONCLUSION

Plaintiffs' motion for class certification should be denied.

Dated:  August 25, 2017

MAYER BROWN LLP
Nancy G. Ross
Brian D. Netter
Laura Hammargren
Samuel P. Myler
Dale J. Giali


 */s/ Samuel P. Myler*
Samuel P. Myler
*Attorneys for Defendants*