JEROME J. SCHLICHTER (SBN 054513)
jschlichter@uselaws.com
NELSON G. WOLFF (admitted *pro hac vice*)
nwolff@uselaws.com
KURT C. STRUCKHOFF (admitted *pro hac vice*)
kstruckhoff@uselaws.com
SEAN E. SOYARS (admitted *pro hac vice*)
ssoyars@uselaws.com
SCHLICHTER, BOGARD & DENTON LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone:  (314) 621-6115
Facsimile:  (314) 621-5934
*Lead Counsel for All Plaintiffs*

WILLIAM A. WHITE (SBN 121681)
wwhite@hillfarrer.com
HILL, FARRER & BURRILL LLP
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Facsimile:  (213) 620-4840
*Local Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### (Western Division)

| | |
|---|---|
| CLIFTON W. MARSHALL, et al., | Case No. 16-CV-6794 AB (JCx) |
| *Plaintiffs*, | **MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY DEFENDANTS' EXPERT MARCIA WAGNER** |
| v. | |
| NORTHROP GRUMMAN CORPORATION, et al., | |
| *Defendants*. | Date: March 29, 2019 |
| | Time: 10:00 a.m. |
| | Courtroom 7B – 7th Floor |
| | Hon. André Birotte Jr. |

# Table of Contents

BACKGROUND ........................................................................................................ 2

ARGUMENT ........................................................................................................... 5

I. Through his prior representation of the *Grabek* plaintiffs and class, Ms. Wagner's law partner Mr. Clark had a confidential relationship and gained confidential information related to Plaintiffs' claims. .................................................................................. 7

II. Disqualification is warranted because if she testified, Ms. Wagner's imputed conflict would violate the California and Massachusetts Rules of Professional Conduct ................................... 10

A. Rules of Professional Conduct prohibit Mr. Clark, who formerly represented the *Grabek* plaintiffs and class members here, from representing the Defendants in this substantially related case, and his partner, Ms. Wagner, is likewise prohibited ................................................................. 11

B. Mr. Clark's conflict is imputed to Ms. Wagner. .................... 14

III. Apart from the above, Ms. Wagner should be barred because she has a separate conflict involving her proposed testimony against her law firm's client Mr. Witz. ........................................................ 19

CONCLUSION ...................................................................................................... 21

**Table of Authorities**

**CASES**

*Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,*
   96 Cal. App. 4th 1017 (Cal. Ct. App. 2002)......................................................... 6

*Am. Empire Surplus Lines Ins. Co. v. Care Centers, Inc.,*
   484 F.Supp.2d 855 (N.D. Ill. 2007)...................................................................... 9

*Ames v. State Bar,*
   8 Cal.3d 910 (Cal. 1973) .................................................................................... 20

*Attic Tent, Inc. v. Copeland,*
   No. 06-66, 2006 U.S.Dist.LEXIS 57601 (W.D.N.C. Aug. 14, 2006)............... 11

*Beltran v. Avon Prod., Inc.,*
   867 F.Supp.2d 1068 (C.D. Cal. 2012).................................................................19

*Brand v. 20th Century Ins. Co./21st Century Ins. Co.,*
   124 Cal. App. 4th 594, 21 Cal. Rptr. 3d 380 (2004) ................................... 10, 13

*Campbell Indus. v. M/V Gemini,*
   619 F.2d 24 (9th Cir. 1980) .................................................................................. 5

*City and Cty. of San Francisco, v. Cobra Solutions, Inc.,*
   38 Cal. 4th 839 (2006)........................................................................................ 8

*City of San Antonio v. Edwards Aquifer Auth.,*
   No. 12-620, 2014 WL 12495317 (W.D. Tex. Sept. 30, 2014)...................... 6, 11

*Concat LP v. Unilever, PLC,*
   350 F.Supp.2d 796 (N.D. Cal. 2004)................................................................. 21

*Del Campo v. Mealing,*
   No. 01-21151, 2011 WL 6176223 (N.D. Cal. Dec. 7, 2011)...................... 13, 14

*Fant v. City of Ferguson,*
   No. 15-253, 2017 WL 3392073 (E.D. Mo. Aug. 7, 2017)................................ 17

*Flatt v. Superior Court,*
   9 Cal. 4th 275 (Cal.1994) .................................................................................. 15

*Hewlett-Packard Co. v. EMC Corp.,*
   330 F.Supp.2d 1087 (N.D. Cal. 2004)......................................................... 5, 7, 8

*Hickman v. Taylor,*
   329 U.S. 495 (1947) ............................................................................... 9

*Hitachi, Ltd. v. Tatung Co.,*
   419 F.Supp.2d 1158 (N.D. Cal. 2006) ................................................... 17

*In re Marriage of Zimmerman,*
   16 Cal. App. 4th 556 (Cal. Ct. App. 1993) ........................................... 17

*In re Northrop Grumman Corp. ERISA Litig.,*
   No. 06-6213 AB (JCx) (C.D. Cal.) ......................................................... 1

*In re Northrop Grumman Corp. ERISA Litig.,*
   No. 06-6213 MMM (JCx), 2011 WL 3505264 (C.D. Cal. Mar. 29,
   2011) ................................................................................................. 7, 14

*j2 Glob. Commc'ns, Inc. v. EasyLink Servs. Int'l Corp.,*
   No. 09-4189 DDP (AJWx), 2012 WL 6618609 (C.D. Cal. Dec. 19,
   2012) ..................................................................................................... 19

*Kirk v. First Am. Title Ins. Co.,*
   183 Cal. App. 4th 776 (Cal. Ct. App. 2010) ................................... 17, 18

*Meza v. H. Muehlstein & Co.,*
   176 Cal. App. 4th 969 (Cal. Ct. App. 2009) ............................... 8, 9, 15

*N. Pacifica, LLC v. City of Pacifica,*
   335 F.Supp.2d 1045 (N.D. Cal. 2004) ................................................. 11

*Parks v. Eastwood Ins. Servs., Inc.,*
   235 F.Supp.2d 1082 (C.D. Cal. 2002)(Taylor, J.) ............................... 14

