BRIAN D. BOYLE (S.B. #126576)
bboyle@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4061
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

Attorney for Non-Party Fidelity
Management Trust Company

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFTON W. MARSHALL, Individually and on Behalf of all Others Similarly Situated,<br><br>           Plaintiffs,<br><br>      v.<br><br>NORTHROP GRUMMAN CORPORATION, et al.,<br><br>           Defendants. | Case No. 2:16-cv-06794-AB-JC<br><br>**DECLARATION OF BRIAN D. BOYLE IN SUPPORT OF DEFENDANTS' APPLICATION TO FILE DOCUMENTS UNDER SEAL IN CONNECTION WITH DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge:<br>Hon. Andre Birotte Jr.<br><br>Magistrate:<br>Hon. Jacqueline Choolijian |

I, Brian D. Boyle, declare under penalty of perjury the following:

1. I am a Partner at O'Melveny & Myers LLP, counsel for Fidelity Management Trust Company ("Fidelity") in this action. I submit this declaration in support of Defendants' Application to File Documents under Seal in Connection with Defendants' Motion for Partial Summary Judgment ("Defendants' Amended Application") (ECF No. 208).[1] The facts stated in this declaration are based on my personal knowledge, and if called upon to testify under oath, I could and would testify thereto.

2. I understand that defendants have attached as exhibits to their Statement of Uncontroverted Facts and Conclusions of Law three documents containing pricing proposals and agreed-upon pricing for services that Fidelity provides and/or has discussed providing to various employee benefit plans sponsored by Northrup Grumman (collectively, the "Confidential Pricing Information"). Specifically:

    a. I understand that attached as **Exhibit 80** (ECF No. 168-85; 209-16) to defendants' Statement of Uncontroverted Facts and Conclusions of Law is a slide deck that contains pricing proposals made by Fidelity for a variety of services it offered to various employee benefit plans sponsored by Northrup Grumman (the "Northrup Grumman Plans").

    b. I understand that attached as **Exhibit 81** (ECF No. 168-86; 209-17) to defendants' Statement of Uncontroverted Facts and Conclusions of Law is the Administrative Services Agreement between Northrop Grumman and Fidelity, which contains information regarding

---

[1] Defendants' original application to seal requested ninety documents, including Exhibits 80, 81, and 109, be sealed in their entirety. ECF No. 169 ("Defendants' Original Application"). On February 12, 2019, the Court ordered Defendants to "submit an amended application to seal redacting only as necessary." ECF No. 182, p. 2. Defendants filed their amended application (ECF No. 208) on May 17, 2019, pursuant to the Court's April 8, 2019 Order (ECF No. 194).

          Fidelity's pricing of the services it provides and/or has provided the Northrop Grumman Plans.

    c. I understand that attached as **Exhibit 109** (ECF No. 168-114; 209-38) is the report of plaintiffs' expert Martin Schmidt, which also contains information regarding Fidelity's pricing of the services it provides and/or has provided the Northrop Grumman Plans.

    3. I understand that, in addition to other documents, defendants seek to permanently seal these three exhibits because they contain "confidential third-party information." (ECF No. 208, p. 4). I further understand that plaintiffs supported Defendants' Original Application to seal Exhibit 109 because, *inter alia*, it contains "information that has been designated by … third parties as confidential," disclosure of the information would "violate [the third parties'] reasonable expectations of privacy" and "pose significant harm to" the third parties, and the information "is not necessary for the public to understand the issues presently in dispute." (ECF No. 178, ¶¶ 3-5). For the reasons stated herein, in Defendants' Amended Application, and in plaintiffs' declaration in support of Defendants' Original Application (ECF No. 178), I respectfully urge the Court, on behalf of Fidelity, to grant Defendants' Amended Application. Should the Court decide not to permanently seal all the exhibits within the scope of Defendants' Amended Application, I urge the Court to, at a minimum, permanently seal the Fidelity Confidential Pricing Information in the three exhibits referenced in paragraph 2 above. Fidelity will provide the Court with proposed redactions to these exhibits narrowly tailored to protect Fidelity's interests, upon request.

    4. I understand that records may be sealed for "compelling reasons." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). I further understand that the Ninth Circuit and district courts within the Ninth Circuit have found such compelling reasons to be present where disclosure of the records to

the public could result in public disclosure of trade secrets or other information that could harm an entity's competitive standing. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (explaining that "courts have refused to permit their files to serve as … sources of business information that might harm a litigant's competitive standing"); *see also, e.g.*, *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (explaining that "pricing terms, royalty rates, and … payment terms" in a licensing agreement "plainly fall[] within the definition of 'trade secrets,'" and ordering agreement to be filed under seal accordingly).

    5.    I understand that the above-referenced Exhibits 80, 81, and 109 to defendants' Statement of Uncontroverted Facts and Conclusions of Law contain Confidential Pricing Information, the public disclosure of which I understand would harm Fidelity's competitive standing. *See generally* Declaration of Robert M. Salerno in Support of Defendants' Application ("Salerno Decl."), attached hereto.[2] Mr. Salerno has declared, for example, that pricing for services provided to ERISA-governed retirement plans is often determined through a blind-bidding process—that is, when a firm like Fidelity seeks to provide services to a plan, it will propose financial terms under which it is willing to provide those services without necessarily knowing what financial terms its competitors are offering. Salerno Decl. ¶ 3. Mr. Salerno has also declared that allowing Fidelity's competitors access to information regarding the financial terms under which Fidelity has offered to provide recordkeeping and administrative services to specific plans or across segments of its business would put Fidelity at a competitive disadvantage. *Id.* at ¶ 6. According to Mr. Salerno, while Fidelity would still be bidding blindly in seeking to obtain and retain business, its competitors would be able to leverage

---

[2] Mr. Salerno's declaration was originally executed in support of Defendants' Original Application. Mr. Salerno's declaration equally supports Defendants' Amended Application.

| | |
|---|---|
| 1 | their knowledge of Fidelity's pricing strategy to gain an unfair advantage in |
| 2 | securing the same business.  *Id.* |
| 3 |        6.       I understand courts often find compelling reasons to seal confidential |
| 4 | pricing information that could harm an entity's competitive standing.  *See e.g. In re* |
| 5 | *Elec. Arts, Inc.*, 298 F. App'x at 569 (finding compelling reasons to seal the pricing |
| 6 | terms, royalty rates, and payment terms found in a licensing agreement); *TriQuint* |
| 7 | *Semiconductor, Inc. v. Avago Techs. Ltd.*, 2011 WL 6182346, at *6 (D. Ariz. Dec. |
| 8 | 13, 2011) (sealing "pricing information [that, if disclosed,] would harm [plaintiff's] |
| 9 | competitive standing").  Based on the precedent described here, in Defendants' |
| 10 | Amended Application, and in plaintiffs' declaration in support of Defendants' |
| 11 | Original Application (ECF No. 178), I understand sealing of the documents is |
| 12 | warranted under these circumstances. |
| 13 | |
| ... | |
| 28 | |

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on this 20th day of May 2019 in Washington, D.C.

By:

                /s/ *Brian D. Boyle*
                Brian D. Boyle