*Pellerin v. Honeywell Int'l Inc.,*
   No. 11-1278, 2012 WL 112539 (S.D. Cal. Jan. 12, 2012) ..................... 6

*People ex rel. Dep't of Corps. V. SpeeDee Oil Change Sys., Inc.,*
   20 Cal. 4th 1135, 980 P.2d 371 (1999) ............................................... 15

*Plumley v. Doug Mockett & Co.,*
   No. 04-2868 GHK (Ex), 2008 WL 5382269 (C.D. Cal. Dec. 22,
   2008) ............................................................................... 6, 8, 10, 13, 15

*Sharp v. Next Entm't, Inc.,*
   163 Cal. App. 4th 410 (Cal. Ct. App. 2008) ........................................ 14

*Stencel v. Fairchild Corp.*,
   174 F.Supp.2d 1080 (C.D. Cal. 2000)...................................................5, 7, 8

*Trone v. Smith*,
   621 F.2d 994 (9th Cir. 1980) ...............................................................15

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) ..................................................................9

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,
   98 F.Supp.3d 1074 (C.D. Cal. 2015)..........................................17, 21

*Walker v. Apple, Inc.*,
   4 Cal. App. 5th 1098 (Cal. Ct. App. 2016)..................................14, 20

**OTHER AUTHORITIES**

ABA Model R. Prof. Conduct ...................................................................14

ABA Model Rule 1.7 ...............................................................................13

Cal. Civ. Proc. Code §2018.020 ...............................................................9

Cal. R. Prof. Conduct 1.10.....................................................................7, 16

Cal. R. Prof. Conduct 1.10(a) ................................................................11

Cal. R. Prof. Conduct 1.10(a)(2) .......................................................16, 17

Cal. R. Prof. Conduct 1.10(a)(2)(i).....................................................15, 16

Cal. R. Prof. Conduct 1.10(a)(2)(ii)–(iii) ..............................................16

Cal. R. Prof. Conduct 1.6........................................................................7, 8

Cal. R. Prof. Conduct 1.7.........................................................................20

Cal. R. Prof. Conduct 1.7(a) ...................................................................20

Cal. R. Prof. Conduct 1.9.....................................................................12, 13

Cal. R. Prof. Conduct 1.9(a) ................................................................11, 14

Cal. R. Prof. Conduct 1.9(b) .............................................................11, 12, 14

California Business and Professions Code §6068(e) .................................8

Mass. R. Prof. Conduct 1.10 ............................................................. 7, 11, 18

Mass. R. Prof. Conduct 1.10(d) ....................................................... 12, 15, 18

Mass. R. Prof. Conduct 1.10(e)(4) ........................................................... 18

Mass. R. Prof. Conduct 1.6 ...................................................................... 8

Mass. R. Prof. Conduct 1.7 ............................................................... 13, 14

Mass. R. Prof. Conduct 1.7(a) ................................................................ 20

Mass. R. Prof. Conduct 1.9 ................................................................... 13

Mass. R. Prof. Conduct 1.9(a) .......................................................... 11, 15

Mass. R. Prof. Conduct 1.9(b) .......................................................... 11, 15

This case is related to an earlier case—*In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213 AB (JCx) (C.D. Cal.) ("*Grabek*")—which alleged that the same fiduciaries of the Northrop Grumman Savings Plan ("Plan") violated the Employee Retirement Income Security Act ("ERISA") by unlawfully diverting Plan assets to Northrop in the guise of administrative fees. After the Court limited the damages discovery period to May 11, 2009 in *Grabek*, Doc. 652 at 3, 7–8, Plaintiffs filed this action to recover the continued unlawful payments to Northrop occurring after that date. Doc. 1 ("*Marshall*").[1] Some of the same actions and allegations in the *Grabek* case are also at issue in the *Marshall* case.

During the *Grabek* litigation, Plaintiffs' counsel in both cases, Schlichter, Bogard & Denton, employed an associate, Thomas E. Clark, Jr., who was deeply involved in developing the claims asserted in *Grabek* and later in *Marshall*, and acquired confidential information, including sensitive work product of Plaintiffs' attorneys. Mr. Clark left Schlichter, Bogard & Denton while summary judgment was pending in *Grabek*, and is now a partner of Marcia Wagner, the principal of The Wagner Law Group. Ms. Wagner has accepted employment as an expert witness to testify in this case on behalf of the Defendants regarding the same unlawful payments claim that Mr. Clark worked to develop in *Grabek*.

As explained further below, Ms. Wagner is disqualified from testifying as an expert in this case. Substantial authority provides that an attorney who serves as an expert witness remains subject to applicable rules of professional conduct. Ms. Wagner's law partner, Mr. Clark, would have a direct and unavoidable conflict of interest, if he were to be involved for Northrop Grumman, because he previously represented the plaintiff class in *Grabek*. Under applicable rules and case law, that

---

[1] In addition to the claim regarding unlawful payments of Plan assets to Northrop, Plaintiffs here assert claims related to the unreasonable recordkeeping and administrative expenses charged to the Plan and the imprudent Emerging Markets Equity Fund.

conflict is imputed to his entire law firm, including Ms. Wagner. Moreover, Ms. Wagner has a separate issue requiring her disqualification. Ms. Wagner's office, through Mr. Clark, has directly contacted one of Plaintiffs' expert witnesses, David Witz, in this case. ████████████████ ██████████████████████████████████████████ ██████████████████████. Disqualification of Ms. Wagner is the only remedy that can protect the confidentiality of information disclosed to Mr. Clark, avoid the conflict with her client, Mr. Witz, and avoid the appearance of impropriety in these proceedings.

## BACKGROUND

On October 15, 2018, Defendants disclosed Marcia Wagner as a retained expert in rebuttal to Plaintiffs' expert, David Witz, regarding the payments to Northrop Grumman from Plan assets for expenses Northrop Grumman incurred for purported services performed by Northrop employees. *See* Ex. A (Wagner Expert Report; sealed).[2] Ms. Wagner is a Massachusetts-licensed attorney who is the founder and managing partner of The Wagner Law Group, P.C.. *Id.*¶1 and Appx. A. As an attorney, she focuses her practice exclusively in the area of pension and employee benefits law. *Id.*

For several years prior to her engagement in this matter, Ms. Wagner has employed Thomas E. Clark, Jr., as a partner in her law firm. *See* Ex. B, Wagner Dep. 90:17–91:7 (sealed).[3] According to Ms. Wagner, ████████████ ██, *id.* at 91:2–7, and has "contributed significantly to the growth of [her] firm." *See* Apr. 26, 2017 Press Release, *Premier ERISA Law Firm, The Wagner Law Group, Reinforces its Leadership with the Appointment of Thomas E.Clark, Jr. as*

---

[2] Exhibits referenced herein are attached to the Declaration of Jerome J. Schlichter ("Schlichter Decl.") with the exception of Exhibits A and B that have been filed under seal.

[3] *See also* https://www.wagnerlawgroup.com/professionals/thomas-clark.

*Partner*.[4] Mr. Clark previously worked as an associate at Schlichter, Bogard & Denton, LLP, from 2008 through 2013, and was an attorney of record for Plaintiffs in the *Grabek* case. Schlichter Decl. ¶3; *Grabek*, Doc. 139 (*pro hac vice* application granted); *Grabek*, Doc. 532 (Aug. 6, 2013)(notice of withdrawal). During his tenure at Schlichter, Bogard & Denton, Mr. Clark was significantly involved in the representation of the plaintiffs in the substantially related *Grabek* action against Northrop and the Plan's fiduciaries. Schlichter Decl. ¶¶3–4. Mr. Clark had regular attorney-client communications with the named plaintiffs regarding the litigation, and was a central member of the litigation team that investigated, analyzed, and developed the claims asserted in *Grabek*, including the unlawful payments claim that was also later brought in this matter. *Id.* In total, Mr. Clark spent over 2,500 attorney hours representing the *Grabek* plaintiffs and the class. *Id.* ¶4.

As a member of the litigation team, Mr. Clark received confidential work product of Plaintiffs' attorneys, including that related to their trial strategy, assessment of the strengths and weaknesses of the case, and other highly sensitive information provided in anticipation of litigation. *Id.* ¶4. Mr. Clark's role in the prior litigation against Northrop is amply shown on the *Grabek* docket. *See, e.g., Grabek*, Doc. 159 (attendance at settlement conference), Doc. 172-5 at 6 (listed on firm bio), Doc. 375 at 26 (identified as an attorney to be designated as class counsel), Docs. 475 and 494 (Clark declarations submitted in opposition to summary judgment).

That this litigation and *Grabek* are substantially related is undisputed. Both actions involve similar ERISA claims on behalf of the same retirement Plan and certified classes of Plan participants against the Plan's fiduciaries related to the unlawful payment of Plan assets to Northrop Grumman. *Grabek*, Doc. 338 (Second

---

[4] https://globenewswire.com/news-release/2017/04/26/973051/0/en/Premier-ERISA-Law-Firm-The-Wagner-Law-Group-Reinforces-its-Leadership-With-the-Appointment-of-Thomas-E-Clark-Jr-as-Partner.html.

Am. Complaint); *Marshall,* Doc. 132 (Second Am. Complaint).[5] Because both actions were related, this case was transferred to this Court's calendar in accordance with General Order 14-03. Doc. 9. The Court specifically noted that *Grabek* alleged "'substantially similar allegations to those in this action,' including that Defendants 'charged excessive and prohibited administrative fees to the [the Plan] for unnecessary services to pay off its own corporate expenses.'" *Grabek,* Doc. 802 at 2 (*quoting* Mot. to Intervene, and *citing Marshall* complaint). Defendants themselves even referred to this action as "*a sequel*" to *Grabek*, noting that "*[m]embers of the Grabek class who participate in the plans have, through this action, asserted a similar claim for a later time period not covered by Grabek*[.]" Doc. 76 at 3 (emphasis added). The certified class in *Marshall* also "includes numerous individuals who were class members in *Grabek*," Doc. 130 at 13, including *Grabek* Class Representatives Gary Grabek and Mark Geuder. *See Grabek,* Doc. 777 at 50–23–24, 81:20–23, 83:5–7 (trial testimony of Grabek and Geuder confirming participation during the *Marshall* class period).

Following Defendants' disclosure of Ms. Wagner as a rebuttal expert, on October 25, 2018, Plaintiffs' counsel notified Defendants of Ms. Wagner's imputed conflicts of interest due to Mr. Clark's prior representation of the *Grabek* plaintiffs, and that Plaintiffs would move to disqualify Ms. Wagner if she were not withdrawn. *See* Ex. C. On October 29, 2018, Defendants refused to withdraw Wagner as an expert. *See* Ex. D.

Plaintiffs deposed Ms. Wagner on November 19, 2018. *See* Ex. B. ████████
███████████████████████████████████████████████████████
██████████████████████████████████████████ Schlichter Decl. ¶5; Ex.

---

[5] *Grabek* involved claims on behalf of both the Plan and another Northrop Grumman-sponsored defined contribution plan, the Northrop Grumman Corporation Financial Savings and Security Program, which is not part of this case.

B, Wagner Dep. 124:12–15. ███████████████████████████████████

███████████████████████████. *See* Ex. B, Wagner Dep. 121:7–16.

Apart from the imputed conflict arising from Mr. Clark's representation of the *Grabek* class, ████████████████████████████████████████████

███████████ Mr. Witz is the founder and managing director of Fiduciary Risk Assessment LLC and its subsidiary FRA PlanTools, which provide consulting services to plan sponsors and advisors in the retirement plan industry.[6] ███████████

████████████████████████████████████████████████████████████

██████████████████████████████. Ex. B, Wagner Dep. 86:21–90:16. Despite Mr. Witz's vast, long-standing experience and expertise in the retirement industry and qualification as an expert witness in the *Grabek* trial, ██████████████████

███████████████████████████████████████████████████████. *See* Ex. A, ¶16. ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████. Ex. D at 2; *see also* Ex. B, Wagner Dep. 104:6–11, 105:3–9.

## ARGUMENT

This Court has the inherent authority to disqualify expert witnesses to "preserve the fairness and integrity of the judicial proceedings," *Stencel v. Fairchild Corp.*, 174 F.Supp.2d 1080, 1082–83 (C.D. Cal. 2000)(citation omitted), and to "protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp.*, 330 F.Supp.2d 1087, 1092 (N.D. Cal. 2004). *Cf. Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)(affirming exclusion of expert witness based on improper *ex parte* contact).

Here, there are two separate grounds on which Ms. Wagner is subject to disqualification. *First*, "where a party retains an expert witness who previously

---

[6] *See* David Witz Curriculum Vitae, https://plantools.com/assets/uploads/David%20Witz%20Curriculum%20Vitae.pdf.

worked for an adversary and who acquired confidential information during the course of his employment, disqualification may be appropriate." *Pellerin v. Honeywell Int'l Inc.*, No. 11-1278, 2012 WL 112539 at 2 (S.D. Cal. Jan. 12, 2012)(citation omitted). Mr. Clark had a confidential relationship and necessarily acquired confidential information while representing the Plaintiffs in *Grabek*. The significant risk that such information may be shared with his law partner, Ms. Wagner, warrants barring Wagner's testimony.

   *Second*, because Ms. Wagner is an attorney, she is subject to disqualification if her role would violate the rules of professional conduct, which continue to apply even when the attorney is not acting as counsel. *Plumley v. Doug Mockett & Co.*, No. 04-2868 GHK (Ex), 2008 WL 5382269 at 1–3 (C.D. Cal. Dec. 22, 2008) (applying California Rules of Professional Conduct to disqualify attorney-expert with imputed conflict); *Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,* 96 Cal. App. 4th 1017, 1034–35 (Cal. Ct. App. 2002) (finding that attorney-witness violated former Rule 3-310(E) of California Rules of Professional Conduct by accepting employment as witness adverse to former client); Mass. Ethics Op. No. 99-3 (concluding that Rule 1.9 regarding duties to former client apply to an attorney serving as a testifying expert);[7] *City of San Antonio v. Edwards Aquifer Auth.,* No. 12-620, 2014 WL 12495317 at 2 (W.D. Tex. Sept. 30, 2014) ("[A] lawyer that takes on the task of testifying as an expert does not shed his responsibility to adhere to the rules of professional conduct that apply to lawyers."); *see also* Cal. R. Prof. Conduct 1.0, cmt. 2 ("a violation of a rule can occur when a lawyer is not practicing law or acting in a professional capacity"). Under the rules in California, which govern the conduct of attorneys before this Court (L.R. 83-3.1.2), and Massachusetts, where Ms. Wagner is licensed, Mr. Clark's conflict arising from his

---

[7] https://www.massbar.org/publications/ethics-opinions/ethics-opinion-article/ethics-opinions-1999-opinion-no-99-3/opinion-no-99-3#https://www.massbar.org/search. Ex. F.

representation of the *Grabek* plaintiffs is imputed to his entire firm, including Ms. Wagner. Cal. R. Prof. Conduct 1.10;[8] Mass. R. Prof. Conduct 1.10. Accordingly, Ms. Wagner should be barred from serving as an expert.

**I.     Through his prior representation of the *Grabek* plaintiffs and class, Ms. Wagner's law partner Mr. Clark had a confidential relationship and gained confidential information related to Plaintiffs' claims.**

Disqualification of an expert is warranted when the opponent: (1) had an objectively reasonable belief that a confidential relationship existed; and (2) disclosed confidential information to the expert. *Stencel*, 174 F.Supp.2d at 1083.

Here, Plaintiffs had an objectively reasonable belief that a confidential relationship existed with Mr. Clark given his position of trust as one of the attorneys representing the *Grabek* plaintiffs and as counsel to the certified class of 100,000 Plan participants,[9] and his receipt of confidential information that is material to these proceedings. Based on this attorney-client relationship, and Mr. Clark's access to confidential work product and litigation strategy, "there was a relationship that would permit the litigant reasonably to expect that any communications would be maintained in confidence." *Hewlett-Packard*, 330 F.Supp.2d at 1093 (citation omitted). Plaintiffs reasonably expected that an attorney previously employed by Plaintiffs' counsel would maintain the confidential information that he received that is material to these proceedings in confidence. *Cf.* Cal. R. Prof. Conduct 1.6 (duties to protect confidential information).

---

[8] Effective November 1, 2018, the California Supreme Court approved new Rules of Professional Conduct, including Rule 1.10. *See* https://www.calbar.ca.gov/Portals/0/documents/rules/New-Rules-of-Professional-Conduct-2018.pdf.

[9] *See In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213 MMM (JCx), 2011 WL 3505264, at 7 (C.D. Cal. Mar. 29, 2011) (granting certification of class of 107,152 active participants in the Plan).

Further, it is undisputed that confidential information was disclosed to Mr. Clark while representing the *Grabek* plaintiffs and class. *See Stencel*, 174 F.Supp.2d at 1083. Indeed, due to his direct involvement in *Grabek*—on which he logged over 2,500 hours (Schlichter Decl. ¶4)—Mr. Clark "is presumed to possess confidential information." *City and Cty. of San Francisco, v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006). Apart from client confidences disclosed to Mr. Clark that are protected by California Business and Professions Code §6068(e)[10] and Cal. R. Prof. Conduct 1.6,[11] he had access to highly sensitive attorney work product of Plaintiffs' attorneys pertinent to the claims asserted herein. *Stencel*, 174 F.Supp.2d at 1084;[12] *Meza v. H. Muehlstein & Co*., 176 Cal. App. 4th 969, 979–80 (Cal. Ct. App. 2009). For purposes of expert disqualification, confidential information is "information 'of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege.'" *Hewlett-Packard*, 330 F.Supp.2d at 1094 (citation omitted). Such information includes a party's "strategy in the litigation, the kinds of experts [the party]

---

[10] It is the duty of an attorney to "maintain inviolate the confidence, at every peril to himself or herself to preserve the secrets, of his or her client." Cal. Bus. & Prof. Code §6068(e)(1).

[11] Cal. R. Prof. Conduct 1.6, cmt. 2 ("lawyer-client confidentiality applies to information a lawyer acquires by virtue of the representation, whatever its source", and includes "matters protected by the work product doctrine"); *see also* Mass. R. Prof. Conduct 1.6, cmt. 3A (confidential information "consists of information gained during or relating to the representation of a client, whatever its source", including that protected by the attorney-client privilege or information that the lawyer agreed to keep confidential).

[12] Although *Stencel* found that confidential information in the form of work product was disclosed to the expert, the court declined to apply the imputed disqualification doctrine to the expert because the court was unable to identify any case law to support application of the doctrine to a conflicted expert rather than an attorney. 174 F.Supp.2d at 1084, 1087. Here, this Court is presented with a conflicted attorney who is *also* serving as a testifying expert, and as set forth herein, courts have applied the imputed disqualification doctrine to this situation. *E.g., Plumley,* 2008 WL 5382269 at 3.

expected to retain, [the party's] view of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses." *Id.* at 1094 (citation omitted). Mr. Clark had access to all of that information in *Grabek*, which necessarily also is relevant to this substantially related case with tens of thousands of the same clients.

Even though Mr. Clark obtained the confidential information in a different case, Plaintiffs would still be prejudiced if that knowledge is used against them here, because this case and *Grabek* are not only intimately related, but also involve many of the same facts and legal theories. Indeed, this Court has recognized the related nature of the cases, *Grabek*, Doc. 802 at 2, and Defendants themselves admit that this is a "*sequel*" to *Grabek*, Doc. 76 at 3. A large number of the 100,000 class members in this case were also class members in *Grabek*. Doc. 130 at 13. Allowing a former class counsel's new law partner to testify against his former clients would be "unseemly," and "undermine[] public confidence in the fairness and integrity of the judicial process." *Am. Empire Surplus Lines Ins. Co. v. Care Centers, Inc.*, 484 F.Supp.2d 855, 857 (N.D. Ill. 2007).  Disqualification is needed to protect the *Grabek* Plaintiffs' client confidences and to preserve the privilege that applies to Plaintiffs' counsel's work product, the purpose of which "is to protect the integrity of the adversary process." *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015)(citation omitted); *Hickman v. Taylor*, 329 U.S. 495, 510–511 (1947). Allowing Ms. Wagner to testify would undermine "California's policy in favor of protecting attorney work product." *Meza*, 176 Cal. App. 4th at 979; Cal. Civ. Proc. Code §2018.020. The Court should therefore exercise its inherent power to preserve the fairness and integrity of these proceedings by disqualifying former class counsel Mr. Clark's law partner Ms. Wagner from testifying against Plaintiffs and much of the class he represented.

**II.     Disqualification is warranted because if she testified, Ms. Wagner's imputed conflict would violate the California and Massachusetts Rules of Professional Conduct.**

Disqualification is also warranted when an attorney-expert has a conflict that would violate applicable rules of professional conduct. *Plumley*, 2008 WL 5382269 at 1–3. That is the case here.

In *Plumley*, the court disqualified an attorney from serving as a testifying expert in a matter substantially related to a prior matter where an attorney from his firm previously represented an adverse party. *Id*. at 3. This is what we have here, except this case is even stronger. In addition to the same clients, some of the facts and legal theories are the same in both cases. The *Plumley* court noted that under California Rule of Professional Conduct 3-310 (the prior version of current Rule 1.9), "[a]n attorney may not, without written consent, accept employment adverse to a former client on a matter substantially related to the prior representation." *Id.* at 1 (citation omitted). The proposed expert for the defendant was senior counsel of a law firm and another attorney in the firm previously represented the plaintiff, albeit in a limited capacity. *Id*. Because both matters were substantially related, and the firm's representation of the plaintiff in the prior action was imputed to the testifying expert, the court disqualified the expert. *Id.* at 3.[13] *The court specifically* rejected the argument that the expert should not be disqualified *because he was acting as an expert rather than a lawyer*. *Id*.

Other courts have also disqualified attorney-experts for similar reasons. *See Brand v. 20th Century Ins. Co./21st Century Ins. Co.*, 124 Cal. App. 4th 594, 602, 21 Cal. Rptr. 3d 380 (2004)(disqualified lawyer-expert from testifying against a former client in a substantially related matter); *City of San Antonio v. Edwards*

---

[13] The court noted that even if the California Supreme Court would allow an ethical screen of the conflicted lawyer to prevent disqualification of an entire firm, the screening procedures used by the expert in *Plumley* were ineffective. *Id.* at 2–3.

*Aquifer Auth.,* No. 12-620, 2014 WL 12495317, at 3 (W.D. Tex. Sept. 30, 2014)(lawyer expert disqualified from serving as an expert against former client of law firm because confidential information imputed to him); *Attic Tent, Inc. v. Copeland*, No. 06-66, 2006 U.S.Dist.LEXIS 57601 at 20–22, Doc. 74 at 12–13 (W.D.N.C. Aug. 14, 2006)(although lawyer-expert had not worked on patent application at issue or acquired confidential information, court disqualified expert to avoid "appearance of conflicts of interest"); *Cf. N. Pacifica, LLC v. City of Pacifica*, 335 F.Supp.2d 1045, 1049–50 (N.D. Cal. 2004)(lawyer-experts disqualified where law firm previously represented adverse parties). The reasoning of these decisions apply fully here.

> **A.    Rules of Professional Conduct prohibit Mr. Clark, who formerly represented the *Grabek* plaintiffs and class members here, from representing the Defendants in this substantially related case, and his partner, Ms. Wagner, is likewise prohibited.**

Rule 1.9 of the Rules of Professional Conduct in both California and Massachusetts provide that a lawyer may not, without written consent, accept employment adverse to a former client on a matter substantially related to the prior representation. Cal. R. Prof. Conduct 1.9(a), (b); Mass. R. Prof. Conduct 1.9(a), (b). These rules would plainly bar Ms. Wagner's law partner Mr. Clark from representing the Defendants. Because that conflict is imputed to Ms. Wagner, she also cannot accept employment on behalf of Defendants and adverse to the Plaintiffs. *See* Cal. R. Prof. Conduct 1.10(a); Mass. R. Prof. Conduct 1.10. The fact that Ms. Wagner is serving as an expert rather than a lawyer is immaterial. *City of San Antonio*, 2014 WL 12495317 at 2 ("[A] lawyer that takes on the task of testifying as an expert does not shed his responsibility to adhere to the rules of professional conduct that apply to lawyers."); Mass. Ethics Op. No. 99-3 (concluding that Rule 1.9 applies to an attorney serving as a testifying expert)(Ex. F).

There is no serious dispute that Mr. Clark, having formerly represented the *Grabek* plaintiffs, is prohibited from representing the Defendants in this matter. Indeed, multiple parts of California Rule 1.9 would bar that representation. Because Mr. Clark "formerly represented a client in [the *Grabek*] matter," he "shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." Cal. R. Prof. Conduct 1.9(a). And because a firm with which Mr. Clark was previously associated "had previously represented a client (1) whose interests are materially adverse to" Defendants, and (2) in so doing Mr. Clark acquired confidential information, section (b) prohibits Mr. Clark from representing the Defendants in "the same or a substantially related matter." Cal. R. Prof. Conduct 1.9(b); *see also* Mass. R. Prof. Conduct 1.10(d) (lawyers' new firm may not represent a person in the "same or substantially related to a matter in which the newly associated lawyer…had previously represented a client whose interests are materially adverse to the new firm's client").

Two of the *Grabek* named plaintiffs whom Mr. Clark personally and directly represented, Grabek and Geuder, are class members here (*Grabek,* Doc. 777 at 50–23–24, 81:20–23, 83:5–7), as are tens of thousands of other unnamed *Grabek* class members whom Clark formerly represented as class counsel (Doc. 130 at 13). The interests of those individuals are directly and materially adverse to the interests of the fiduciary-defendants in this case.

Moreover, this case is much more than "substantially related" to *Grabek*. A case is "substantially related" if there is a substantial risk that the attorney will "do anything that will injuriously affect the former client" from a prior matter or "use against the former client knowledge or information acquired by virtue of the previous relationship." Cal. R. Prof. Conduct 1.9, cmts. 1 and 3. This occurs if "the matters involve the same transaction or legal dispute or other work performed by

the lawyer for the former client." Cal. R. Prof. Conduct 1.9, cmt. 3; *Plumley*, 2008 WL 5382269 at 2 ("Two matters are substantially related if confidential information could have been disclosed."); *see also* Mass. R. Prof. Conduct 1.9, cmt. 3 (Matters are "substantially related" if they involved "the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally be obtained in the prior representation would materially advance the client's position in the subsequent matter.").

From a legal and factual perspective, both actions are substantially related because they involve virtually the same class of plaintiffs and the same Northrop Plan fiduciaries litigating over the same legal dispute, *i.e.*, allegations that Defendants breached their fiduciary duties by using Plan assets to pay salaries and fringe benefits of Northrop employees. *See Plumley*, 2008 WL 5382269 at 2 (two matters substantially related because they involve the same parties litigating over the same patent); *Brand,* 124 Cal. App. 4th at 606, 21 Cal. Rptr. 3d at 387 (similar factual and legal bases between cases deemed substantially related, "presenting a substantial risk 'that representation of the present client will involve the use of information acquired in the course of representing the former client'")(citation omitted).

Defendants may claim that Mr. Clark would not have a conflict because a comment to Rule 1.7 of the Massachusetts and ABA Model rules states that unnamed class members are ordinarily not considered to be clients of the lawyer for conflicts purposes, meaning Mr. Clark's ethical obligations extend only to the named class representatives in *Grabek*. *See* Ex. D at 1–2 (citing cmt. 25 to Mass. R. Prof. Conduct 1.7 and the ABA Model Rule 1.7, among others). That argument is unavailing for three reasons. *First*, the comment does not apply because the issue of whether informed consent from a named plaintiff is permissible to waive any potential conflict only applies when an action has not been certified. *Del Campo v. Mealing,* No. 01-21151, 2011 WL 6176223, at 4 (N.D. Cal. Dec. 7, 2011); *Sharp v.*

*Next Entm't, Inc.*, 163 Cal. App. 4th 410, 432 (Cal. Ct. App. 2008). In *Grabek*, a class of over 100,000 Plan participants was certified. Doc. 421; *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264 at 7, 18. Once the class was certified, the unnamed class members, including the *Marshall* Named Plaintiffs and Class Representatives, became clients of Plaintiffs' counsel for purposes of determining conflicts in this matter. *Walker v. Apple, Inc.,* 4 Cal. App. 5th 1098, 1107 (Cal. Ct. App. 2016); *see Marshall,* Doc. 64-4 ¶¶1, 3 (Hall declaration), *Marshall,* Docs. 83-6 – 83-11 ¶1 (Class Rep. declarations); Doc. 147 ¶¶11–16 (answer); *see also Del Campo*, No. 01-21151, 2011 WL 6176223 at 3–4 (class certification is point for determining representation for conflict purposes); *cf. Parks v. Eastwood Ins. Servs., Inc.*, 235 F.Supp.2d 1082, 1083 (C.D. Cal. 2002)(Taylor, J.)(after a class is certified, "absent class members are considered represented by class counsel").

*Second*, the comment's statement that unnamed class members are "ordinarily not considered to be clients of the lawyer" for purposes of conflicts with current clients, the comment conditions this statement on the two matters being "unrelated," which is not the case here. *See* Mass. R. Prof. Conduct 1.7, cmt. 25 ("a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an *unrelated matter*")(emphasis added); ABA Model R. Prof. Conduct, cmt. 25 (same). *Third*, comment 25 to Rule 1.7 of the Massachusetts and ABA rules was not adopted in the current California Rules of Professional Conduct, which govern the conduct of attorneys before this Court. L.R. 83-3.1.2.

## B.      Mr. Clark's conflict is imputed to Ms. Wagner.

Because Mr. Clark gained confidential information during his prior representation of the class members in a substantially related matter, he would be personally disqualified from accepting employment on behalf of the Defendants in this case unless he obtained informed consent. Cal. R. Prof. Conduct 1.9(a), (b);

Mass. R. Prof. Conduct 1.9(a), (b); Mass. R. Prof. Conduct 1.10(d); *see also* Mass. Ethics Opinion 99-3 (Ex. F). Because he would be disqualified, and he substantially participated in *Grabek*, his conflict is imputed to Ms. Wagner and she is also disqualified from accepting employment on behalf of Defendants. Cal. R. Prof. Conduct 1.10(a)(2)(i). The same outcome would result under California's traditional rule regarding vicarious disqualification. *Plumley*, 2008 WL 5382269 at 2; *People ex rel. Dep't of Corps. V. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1139, 980 P.2d 371 (1999).

Plaintiffs need not prove that Ms. Wagner actually received confidential information because it is presumed that "each member of the firm has imputed knowledge of the confidential information." *Meza*, 176 Cal. App. 4th at 979 (citing *SpeeDee Oil,* 20 Cal. 4th at 1146, *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (Cal.1994); disqualified law firm because new lawyer previously represented one of the defendants); *Plumley*, 2008 WL 5382269 at 2–3 (despite no evidence that confidential information disclosed to attorney-expert, expert disqualified); *Edwards,* 2014 WL 12495317 at 3 (confidential information imputed). The "underlying concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought." *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980)(attorney disqualification). It is the "possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Id.*

Massachusetts Ethics Opinion 99-3, which specifically found that Rule 1.9 applies to an attorney serving as a testifying expert, also makes clear that the prohibition against acting as a testifying expert in a substantially related matter applies "even if the lawyer actually has no relevant confidential information." Mass. Ethics Op. No. 99-3. The same principles that are implicated when an attorney represents a new client against a former client are present when the

attorney testifies as an expert against a former client in a substantially related matter. *Id.* "The same threat to the fidelity of the lawyer to his former client and to the purpose of the rule to encourage clients to communicate with their lawyer is involved" and the "same possibility of inadvertent use of confidential information…and the same judicial probing of the client's confidential information are involved." *Id.* Accordingly, "expert testimony about a standard of care that relates to the meeting of legal requirements" satisfies the definition of law-related services, to which the rules of professional conduct apply. *Id.*

Moreover, an ethical screen of Mr. Clark would not allow Ms. Wagner to accept the current engagement. Certain conflicts that would otherwise violate Rule 1.9 can be waived, provided that three conditions are met. *See* Cal. R. Prof. Conduct 1.10(a)(2). The first condition, however, is that "the prohibited lawyer *did not* substantially participate in the same or a substantially related matter." Cal. R. Prof. Conduct 1.10(a)(2)(i) (emphasis added). Here, Mr. Clark substantially participated in *Grabek*. He was one of the attorneys who represented the *Grabek* plaintiffs over the course of several years, working a total of over *2,500 hours* on the case. Schlichter Decl. ¶3. He had personal contact with the Class Representatives and Named Plaintiffs, and was exposed to confidential information material to the matter. *See* Cal. R. Prof. Conduct 1.10, cmt. 1 (factors considered in determining substantial participation include "lawyer's level of responsibility in the prior matter, the duration of the lawyer's participation, the extent to which the lawyer advised or had personal contact with the former client, and the extent to which the lawyer was exposed to confidential information of the former client likely to be material in the current matter."). Because that condition is not met, ethical screens and written notice to the former client cannot remedy the conflict to enable Ms. Wagner to accept this engagement. *See* Cal. R. Prof. Conduct 1.10(a)(2)(ii)–(iii).

The conclusion that an ethical screen cannot eliminate the imputed conflict given Mr. Clark's heavy involvement in *Grabek* is also consistent with the case law

that predated the enactment of Rule 1.10. "[I]f the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case"—as Ms. Wagner, through Mr. Clark's work in the first case, effectively did here when she sought to become an expert against the class—"no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive." *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776, 814 (Cal. Ct. App. 2010).[14] This is nothing like a situation where a conflicted attorney briefly met with an opposing party on a brief and informal basis. *In re Marriage of Zimmerman,* 16 Cal. App. 4th 556, 565 (Cal. Ct. App. 1993). This action and *Grabek* are "*so substantially related—indeed, they are nearly identical,*" and Mr. Clark's involvement as class counsel was so significant, that an ethical screen cannot protect Plaintiffs' confidential information and "prevent the appearance of impropriety." *Hitachi, Ltd. v. Tatung Co*., 419 F.Supp.2d 1158, 1164 (N.D. Cal. 2006)(vicarious disqualification of law firm due to disqualified attorney's prior representation of plaintiff in a substantially related matter)(emphasis added); *W. Sugar Coop. v. Archer-Daniels-Midland Co*., 98 F.Supp.3d 1074, 1081–82 (C.D. Cal. 2015)(finding law firm subject to automatic disqualification because it previously represented adverse party in substantially related litigation). Thus, regardless of whether any ethical screen was implemented, "it does not eliminate [Ms. Wagner's] firm's imputed conflict of interest." *Fant v. City of Ferguson*, No. 15-253, 2017 WL 3392073 at 4 (E.D. Mo. Aug. 7, 2017) (disqualified law firm due to imputed conflict of interest despite ethical wall).

The Massachusetts Rules of Professional Conduct adopted similar conditions to California Rule of Prof. Conduct 1.10(a)(2), that if met, would avoid imputing conflicts to Ms. Wagner. However, none of those conditions are present. Mr. Clark obtained confidential information and was materially involved in *Grabek* which

---

[14] Had the Court granted Plaintiffs' motion to consolidate *Grabek* with *Marshall* (*see Marshall* Doc. 70), Ms. Wagner's disqualification would have been automatic.

provides a substantial benefit to Defendants, such as through his knowledge of Plaintiffs' attorneys' mental impressions and trial strategy on the common claim, among others. *See* Mass. R. Prof. Conduct 1.10(d)(firm may represent new client only if disqualified lawyer has no confidential information, or the lawyer had "neither involvement nor information relating to the matter sufficient to provide a substantial benefit to the new firm's client…and is screened"). Under these circumstances, informed consent from the former client or law firm is required, which Ms. Wagner did not obtain. *See* Mass. R. Prof. Conduct 1.10, cmt. 8 ("Paragraphs (d) and (e) of Rule 1.10…do not permit a firm, without the consent of the former client of the disqualified lawyer or of the disqualified lawyer's former firm, to handle a matter with respect to which the personally disqualified lawyer was involved to a degree sufficient to provide a substantial benefit to the new firm's client or had confidential information relating to the matter sufficient to provide a substantial benefit to the new firm's client, as noted in Comment 11 below.").

Even if an ethical screen could have theoretically prevented disqualification, any screening procedures used by Ms. Wagner here were inadequate and too late in any event. ██████████████████████████████ ██████████████████████████████████████████. Contrary to the Massachusetts Rules of Professional Conduct, her firm failed to provide notice to Plaintiffs' counsel of the imputed conflict and an affidavit describing the procedures used to effectively screen Mr. Clark. *See* Mass. R. Prof. Conduct 1.10(e)(4). Defendants did not provide notice of any purported screen until *after* Ms. Wagner submitted her Rule 26(a)(2) report in this matter and *after* Plaintiffs raised the issue. *See* Ex. D (N. Ross Oct. 29, 2019 letter).

████████████████████████████ ████ d. Ex. B, Wagner Dep. 116:22–117:18 ████████████ ████████████████ *Kirk*, 183 Cal. App. 4th at 810 & n. 31 (suggesting that screen must be imposed once conflict

1  arises and prior to accepting representation). ████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████

4  ████    Ex. B, Wagner Dep. 119:15–120:2; *j2 Glob. Commc'ns, Inc. v. EasyLink*

5  *Servs. Int'l Corp.*, No. 09-4189 DDP (AJWx), 2012 WL 6618609 at 10 (C.D. Cal.

6  Dec. 19, 2012)(disqualification mandatory due to failure to implement timely

7  screen of conflicted attorney); *Beltran v. Avon Prod., Inc.*, 867 F.Supp.2d 1068,

8  1083 (C.D. Cal. 2012)(screen untimely and failure to provide written notice). ████

9  ████████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████    Ex. B, Wagner Dep.

13  105:21–106:4.

14      In light of Ms. Wagner's imputed conflict of interest, the Court should

15  disqualify Ms. Wagner from testifying in this case.

16  **III.  Apart from the above, Ms. Wagner should be barred because she has**

17         **a separate conflict involving her proposed testimony against her law**

18         **firm's client Mr. Witz.**

19      As indicated above, Plaintiffs retained David Witz in this matter to offer

20  opinions related to Northrop's receipt of Plan assets as compensation for services

21  Northrop employees performed on behalf of the Plan. Mr. Witz's company is a

22  current client of the Wagner Law Group. ████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████    *See* Ex. B, Wagner Dep. 87:8–90:16. Mr.

25  Witz in fact considers Mr. Clark as "corporate counsel" who is "very closely

26  associated with [his] firm." Ex. E, Witz Dep. 132:19–23. Mr. Clark also is

27

28

specifically listed on Mr. Witz's company's website with the other employees of the company.[15]

Remarkably, in rebuttal to Mr. Witz, and despite his many years of experience as advisor and consultant to 401(k) plan sponsors and fiduciaries, ███████

███████████████████████████████████████████████

███████████. Ex. A, Wagner Report ¶16. These opinions are clearly adverse to Mr. Witz and his company's interests. *Walker,* 4 Cal. App. 5th at 1110–11 (quoting *Ames v. State Bar*, 8 Cal.3d 910, 917 (Cal. 1973))("An 'adverse' interest is one that is 'hostile, opposed, antagonistic ..., detrimental, [or] unfavorable' to another's interests"). Mr. Witz does not need to be an adverse party in litigation for Rule 1.7 to apply. *See* Cal. R. Prof. Conduct 1.7, cmt. 1 (conflict can arise when lawyer cross-examines non-party witness who is a current client). At a minimum, as the CEO and the only individual at his firm who provides consulting services to clients regarding ERISA practices, Mr. Witz's reputation and consulting practice would be damaged by Ms. Wagner's testimony. *See* Ex. E, Witz Dep. 132:8–18.

By offering an opinion that is adverse to Mr. Witz, an expert herein for Plaintiffs, Ms. Wagner has accepted representation of one client (Defendants) that is directly adverse to another client of hers (Mr. Witz). *See* Cal. R. Prof. Conduct 1.7(a)(subject to certain conditions, lawyer shall not without written informed consent "represent a client if that representation is directly adverse to another client in the same or separate matter"); Mass. R. Prof. Conduct 1.7(a)("a lawyer shall not represent a client if the representation involves a concurrent conflict of interest", such as if "the representation of one client will be directly adverse to another client"). Because Mr. Witz is a current client, the conflict implicates the duty of

---

[15] *See* https://plantools.com/whoweare.

loyalty, which cannot be cured by ethical screening. *W. Sugar*, 98 F.Supp.3d at 1082; *Concat LP v. Unilever*, *PLC*, 350 F.Supp.2d 796, 822 (N.D. Cal. 2004).

**CONCLUSION**

Plaintiffs respectfully request that this Court disqualify Ms. Wagner as an expert witness on behalf of Defendants.

1

Dated: February 5, 2019   Respectfully submitted,

2

3            By: /s/ Jerome J. Schlichter

4            Jerome J. Schlichter (SBN 054513)
             Nelson G. Wolff (*pro hac vice*)

5            Sean E. Soyars (*pro hac vice*)
             Kurt C. Struckhoff (*pro hac vice*)

6            SCHLICHTER, BOGARD & DENTON

7            *Lead Counsel for Plaintiffs*

8

9            William A. White (SBN 121681)
             HILL, FARRER & BURRILL LLP

10            *Local Counsel for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28