1   JEROME J. SCHLICHTER (SBN 054513)
    jschlichter@uselaws.com
2   NELSON G. WOLFF (admitted *pro hac vice*)
    mwolff@uselaws.com
3   SEAN E. SOYARS (admitted *pro hac vice*)
    ssoyars@uselaws.com
4   KURT C. STRUCKHOFF (admitted *pro hac vice*)
    kstruckhoff@uselaws.com
5   SCHLICHTER, BOGARD & DENTON LLP
    100 South Fourth Street, Suite 1200
6   St. Louis, MO 63102
    Telephone:  (314) 621-6115
7   Facsimile:  (314) 621-5934
    *Class Counsel and Lead Counsel for Plaintiffs*
8
    WILLIAM A. WHITE (SBN 121681)
9   wwhite@hillfarrer.com
    HILL, FARRER & BURRILL LLP
10  One California Plaza, 37th Floor
    300 South Grand Avenue
11  Los Angeles, CA 90071-3147
    Telephone: (213) 620-0460
12  Facsimile:  (213) 620-4840
    *Local Counsel for Plaintiffs*
13

14              **IN THE UNITED STATES DISTRICT COURT**
              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
15

16  CLIFTON W. MARSHALL, ET AL.,          Case No. 16-CV-6794 AB (JCx)

17                  *Plaintiffs*,          **PLAINTIFFS' MEMORANDUM
                                          OF POINTS AND AUTHORITIES
18  v.                                    IN OPPOSITION TO MOTION
                                          FOR PARTIAL SUMMARY
19  NORTHROP GRUMMAN CORP., ET AL.,       JUDGMENT [DOC. 168]**

20                  *Defendants*.

21                                        DATE:      June 7, 2019
                                          TIME:      10:00 a.m.
22                                        Courtroom 7B – 7th floor

23
                                          Hon. André Birotte Jr.
24

25

26

27

28
                                          NO. 16-CV-6794-AB (JCX)

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

1

## TABLE OF CONTENTS

SUMMARY OF MATERIAL FACTS ....................................................................... 1

    I.     The Inv. Committee imprudently managed the Emerging Markets Fund. ................................................................................ 1

    II.    The Administrative Committee allowed Hewitt to receive excessive compensation. ..................................................... 3

    III.   Defendants' failure to monitor Plan fiduciaries. ................................ 6

ARGUMENT .................................................................................................. 7

    I.     Legal Standards ........................................................................ 7

        A.    Summary judgment is improper when material facts are disputed. ................................................................. 7

        B.    ERISA imposes strict fiduciary standards and liability ............. 9

    II.    Defendants breached their fiduciary duties (Counts II and III). ......... 10

        A.    The Investment Committee breached its duties regarding the Emerging Markets Fund, resulting in massive Plan losses. ................................................................. 12

        B.    Defendants allowed Hewitt to receive unreasonable compensation. ........................................................ 18

        C.    Defendants violated 29 U.S.C. §1104(a)(1)(A). ..................... 22

    III.   Defendants committed prohibited transactions (Count VI). .............. 23

    IV.   Defendants failed to prudently monitor Plan fiduciaries (Count VII). ...................................................................................... 25

    V.    Committee members are personally liable for the Committees' breaches. ............................................................................ 25

CONCLUSION .............................................................................................. 25

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

# TABLE OF AUTHORITIES

**CASES**

*Abraha v. Colonial Parking, Inc.,*
     243 F. Supp. 3d 179 (D.D.C. 2017) .................................................. 23

*Acosta v. Pac. Enters.,*
     950 F.2d 611 (9th Cir.1991) .............................................................. 24

*Alameda Books, Inc. v. City of Los Angeles,*
     631 F.3d 1031 (9th Cir. 2011) ............................................................ 8

*Anderson v. Liberty Lobby, Inc.,*
     477 U.S. 242 (1986) .............................................................. 1, 7, 8

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.,*
     836 F.3d 987 (9th Cir. 2016) .............................................................. 7

*Blair Foods Inc. v. Ranchers Cotton Oil,*
     610 F.2d 665 (9th Cir. 1980) ........................................................... 8, 9

*Braden v. Wal-Mart Stores, Inc.,*
     588 F.3d 585 (8th Cir. 2009) ............................................... 10, 20, 23

*Brotherston v. Putnam Investments, LLC,*
     907 F.3d 17 (1st Cir. 2018) .............................................................. 11

*Bussian v. RJR Nabisco, Inc.,*
     223 F.3d 286 (5th Cir. 2000) ............................................................ 22

*Chao v. Merino,*
     452 F.3d 174 (2d Cir. 2006) ............................................................. 19

*Colt Int'l Clothing Inc. v. Quasar Sci., LLC,*
     No. 16-3040-AB, 2017 WL 5592898 (C.D. Cal. Nov. 8, 2017) ......... 7

*David v. Alphin,*
     704 F.3d 327 (4th Cir. 2013) ............................................................ 24

*DiFelice v. U.S. Airways, Inc.,*
     497 F.3d 410 (4th Cir. 2007) ............................................................ 14

*Dole v. Formica,*
     No. 87-2955, 1991 WL 317040 (N.D. Ohio Sep. 30, 1991) ............. 25

*Donovan v. Bierwirth,*
     680 F.2d 263 (2d Cir. 1982) ............................................................. 22

*Donovan v. Mazzola,*
     716 F.2d 1226 (9th Cir. 1983) .......................................................... 14

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

**PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.**

*Earp v. Ornoski,*
  431 F.3d 1158 (9th Cir. 2005) ........................................................................ 8

*Fifth Third Bancorp v. Dudenhoeffer,*
  573 U.S. 409 (2014) ..................................................................................... 11

*Fuller v. Idaho Dep't of Corr.,*
  865 F.3d 1154 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1345 (2018) ................. 8

*George v. Kraft Foods Global, Inc.,*
  641 F.3d 786 (7th Cir. 2011) ............................... 14, 15, 18, 19, 20, 21

*George v. Kraft Foods Global, Inc.,*
  814 F. Supp. 2d 832 (N.D. Ill. 2011) .............................................................. 15

*Harris Trust & Savings Bank v. Salomon Smith Barney Inc.,*
  530 U.S. 238 (2000) ........................................................................................ 9

*Harris v. Amgen, Inc.,*
  788 F.3d 916 (9th Cir. 2014), *vacated on other grounds*, 573 U.S.
  942 (2014) ................................................................................................... 10

*Hauk v. JP Morgan Chase Bank USA,*
  552 F.3d 1114 (9th Cir. 2009) ........................................................................ 8

*Howard v. Shay,*
  100 F.3d 1484 (9th Cir. 1996) ......................................................... 9, 10, 14, 24

*In re Beck Indus., Inc.,*
  605 F.2d 624 (2d Cir. 1979) .......................................................................... 11

*In re Northrop Grumman Corp. ERISA Litig.,*
  No. 06-6213, 2015 WL 10433713 (C.D. Cal. Nov. 24, 2015) ............................ 24

*In re Regions Morgan Keegan ERISA Litig.,*
  692 F. Supp. 2d 944 (W.D. Tenn. 2010) ......................................................... 23

*In re Unisys Sav. Plan Litig.,*
  74 F.3d 420 (3d Cir. 1996) ............................................................................ 14

*Ingram v. Martin Marietta Long Term Disability Income Plan,*
  244 F.3d 1109 (9th Cir. 2001) ......................................................................... 7

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank,*
  510 U.S. 86 (1993) .......................................................................................... 9

*Kanawi v. Bechtel Corp.,*
  590 F. Supp. 2d 1213 (N.D. Cal. 2008) .......................................................... 23

*Leckey v. Stefano,*
  501 F.3d 212 (3d Cir. 2007) .......................................................................... 10

*Lewert v. Boiron, Inc.,*
  212 F. Supp. 3d 917 (C.D. Cal. 2016) (Birotte Jr., J.) ........................................ 8

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

- iv -

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

*Martin v. Feilen*,
    965 F.2d 660 (8th Cir. 1992) ................................................................ 11

*McDonald v. Provident Indem. Life Ins. Co.*,
    60 F.3d 234 (5th Cir. 1995) ................................................................ 11

*Nehad v. Mukasey*,
    535 F.3d 962 (9th Cir. 2008) ................................................................ 8

*Patelco Credit Union v. Sahni*,
    262 F.3d 897 (9th Cir. 2001) ................................................................ 24

*Ronches v. Dickerson Employee Benefits, Inc.*,
    No. 09-4279-MMMPJWX, 2009 WL 10669571 (C.D. Cal. Oct. 30,
    2009) ................................................................ 24

*Rookaird v. BNSF Ry. Co.*,
    908 F.3d 451 (9th Cir. 2018) ................................................................ 7

*Roth v. Sawyer-Cleator Lumber Co.*,
    16 F.3d 915 (8th Cir. 1994) ................................................................ 10, 11, 12

*Scharf v. U.S. Atty. Gen.*,
    597 F.2d 1240 (9th Cir. 1979) ................................................................ 8

*Scott v. Aon Hewitt Fin., Advisors, LLC*,
    No. 17-679, 2018 WL 1384300 (N.D. Ill. Mar. 19, 2018) ................................................................ 21

*Sonner v. Schwabe N. Am., Inc.*,
    911 F.3d 989 (9th Cir. 2018) ................................................................ 8

*Tatum v. RJR Pension Inv. Comm.*,
    761 F.3d 346 (4th Cir. 2014) ................................................................ 11, 12, 14, 17

*Terraza v. Safeway Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) ................................................................ 10, 21

*Thomas v. Newton Int'l Enterprises*,
    42 F.3d 1266 (9th Cir. 1994) ................................................................ 8

*Tibble v. Edison Int'l (Tibble I)*,
    729 F.3d 1110 (9th Cir. 2011), *vacated on other grounds,* 135 S.Ct.
    1823 (2015) ................................................................ 14, 21, 24

*Tibble v. Edison Int'l (Tibble II)*,
    135 S.Ct. 1823 (2015) ................................................................ 1, 9, 11, 15, 24

*Tibble v. Edison Int'l (Tibble III)*,
    843 F.3d 1187 (9th Cir. 2016) ................................................................ 1, 9, 11, 14, 15, 18

*Triton Energy Corp. v. Square D Co.*,
    68 F.3d 1216 (9th Cir. 1995) ................................................................ 8

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ................................................................ 18, 21, 23

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

- v -

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

*White v. Chevron Corp.*,
   2018 WL 5919670 (9th Cir. Nov. 13, 2018) .................................................. 20

*Wildman v. Am. Century Servs., LLC*,
   237 F. Supp. 3d 918 (W.D. Mo. 2017) ........................................................... 25

*Wright v. Oregon Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ....................................................................... 11

**STATUTES**

29 U.S.C. §1001(b) ....................................................................................... 10

29 U.S.C. §1002(14)(B) ......................................................................... 10, 24

29 U.S.C. §1002(21)(A)(i) ............................................................................ 26

29 U.S.C. §1002(21)(A)(iii) .......................................................................... 26

29 U.S.C. §1102(a) ......................................................................................... 2

29 U.S.C. §1104 ............................................................................................ 10

29 U.S.C. §1104(a)(1) ................................................................................... 11

29 U.S.C. §1104(a)(1)(A) ....................................................................... 10, 23

29 U.S.C. §1104(a)(1)(A)(ii) ........................................................................ 23

29 U.S.C. §1104(a)(1)(B .............................................................................. 10

29 U.S.C. §1104(a)(1)(D) ............................................................................. 14

29 U.S.C. §1105(c)(1) ..................................................................................... 3

29 U.S.C. §1105(c)(1)(B) .............................................................................. 14

29 U.S.C. §1105(c)(2) ................................................................................... 14

29 U.S.C. §1106(a) ........................................................................................ 10

29 U.S.C. §1106(a)(1)(C) .............................................................................. 24

29 U.S.C. §1106(a)(1)(D) .............................................................................. 24

29 U.S.C. §1108 ............................................................................................ 10

29 U.S.C. §1108(b)(2) ......................................................................... 8, 10, 25

29 U.S.C. §1109(a) ........................................................................................ 11

29 U.S.C. §1110(a) ........................................................................................ 14

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

**RULES**

29 C.F.R. §2550.408b-2 ......................................................................... 24

Fed. R. Civ. P. 56(a) ............................................................................. 2, 8

Reasonable Contract or Arrangement Under Section 408(b)(2)—Fee
    Disclosure, 77 Fed.Reg. 5632, 5632 (Feb. 3, 2012).......................... 24

**OTHER AUTHORITIES**

DOL Adv. Op. 2013-03A (July 3, 2013)................................................. 21

RESTATEMENT (THIRD) OF TRUSTS §90 ................................................. 14

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

PLA MEM. OF POINTS AND AUTHORITIES IN OPP TO MOTION FOR PARTIAL SUMM. J.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

As to four of the eight counts in the Second Amended Complaint (Doc. 132), Defendants concede that there are disputed issues that must be resolved at trial. The same is true of the remaining claims: the material facts are disputed and present "genuine issue[s] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see* Plaintiffs' Statement of Genuine Disputes (SGD); *cf.* Fed. R. Civ. P. 56(a). The Court should deny Defendants' motion for partial summary judgment.

## SUMMARY OF MATERIAL FACTS

Plaintiffs represent a class of over 100,000 participants in the Northrop Grumman Savings Plan ("Plan" or "NGSP") since September 9, 2010. Doc. 130. The Plan is a defined contribution plan, meaning excessive fees and poor investment performance "significantly reduce the value" of participants' retirement savings. *Tibble v. Edison Int'l (Tibble III)*, 843 F.3d 1187, 1191 (9th Cir. 2016) (en banc) (quoting *Tibble v. Edison Int'l (Tibble II)*, 135 S.Ct. 1823, 1826 (2015)).

Plaintiffs' Second Amended Complaint asserts eight counts of breaches of fiduciary duties and prohibited transactions that caused millions of dollars in Plan losses. Doc. 132. The four counts for which Defendants concede summary judgment is inappropriate all relate to Northrop Grumman Corporation's unlawful receipt of Plan assets in the guise of "administrative fees" (Counts I, IV, V, VIII). The counts for which Defendants seek summary judgment pertain to the Plan's Emerging Markets Fund (Counts III, VI; ¶¶80–91 117–21, 135–141), the fees paid to the Plan's recordkeeper (Counts II, VI; ¶¶64–79, 111–16, 135–41), and Defendants' duty to monitor other Plan fiduciaries (Count VII, ¶¶142–48). The following summary of the material facts, more fully discussed in Plaintiffs' SGD, show that there are multiple issues of material fact for trial on each claim.

## I. The Inv. Committee imprudently managed the Emerging Markets Fund.

Defendant Northrop Grumman Savings Plan Investment Committee is the "named fiduciary" with authority and responsibility over all investment matters. SGD ¶136; *see* 29 U.S.C. §1102(a). Although ERISA allows a named fiduciary to

designate another entity to carry out its fiduciary responsibilities if the plan document provides for such a procedure (*see* 29 U.S.C. §1105(c)(1)), the Plan document here did not allow the Investment Committee to do so. SGD ¶137.

The Investment Committee's duties include "establish[ing] a number of different investment funds or other investment options" for participants to invest their accounts, and approving investment policies and objectives for each option SGD ¶¶136, 139. The Investment Committee provided the Emerging Markets Fund (EM Fund) as one of the "core" options on the Plan's investment menu. From 2009 through 2014, it was the most expensive investment option in the Plan. SGD ¶164. Since before the start of the class period in September 2010 through December 2014, the EM Fund used an active investment strategy. SGD ¶¶145–148. The Fund's objective, set forth in the Investment Policy Statement, was to generate returns exceeding its benchmark index net of fees. SGD ¶146.

In late December 2010 and early 2011, the Investment Committee changed all of the other core options to a passive investment strategy. SGD ¶174. At that time, the EM Fund had a long-history of underperforming its benchmark index, meaning the fund's dramatically higher active-management fees were not justified by higher returns. SGD ¶¶150, 156, 167, 171, 183–192. For five consecutive quarters through December 31, 2010, the Fund underperformed its benchmark over one-, three-, five-, or ten-year periods, consistently ranking near the bottom of its peer group. SGD ¶188. A Plan consultant (CEM) specifically found that the Fund provided "negative" value through active management compared to passive alternatives. SGD ¶¶189–190. Because the EM Fund was the Plan's most expensive option, changing to passive management would have saved Plan participants even more in fees than other options that were changed to passive management. SGD ¶¶164–65.

Even though the EM Fund failed to meet its objective of generating excess returns through active management, the Investment Committee failed to make a reasoned decision whether to maintain the Emerging Markets Fund in an active

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

strategy. SGD ¶¶155, 157, 162–163, 169, 176–178. Although Northrop's Investments & Trust Administration (ITA) department internally recommended maintaining an active strategy in part while increasing the Fund's passive allocation to 50%, that recommendation was neither presented to nor approved by the Investment Committee. SGD ¶¶168–169. There is no evidence that the Investment Committee ever made a decision one way or the other. The Investment Committee has provided no contemporaneous documented reason for failing to employ a passive investment strategy for the Emerging Markets Fund. SGD ¶¶151–170.

Maintaining an active strategy for the EM Fund was plainly inconsistent with the Investment Committee's decision to use a passive strategy for the other core investments. SGD ¶¶174, 202–206, 230–241. Quantitative data available at the start of the class period should have alerted the Investment Committee to the imprudence of maintaining an active strategy for the Emerging Markets Fund. This data showed that active managers in emerging markets were *less likely* to outperform their benchmarks after fees than active managers in the Plan's other core investment styles. SGD ¶¶202–210, 230–239. Yet even though active managers in other styles were more likely to *outperform* their benchmarks, the Investment Committee still transitioned those funds to passive management. SGD ¶¶174–175, 204–206, 235–241. Passively managed emerging markets index funds also had a demonstrated record of outperforming the actively managed EM Fund. SGD ¶¶181, 189, 202–204, 206, 235–236. The Investment Committee's failure to change the EM Fund to a passive investment strategy by December 2010—as it did for the Plan's other core funds— caused the Plan to lose over $28.4 million compared to what it would have earned under passive management. SGD ¶242.

## II.  The Administrative Committee allowed Hewitt to receive excessive compensation.

Defendant NGSP Administrative Committee is the named fiduciary over the general administration of the Plan, including the selection and retention of

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

administrative service providers. SGD ¶243. The Administrative Committee hired Hewitt as the Plan's recordkeeper effective January 1, 2007. SGD ¶246.

According to Plaintiffs' expert Martin Schmidt, the surest way to ensure that a defined contribution plan's fees are competitive is to solicit bids at regular intervals of every three to five years, which is the typical practice of similarly situated fiduciaries. SGD ¶¶306–307, 318; *see also* SGD ¶309. Following the selection of Hewitt, the Administrative Committee did not put Hewitt's services out to competitive bidding for over nine years. SGD ¶¶263, 308.

In late 2010, Northrop Grumman Corporation—without the approval or consent of the Committee—engaged a consultant to evaluate Hewitt's recordkeeping fees in anticipation of a spinoff of Northrop's shipbuilding business. SGD ¶¶250–251, 253. Due to business priorities, Northrop specifically rejected conducting a bidding process, even though the Administrative Committee had not conducted one for over six years. SGD ¶252. Northrop hired the consultant, Weilyn Consulting, without considering other consultants. SGD ¶251. Although the consultant's analysis was inadequate compared to a competitive bidding process, even that limited fee review found that plans of similar size and complexity obtained significantly lower base recordkeeping fees than Hewitt's proposed fees. SGD ¶¶254–256, 310–311. The consultant's data were not presented to the Administrative Committee. SGD ¶¶257. Nor were the consultant's findings that Hewitt's proposed fees "exceeded" the fees of other plans. SGD ¶258. Because the Administrative Committee never saw the evidence or investigated whether the Plan was overpaying for recordkeeping services, the Administrative Committee did not conduct a competitive bidding process for the Plan's recordkeeping services. SGD ¶¶308, 311.

Effective April 1, 2011, Northrop and Hewitt amended Hewitt's recordkeeping contract. The amendment *increased* the base per participant recordkeeping fee from approximately $39 per participant to $45 per participant. SGD ¶259. The Administrative Committee was not involved in amending Hewitt's contract, did not

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

- 4 -

NO. 16-CV-6794-AB (JCX)

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

approve the contract, and did not analyze whether the increased per participant fee was reasonable in light of the services provided. SGD ¶260.

In 2012, the Administrative Committee hired Financial Engines to provide investment advisory services. When that occurred, Hewitt's already-excessive compensation increased dramatically. SGD ¶¶282, 285, 313, 315, 317. The Administrative Committee selected Financial Engines for the investment advisor role even though it charged the highest fees among candidates. SGD ¶¶268–269. Plan participants who opted to use Financial Engines' advisory services paid Financial Engines an asset-based fee. SGD ¶¶267, 282. Financial Engines then kicked back a portion of that revenue to Hewitt—a total of over $6 million—the amount of which significantly increased over time even though Hewitt's services remained the same. SGD ¶¶282–285. These payments could not have been made solely in exchange for Hewitt providing "data connectivity" as Defendants suggest. The value of such data was only $115,500, as shown by the amount another provider would pay Hewitt for the service. SGD ¶¶273, 286. Financial Engines paid the much higher amount not for data connectivity, but for Hewitt's commitment to drive additional business to Financial Engines from Hewitt's existing and potential client base. SGD ¶¶275–277. Northrop was aware of this scheme. SGD ¶278. Hewitt's sales efforts on behalf of Financial Engines were unrelated to the Plan and did not benefit participants. SGD ¶¶275–277.

Plaintiffs' expert Martin Schmidt explains that in determining whether a recordkeeper's compensation is reasonable, similarly situated 401(k) plan fiduciaries typically monitor all sources of revenue paid to the recordkeeper, including payments from advisors like Financial Engines. SGD ¶295. In analogous circumstances, when a mutual fund shares a portion of its revenue with a plan's recordkeeper, prudent fiduciaries monitor this stream of additional income and take it into account in assessing the recordkeeper's total compensation for reasonableness. SGD ¶¶295, 296. They leverage this additional stream of income to

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

obtain a reduction in the recordkeeping fees charged by the recordkeeper, or negotiate for all or part of the revenue to be returned to the plan, to ensure that the recordkeeper does not receive unreasonable compensation for the services provided. SGD ¶289. Fiduciaries for other plans also have obtained a cap on the amount that Financial Engines shared with Hewitt. SGD ¶¶289, 292.

Neither the Administrative Committee nor anyone acting on its behalf monitored the millions of dollars Hewitt received in kickbacks from Financial Engines. SGD ¶¶291, 296–300. The Administrative Committee took no action to leverage this additional stream of income to obtain a reduction in the recordkeeping fees paid by the Plan. SGD ¶¶294, 302. Service providers bidding on the Plan's recordkeeping services, including Hewitt, would have reduced their recordkeeping fees in light of the additional compensation from Financial Engines, if the Administrative Committee had negotiated for such a reduction. SGD ¶¶302–305. Once the Administrative Committee finally obtained recordkeeping bids before hiring Fidelity effective April 1, 2016, the Plan received bids as low as $22 per participant, less than *half* the recordkeeping fee charged by Hewitt. SGD ¶¶264.

As a result of the Administrative Committee's failures of prudence described above, Hewitt received excessive fees from September 2010 through April 1, 2016. SGD ¶¶313–314. Other defined contribution plans of similar size and complexity obtained far lower base recordkeeping fees than were charged by Hewitt. SGD ¶¶315–317. Had the Administrative Committee obtained competitive bids during the class period, and leveraged the additional compensation received by Hewitt from Financial Engines, the Plan's recordkeeping fees would have been reduced significantly. SGD ¶313. By failing to do so, the Administrative Committee caused the Plan and its participants to lose over $16.3 million. SGD ¶314.

### III.   Defendants' failure to monitor Plan fiduciaries.

Until September 20, 2011, Northrop's Board of Directors had the fiduciary responsibility for appointing members of the Administrative and Investment

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

Committees, after which Northrop's CEO assumed that duty. SGD ¶322. Yet the Committees never provided any written documentation to the Board regarding the Plan's investment results, fees and expenses, service provider selection, or the basis for any fiduciary decisions by either committee. SGD ¶¶323–324. The Committees also did not provide any such information to the CEO until 2016. SGD ¶¶323–324.

## ARGUMENT

### I.   Legal Standards

#### A.   Summary judgment is improper when material facts are disputed.

The Court can grant Defendants summary judgment only if "there is no dispute as to any material fact" and they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). As to issues on which Defendants bear the burden of proof at trial—*i.e.*, "objective" prudence, the statute of limitations, and prohibited transaction exemptions, 29 U.S.C. §1108(b)(2)—Defendants "must affirmatively demonstrate that no reasonable trier of fact could find other than" for them. *Id.*; *Colt Int'l Clothing Inc. v. Quasar Sci., LLC*, No. 16-3040-AB, 2017 WL 5592898, at *2 (C.D. Cal. Nov. 8, 2017).

The Court's "task is not to weigh conflicting evidence, but rather to ask whether the non-moving party has produced sufficient evidence to permit the fact finder to hold in his favor." *Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1114 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Resolution of factual disputes should be through the usual crucible of bench trial or hearing, with evidence subject to scrutiny and witnesses subject to cross-examination." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016). "[R]ather than 'weigh the merit of [competing] inferences,'" the Court "'must adopt the inference that is most favorable to the nonmoving party.'" *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154,

1166 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1345 (2018) (quoting *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1123–24 (9th Cir. 2009)).

"Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion." *Thomas v. Newton Int'l Enterprises,* 42 F.3d 1266, 1270 (9th Cir. 1994); *Triton Energy Corp. v. Square D Co*., 68 F.3d 1216, 1222 (9th Cir. 1995) (expert opinion may defeat summary judgment). If the Court must weigh "conflicting expert evidence" to resolve an issue of fact, summary judgment is improper. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 993 (9th Cir. 2018) (per curiam); *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979); *Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 937 (C.D. Cal. 2016) (Birotte Jr., J.) (denying summary judgment where case "boil[ed] down to a battle of the experts"), *aff'd,* 742 F. App'x 282 (9th Cir. 2018).

Similarly, trial by affidavit is improper. *Anderson.*, 477 U.S. at 255; *Blair Foods Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 668 n.3 (9th Cir. 1980). Most of Defendants' material factual assertions are based upon unsubstantiated, self-serving declarations from Northrop executives Dennis Newberry and Michael Lyster, which carry little, if any, evidentiary weight. *See, e.g., Nehad v. Mukasey*, 535 F.3d 962, 968 (9th Cir. 2008) (self-serving declaration was "deserving of minimal weight"). "The credibility of witnesses is almost categorically a trial issue, which means that, if bias is an evident factor, summary judgment is not generally indicated." *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1042–43 (9th Cir. 2011) (citation omitted). "Summary judgment is an inappropriate vehicle for resolving claims that depend on credibility determinations." *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005). Because they are Northrop executives and were deeply involved in claimed unlawful actions, the bias of Newberry's and Lyster's declarations is evident and the veracity of their unsubstantiated declarations depends on determining their credibility. Cross examination of Defendants' hostile witnesses at trial is necessary to appraise the weight and

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

credibility of their testimony. *Blair*, 610 F.2d at 668 n.3.

**B.      ERISA imposes strict fiduciary standards and liability.**

To protect the interests of workers, "Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive." *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 96 (1993); *see* 29 U.S.C. §1001(b). ERISA's strict duties derive from the common law of trusts and "are the highest known to the law." *Tibble III*, 843 F.3d at 1197 (quoting *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996)).

*First*, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying *reasonable* expenses of administering the plan[.]" 29 U.S.C. §1104(a)(1)(A). *Second*, "[a]n ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." *Tibble III*, 843 F.3d at 1197 (quoting *Tibble II*, 135 S.Ct. at 1828; 29 U.S.C. §1104(a)(1)(B). A fiduciary who breaches its duties is "personally liable" for any resulting "losses to the plan" and is subject to appropriate equitable relief. 29 U.S.C. §1109(a).

To supplement the general fiduciary duties of §1104, Congress categorically barred "certain transactions deemed 'likely to injure'" a plan, including transactions with "parties in interest" such as plan service providers. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241−42 (2000)(citation omitted); *see* 29 U.S.C. §1106(a), §1002(14)(B). To qualify for an exemption from a §1106(a) prohibited transaction, the fiduciary has the burden of proving that the provider's compensation was "no more than reasonable." 29 U.S.C. §1108(b)(2); *see Howard*, 100 F.3d at 1488 (burden on fiduciary to prove it qualified for §1108 exemption).

These duties are ongoing and require fiduciaries to eliminate excessive fees and imprudent investments and cease prohibited transactions, no matter how long ago

NO. 16-CV-6794-AB (JCX)

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

those practices started. *Tibble III*, 843 F.3d at 1197; *Tibble II*, 135 S.Ct. at 1828–29.

## II.   Defendants breached their fiduciary duties (Counts II and III).

A claim for relief under §1132(a)(2) and §1109(a) has three elements: (1) a plan fiduciary, (2) breached an ERISA-imposed duty, and (3) caused a loss to the plan. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594–95 (8th Cir. 2009); *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007); *see* 29 U.S.C. §1109(a). Because the Committees are undisputedly Plan fiduciaries (Defs.' SUF ¶¶8, 65), the issue before the Court is whether a reasonable trier of fact could find that Defendants acted imprudently and thereby caused a loss to the Plan. The answer is yes.

Regarding the breach element, Plaintiffs have the burden at trial to show that a fiduciary failed to act loyally or with sufficient "care, skill, prudence, and diligence"—what Defendants (at 6) call "procedural" imprudence. *See* 29 U.S.C. §1104(a)(1). This "inquiry into whether a fiduciary acted with loyalty and care … focuses on the thoroughness of the fiduciary's investigation." *Howard*, 100 F.3d at 1488. Because the prudence inquiry "involves the application of a reasonableness standard, rarely will such a determination be appropriate on a motion for summary judgment." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1078 (N.D. Cal. 2017) (citation, quotation marks omitted); *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919 (8th Cir. 1994) ("[W]hat the trustees did and whether what they did was reasonable are factual questions that preclude granting them summary judgment.").

Although Defendants argue that Plaintiffs must additionally show that the Committees' decisions were "substantively" or "objectively" imprudent (Mem. 6, Concl. Law ¶2), that is wrong. Nothing in the statute requires such a showing— imprudent *conduct* is sufficient to establish a breach. 29 U.S.C. §1104(a)(1); Doc. 68 at 19:14–17; *Harris v. Amgen, Inc.*, 788 F.3d 916, 936 (9th Cir. 2014), *vacated on other grounds*, 573 U.S. 942 (2014) (the "test of prudence is one of conduct, not results"). The concept of "objective" prudence refers to whether the breach *caused* the claimed loss to the plan. *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 363–

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

64 (4th Cir. 2014); *Roth*, 16 F.3d at 919. The burden is on the errant fiduciary, not the participant: "once an ERISA plaintiff has shown a breach of fiduciary duty and loss to the plan, the burden shifts to the fiduciary to prove that such loss was not caused by its breach, that is, to prove that the resulting investment decision was objectively prudent." *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17, 39 (1st Cir. 2018), *pet. for cert. pending*, No. 18-926 (Jan. 11, 2019) (citing *Tatum*, 761 F.3d at 363; *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995); *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992)). This is a "long-recognized trust law principle." *Tatum*, 761 F.3d at 363. As the Supreme Court and Ninth Circuit have emphasized, "courts often must look to the law of trusts" to interpret ERISA. *Tibble II*, 135 S.Ct. at 1828; *Tibble III*, 843 F.3d at 1197 (same). Accordingly, while the Ninth Circuit has yet to address the burden-shifting issue,[1] the court would likely follow the long-standing trust law rule.

Proving that a decision was "objectively prudent" is a "difficult" burden for the fiduciary. *Tatum*, 761 F.3d at 365. "Courts do not take kindly to arguments by fiduciaries who have breached their obligations that, if they had not done this, everything would have been the same." *Id*. (quoting *In re Beck Indus., Inc*., 605 F.2d 624, 636 (2d Cir. 1979) (Friendly, J.)). It requires the fiduciary to show "that despite its imprudent decision-making process … a hypothetical prudent fiduciary *would* have made the same decision anyway." *Id.* at 363; *Roth*, 16 F.3d at 919. The

---

[1] In *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004)—which Defendants do not even cite on this point—the Ninth Circuit stated without analysis that "a plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan." *Id*. at 1099. *Wright* was addressing the so-called "presumption of prudence" applied by some courts in the specific context of claims that an employer's stock was imprudent. *Id*. at 1097–99. *Wright* did not address the question of whether burden-shifting on causation applies outside of the employer stock context when the plaintiff shows a breach and plan losses. And the Supreme Court later rejected the "presumption of prudence," thereby abrogating *Wright*. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 417–18 (2014).

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

"would have" test requires proof that a hypothetical prudent fiduciary *likely* would have done what defendants did, not merely that *any* fiduciary *might* have done the same thing under "even the most remote possibilities." *Tatum*, 761 F.3d at 365 (citation omitted). Just like the prudence question, this "is a fact-intensive inquiry that is not susceptible to summary judgment in this case." *Roth*, 16 F.3d at 919.

In sum, once Plaintiffs show a genuine dispute regarding breach and loss, the burden shifts to Defendants to prove that the trier of fact could *only* conclude that a hypothetical prudent fiduciary *would have* maintained an active management structure for the Emerging Markets Fund, *would have* failed to seek bids for lower recordkeeping fees, and *would have* failed to monitor the $6 million that Hewitt received from Financial Engines. As shown below, Plaintiffs easily meet their burden regarding breach and Plan losses; Defendants have not remotely met theirs.

**A.   The Investment Committee breached its duties regarding the Emerging Markets Fund, resulting in massive Plan losses.**

Defendants claim summary judgment is warranted because Plaintiffs' allegations are "false," while the *ITA's* process and the Fund's investment strategy were prudent as a matter of law. Mem. 5–10. These arguments are meritless.

**1.   *The purported delegation to the ITA did not relieve the Investment Committee of its fiduciary duties.***

Defendants rely heavily on the actions of Northrop's ITA department, with little evidence regarding the *Investment Committee's* conduct. *See, e.g*., Defs.' SUF ¶¶21–52 (discussing ITA activities); Newberry Decl. ¶¶13–27 ("*ITA* Processes and Procedures in Monitoring NGSP Funds"); *id*. ¶¶28–30, 33, 40, 44 ("*the ITA determined*"; "*the ITA conducted*"; "*the ITA analyzed*"; "*the ITA considered*"; "*the ITA's work*") (emphases added). The ITA is not the named fiduciary, nor is it a defendant in this action. Its actions have little bearing on whether the *Investment Committee* acted with the "care, skill, prudence, and diligence" required by ERISA. Indeed, in seeking dismissal of Northrop Grumman Corp. from the fiduciary breach

counts, Defendants emphasized (and the Court agreed) that ERISA generally does not impute the actions of one entity to another entity. *See* Doc. 146 at 6–8. That principle cuts both ways—Defendants cannot now claim that the actions of the ITA are imputed to the Committee to prove that the *Committee itself* was prudent.

To the extent Defendants claim the Investment Committee delegated "day-to-day responsibility for selecting investment managers and investment options" to the ITA (Mem. 2), the purported delegation did not relieve the Investment Committee of its fiduciary duties. Although a named fiduciary may designate another to "carry out fiduciary responsibilities," the plan document must "expressly" authorize the designation. *See* 29 U.S.C. §1105(c)(1)(B). Here, the Plan document expressly provided for delegation of the *Administrative* Committee's duties. SGD ¶137. The Plan also expressly provided that the Board (and later CEO) "may delegate *to the Investment Committee* the responsibility to appoint and terminate Trustees and Investment Managers, to allocate Plan assets, to formulate investment policies, and to instruct the Trustee or Investment Manager." SGD ¶137 (emphasis added). The Plan did not, however, authorize the Board or CEO to delegate those duties to any other entity such as the ITA, nor did it authorize the Investment Committee to do so. Thus, any purported delegation to the ITA did not relieve the Investment Committee of its fiduciary duties regarding the Fund. *Cf.* 29 U.S.C. §1105(c)(2); *see also* 29 U.S.C. §1104(a)(1)(D) (fiduciaries must comply with plan documents); *id.* §1110(a) ("any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.").

Because the Investment Committee was not relieved of its duties, the ITA was effectively a mere consultant to the Committee, with the Committee retaining the duty to review and approve any ITA recommendation. While a named fiduciary may rely on consultants, such advice is not a "whitewash" or "magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

are fulfilled." *Howard*, 100 F.3d at 1489–90 (citation omitted). The Committee "cannot reflexively and uncritically adopt investment recommendations." *Tibble v. Edison Int'l (Tibble I)*, 729 F.3d 1110, 1138 (9th Cir. 2011), *vacated on other grounds,* 135 S.Ct. 1823 (2015) (reliance on investment consultant's reports did not satisfy duty of prudence). Rather, the fiduciary has a "*duty to exercise his own judgment in the light of the information and advice which he receives.*" *Donovan v. Mazzola*, 716 F.2d 1226, 1234 (9th Cir. 1983) (citation omitted).

As discussed next, the Investment Committee failed to exercise its own judgment, instead reflexively and uncritically adopting the ITA's advice.

## 2. *The Investment Committee failed to exercise its own judgment and make a reasoned decision, causing Plan losses.*

"[T]he most basic of ERISA's investment fiduciary duties" is "the duty to conduct an independent investigation into the merits of a particular investment." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996). When making investment decisions, prudence requires fiduciaries to "balance the relevant factors and make a reasoned decision[.]" *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 796 (7th Cir. 2011); *Tatum*, 761 F.3d at 358, 369. The failure to make a decision "under circumstances in which a prudent fiduciary would have done so is a breach of the prudent man standard of care." *George*, 641 F.3d at 796 (citing *DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410, 420–21 (4th Cir. 2007)).

Moreover, "'cost-conscious management is fundamental to prudence in the investment function,' and should be applied 'not only in making investments but also in monitoring and reviewing investments.'" *Tibble III*, 843 F.3d at 1197–98 (quoting RESTATEMENT (THIRD) OF TRUSTS §90, cmt. b). Thus, the choice between high-cost actively managed funds and much lower-cost passive funds is a fundamental aspect of a fiduciary's duty. When a fiduciary eliminates active management for some market segments due to the "challenges of selecting consistently successful active managers" and the "low costs of indexing," a trier

could reasonably find that a prudent fiduciary "would not have retained actively managed investments" for other market segments. *George v. Kraft Foods Global, Inc.*, 814 F. Supp. 2d 832, 853 (N.D. Ill. 2011) (denying summary judgment).

The Seventh Circuit's opinion in *George* is instructive. There, the plaintiffs alleged that two plan funds had an imprudent structure that caused the funds to underperform an alternative structure that the fiduciaries could have used. 641 F.3d at 792–95. The district court granted summary judgment, based on various documents showing extensive discussions among the plan fiduciaries "regarding the costs and benefits" of both structures. *Id*. at 794–95. The Seventh Circuit reversed. "Despite all this discussion" of the issue by the fiduciaries, the court could "find nothing in the record indicating that defendants ever made a decision on these matters—i.e., that they actually determined whether the costs of making changes to the [funds] outweighed the benefits, or vice versa." *Id.* at 795. The record did not reveal whether maintaining the fund's structure was "the result of a deliberate decision," as opposed to inertia. *Id*. at 795–96. "Thus, viewing the evidence in the light most favorable to plaintiffs," the court concluded "that no Plan fiduciary ever made a decision" between the two structures, and remanded for trial. *Id*. at 796.

The same reasoning applies here. There is no evidence that the Investment Committee made a reasoned, deliberate decision to maintain an active management strategy for the EM Fund in late 2010 when the other core funds were changed to passive management, and to maintain the active structure until December 2014. *See George*, 641 F.3d at 795 (defendants failed to cite "a document or affidavit, or any deposition testimony," showing a decision by the fiduciary). For several years after 2010, the Investment Committee failed to review the relative strengths and weaknesses of passive and active management for the EM Fund. SGD ¶¶192, 194; *cf. Tibble III*, 843 F.3d at 1197 (fiduciaries must "reevaluat[e] the trust's investments periodically") (quoting *Tibble II*, 135 S.Ct. at 1828). Although Defendants cite other documents prepared by the ITA between May 17, 2010 and

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

November 11, 2013, those documents were never presented to the Investment Committee. SGD ¶193. As in *George*, the record viewed most favorably to Plaintiffs shows at most that some Northrop personnel analyzed or discussed the issue. But whether the Investment Committee ever made a reasoned decision regarding the EM Fund's strategy is genuinely disputed.

The Investment Committee's failure to make a reasoned decision harmed the Plan. When the Committee finally requested a recommendation regarding the EM Fund from the ITA on May 15, 2014—more than three years after moving the other core investment options to passive management—the Committee approved the ITA's recommendation to increase the Fund's passive allocation to 100%. SGD ¶200. Had the Investment Committee engaged in such a review in 2010 when the other funds moved to passive management, it would have concluded at that time that a 100% passive investment strategy for the EM Fund would best serve the Plan. The failure to transition the fund to passive management by December 2010 caused over $28.4 million in Plan losses. SGD ¶242.

### 3. *Defendants' "false allegations" argument actually confirms the presence of material disputes of fact.*

In attempting to demonstrate prudence, Defendants (at 7–9) dispute the truth of three isolated allegations in the 44-page SAC: (1) the EM Fund had an "active management" strategy until late 2014; (2) *Defendants* "took no action"; and (3) *Defendants* "at no point" made a decision between active and passive management. In fact, each of these allegations is true, or at least genuinely disputed.

Until the end of 2014, the EM Fund's investment objective, as set forth in the Plan's Investment Policy Statement, was to generate investment returns that exceeded its benchmark index net of fees. SGD ¶¶146–149. This by definition is an active investment strategy. SGD ¶145. Defendants assert that this allegation is "false" because a portion of the EM Fund portfolio was passively managed prior to 2014. But nowhere does the SAC claim that *100%* of the Fund's assets were

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

actively managed until that time. Regardless of whether a portion of the portfolio was passive, the strategy for the Fund *as a whole* was indisputably to beat a benchmark—the very definition of active management. SGD ¶¶146–147.

Defendants' dispute regarding the truth of allegations that *Defendants* "took no action" and "at no point" made a decision again relies on the actions of the ITA, which is not a "Defendant." The actual *Defendants*—the Investment Committee and its members—indeed took no action and at no point made a reasoned decision.

### 4.    *The Emerging Markets Fund was not objectively prudent.*

Defendants have not proven that a prudent fiduciary would have continued using active management in the Emerging Markets Fund after 2010, and substantial evidence shows that doing so was objectively imprudent. Prior to the 2010 decision to use a passive strategy for the Plan's other core investments, the EM Fund's active strategy had consistently failed to meet its objective of generating returns that exceeded its benchmark index after fees. SGD ¶¶183–189. Other data available to Defendants in 2010 overwhelmingly demonstrates that active managers in emerging markets were unable to outperform their benchmarks net of fees. SGD ¶¶202–204, 206–207, 235–238. The characteristics of the Plan's EM Fund also indicated that it was highly unlikely to outperform. SGD ¶¶211–220. A prudent fiduciary who analyzed these data would *not* have continued using the same active management strategy in the EM Fund. *Cf. Tatum*, 761 F.3d at 363–64.

While Defendants' expert provides opinions regarding the emerging markets segment generally, he cites no facts suggesting that the *Plan's* Emerging Markets Fund was objectively prudent. SGD ¶¶221–226. He expressly *disclaims* any opinion that the Plan's EM Fund was well suited for active management, had an appropriate strategy, or maintained prudent active managers. SGD ¶¶221–223. In contrast, Plaintiffs' expert testifies that the information actually presented to the Investment Committee during 2010 was inadequate for the Committee to make an informed decision to maintain an active strategy in the EM Fund. SGD ¶228. He

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

- 17 -

NO. 16-CV-6794-AB (JCX)

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

showed that quantitative data that was available to the Investment Committee demonstrated that if a passive management strategy was employed for the Plan's other investment options, the same decision should have been made for the EM Fund. SGD ¶¶230–239, 241. Objective data also showed that active managers in emerging markets funds were unable to outperform their benchmarks net of fees in order to justify paying higher investment management fees compared to passively managed funds. SGD ¶¶230–239, 202–204, 206–207.

Defendants' claim that continued active management was objectively prudent is undermined by the fact that the Committee ultimately moved to 100% passive management for the EM Fund in 2014. Defendants cite nothing that *changed* in 2014 that suddenly rendered active management imprudent in the emerging markets segment. Their expert specifically relies on data after 2014 suggesting that active management was still the approach used by the majority of emerging markets funds. Defs.' SUF ¶17. At a minimum, whether a prudent fiduciary would have transitioned to passive management before 2014 is materially disputed.

**B.   Defendants allowed Hewitt to receive unreasonable compensation.**

Fiduciaries must "minimize costs," because "[w]asting beneficiaries' money is imprudent[.]" *Tibble III*, 843 F.3d at 1197–98 (citation omitted). This includes a duty to use "the power the trust wields" to obtain more favorable fees. *Id.* at 1198. A fiduciary breaches its duty when it fails to "diligently investigate" and "monitor and control recordkeeping fees." *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014). Expert testimony that the Plan overpaid due to the fiduciaries' "failure to solicit bids" periodically precludes summary judgment for the fiduciaries, even if the fiduciaries claim they relied on a consultant. *George*, 641 F.3d at 798–800. As discussed below, the Administrative Committee failed to diligently investigate or monitor Hewitt's recordkeeping compensation and failed to wield the Plan's negotiating leverage to obtain more favorable fees.

**1.   *The Administrative Committee failed to use a prudent process***

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.

*to monitor and negotiate Hewitt's fees.*

In *George*, the Seventh Circuit reversed summary judgment on similar facts. Kraft fiduciaries had not sought competitive bids for plan recordkeeping services since 1995. *George*, 641 F.3d at 798. Like Defendants here, Kraft asserted that ERISA did not require competitive bidding, and that it could simply rely on consultants' opinions as to the reasonableness of recordkeeping fees. *Id*. The district court granted summary judgment, despite the opinion of plaintiffs' expert that the fiduciaries acted imprudently in extending the contract without soliciting competitive bids, resulting in excessive fees of at least $16 per-participant. *Id*. The Seventh Circuit reversed, because the plaintiffs' expert's opinion "created a genuine issue of material fact" from which a reasonable fact-finder could conclude that Kraft breached its fiduciary duty. *Id*. at 798–99 & n.10. The fact that Kraft used a consultant was not dispositive, because the plaintiffs' evidence of imprudence created a genuine dispute of fact. *Id*. at 799–800.

Similarly, here, Plaintiffs' expert found that the Administrative Committee's near-ten-year failure to solicit competitive bids after hiring Hewitt in 2007 caused the Plan to overpay for recordkeeping. SGD ¶¶308, 313–314. That Defendants' delay in seeking bids here was somewhat shorter than in *George* is immaterial. In both cases, expert testimony established that a prudent fiduciary would have obtained bids more frequently, and that the failure to do so harmed the Plan. Even stronger than the *George* facts, Defendants' own consultant (Weilyn) informed Northrop that similar plans were paying much lower fees for recordkeeping, yet the Administrative Committee still failed to obtain bids. SGD ¶¶254, 258, 311, 315.

While Defendants correctly note (at 14) that ERISA does not contain an explicit "competitive bidding" mandate or require "any particular course of action," it *does* require fiduciaries to meet the "prudent person" standard. *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006). Plaintiffs' expert evidence shows that a prudent fiduciary in like circumstances would have solicited competitive bids more frequently,

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

creating "a genuine issue of material fact as to whether defendants acted prudently." *George*, 641 F.3d at 798–99. Summary judgment is therefore improper.

Aside from failing to obtain bids, the Administrative Committee's process had other flaws. Northrop's consultant (Weilyn), hired without the Administrative Committee's input or approval, found that similar plans were paying much lower fees than Hewitt proposed, yet those findings were not given to the Administrative Committee. SGD ¶¶250–251, 253, 257, 258. The Committee also never approved the April 1, 2011 amendment to Hewitt's contract nor determined whether the fee schedule was reasonable for Hewitt's services. SGD ¶260; *see also* SGD ¶261.

The Administrative Committee also failed to monitor all sources of Hewitt's compensation—particularly the millions of dollars in kickbacks Hewitt received from Financial Engines. Plaintiffs' expert testifies that similarly situated plan fiduciaries would have monitored and accounted for that additional stream of income in reviewing whether Hewitt's fees were reasonable, and used that information to negotiate for a fee reduction. SGD ¶¶289, 291–292, 294–295. Thus, Defendants' assertion (at 18) that "Plaintiffs have no evidence" that Defendants could have used the payments to Financial Engines "to negotiate less expensive recordkeeping or investment advisory services for the NGSP" is simply wrong. The Administrative Committee simply failed to do so.

The cases cited by Defendants involved motions to dismiss, not summary judgment. Mem. 10–13. Before "discovery commences," ERISA participants have no access to evidence that "the process by which the Plan was managed" was flawed. *Braden*, 588 F.3d at 596, 598. Here, with the benefit of discovery, Plaintiffs have presented such evidence. Regarding the non-precedential order in *White v. Chevron Corp.*, 2018 WL 5919670 (9th Cir. Nov. 13, 2018), the Court already found that "the *facts* in *White* are distinguishable." Doc. 68 at 21 (emphasis added). Defendants cite no facts that have changed since that determination.

Although Defendants suggest (at 16) that courts have rejected similar claims

involving Financial Engines, the primary issue in those cases was whether a *recordkeeper* acts as a fiduciary when it negotiates an agreement with Financial Engines. *See, e.g.*, *Scott v. Aon Hewitt Fin., Advisors, LLC*, No. 17-679, 2018 WL 1384300, at *3–8 (N.D. Ill. Mar. 19, 2018). There is no similar claim here.

Defendants mistakenly assert that "[a] fiduciary's duty to monitor service providers' fees ... has never been held to include an obligation to monitor compensation a service provider receives from a third party[.]" Mem. 17. In fact, courts and the Department of Labor have repeatedly recognized the fiduciary duty to monitor revenue sharing—payments from third-party investment advisors to a plan's recordkeeper. *Tussey*, 746 F.3d at 336 (fiduciary breached duty by failing to monitor "excessive revenue sharing" payments from mutual funds to recordkeeper); *Terraza*, 241 F. Supp. 3d at 1081 ("[F]iduciaries must assure that the compensation the plan pays directly or indirectly to [the service provider] for services is reasonable" by "taking into account ... all fees or compensation received by [the service provider] ... including any revenue sharing.") (quoting DOL Adv. Op. 2013-03A (July 3, 2013)); *see Tibble I*, 729 F.3d at 1130 (noting that Hewitt's recordkeeping fees were paid by revenue sharing from "third party" mutual funds). The record shows that the Administrative Committee failed to satisfy that duty.

### 2.   *The Plan's recordkeeping fees were excessive.*

Defendants cannot meet their burden to show that the Plan's recordkeeping fees were objectively prudent. As Plaintiffs' expert Martin Schmidt testifies, Hewitt received excessive fees throughout the class period until April 1, 2016, while similar plans paid far lower recordkeeping fees than Hewitt charged. SGD ¶¶313–317. Although Defendants attempt to dismiss Schmidt's fee opinions as "mere speculation" (Mem. 16), his opinions are admissible and thus create a genuine issue of material fact. *George*, 641 F.3d at 798–99. Had the Administrative Committee acted as a prudent fiduciary by soliciting competitive bids at 3–5 year intervals and using the Financial Engines arrangement to negotiate a lower fee with Hewitt, the

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

Plan would have avoided $16.3 million in losses. SGD ¶314.

## C.     Defendants violated 29 U.S.C. §1104(a)(1)(A).

Contrary to Defendants' argument (at 19–20), ERISA does not require proof that a fiduciary had a certain state of mind in order to find a breach of 29 U.S.C. §1104(a)(1)(A). Also wrong is Defendants' suggestion (at 19) that the same facts cannot show both imprudence and disloyalty: "A fiduciary's duty of care *overlaps* the duty of loyalty." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 299 (5th Cir. 2000)(emphasis added); *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)("Sections 404(a)(1)(A) and (B) impose … overlapping standards.").

Defendants also ignore that §1104(a)(1)(A) incorporates a duty to incur only "reasonable expenses." 29 U.S.C. §1104(a)(1)(A)(ii). In light of Plaintiffs' evidence that Defendants caused the Plan to incur expenses that benefited Hewitt and the EM Fund's managers at the expense of participants, the trier of fact could reasonably find that Defendants acted other than "solely in the interest of the participants" and for the exclusive purpose of "providing benefits" and "defraying reasonable expenses" of administration. 29 U.S.C. §1104(a)(1)(A).

Even under Defendants' interpretation of the statute, summary judgment is improper. Maintaining an active strategy in the EM Fund directly benefited Northrop Grumman because Wellington was an emerging markets manager for both the Plan and Northrop's pension plan. SGD ¶182. Because Wellington's investment management fees were based on the combined 401(k) and pension assets, had the Plan removed Wellington, Northrop Grumman would have been charged higher fees in the pension plan. *Id*. Raj Chandhok, a member of the Investment Committee, was aware of the benefit Northrop would receive by maintaining Wellington as an Emerging Markets Fund manager. *Id.*

Regarding Count II, Hewitt was a "total benefits outsourcing provider," meaning it provided administrative services for Northrop's defined benefit, health and welfare, and non-qualified plans in addition to the Plan. SGD ¶321. Using a

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

total benefits outsourcing provider benefited Northrop at the Plan's expense because the arrangement caused the Plan to pay higher recordkeeping fees than would have been charged by a defined contribution-only provider. SGD ¶¶264, 321. This was shown by bids the Plan received in 2014 from Voya, which were much lower than the bids of total benefits outsourcing providers. SGD ¶264. Allowing a 401(k) plan's assets to be used to subsidize corporate services in this manner is a breach of the duty of loyalty. *Tussey*, 746 F.3d at 336.

## III.    Defendants committed prohibited transactions (Count VI).

Defendants cannot dispute that Hewitt and the EM Fund managers are "parties in interest" who furnished "services" in exchanges for "assets of the plan." 29 U.S.C. §1106(a)(1)(C), (D); §1002(14)(B). Instead, Defendants argue that the statute should not be interpreted to cover payments to service providers. Mem. 22. Defendants are wrong: §1106(a) "begins with the premise that virtually all transactions between a plan and a party in interest are prohibited, unless a statutory or administrative exemption applies." *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D.Cal. 2008). The DOL explains that "a service relationship between a plan and a service provider" constitutes a prohibited transaction, but ERISA provides for exemptions if the fiduciary shows that the service was necessary and the compensation was reasonable. Reasonable Contract or Arrangement Under Section 408(b)(2)—Fee Disclosure, 77 Fed.Reg. 5632, 5632 (Feb. 3, 2012); 29 C.F.R. §2550.408b-2. Evidence of payments to a recordkeeper "in exchange for services rendered to the Plan" establishes a violation of §1106(a). *Braden*, 588 F.3d at 601–02; *Abraha v. Colonial Parking, Inc.*, 243 F. Supp. 3d 179, 190 (D.D.C. 2017) (payment of "excessive fees from the assets of the Plan" to a party in interest violates §1106(a)(1)(C) and (D)); *In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp. 2d 944, 961–62 (W.D. Tenn. 2010) (payments from plan to investment managers violated §1106(a)(1)(C) and (D)).

While Defendants rely on out-of-circuit district court cases which construed

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

§1106(a) narrowly, controlling authority holds that ERISA's prohibited transaction provisions "should be construed broadly in order to effectuate Congress's 'overriding concern with the protection of plan participants and beneficiaries.'" *Patelco Credit Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001) (citation omitted); *Ronches v. Dickerson Employee Benefits, Inc.*, No. 09-4279, 2009 WL 10669571, *18 (C.D. Cal. Oct. 30, 2009) ("§1106 must be read broadly") (Morrow, J.).

Defendants' second argument, that the payments qualify for "the statutory safe harbor of 29 U.S.C. § 1108(b)" (Mem. 23), also fails. Defendants bear the burden of proof on this affirmative defense. *Howard*, 100 F.3d at 1488. For the same reasons that there are material disputes regarding Counts II and III, Defendants have not met their burden to show that the payments to Hewitt and the EM Fund's managers were indisputably "no more than reasonable." 29 U.S.C. §1108(b)(2). The testimony of Plaintiffs' expert and Defendants' own consultant shows that Hewitt's fees were excessive. SGD ¶¶256, 258, 313–317. The EM Fund's high active management fees were unreasonable because they were not justified by even an expectation of superior performance. SGD ¶¶150, 156, 167, 171, 183–189. Identical recordkeeping services and superior investment management were available at much lower cost. SGD ¶¶165, 173, 181, 256, 264, 313, 315–317.

Defendants' statute of repose argument was rejected by the Supreme Court in *Tibble II*, 135 S.Ct. at 1828–29.[2] As Judge Morrow found, *Tibble II* compels the conclusion that fiduciaries have a continuing duty "not to engage in prohibited transactions." *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2015 WL 10433713, at *26 (C.D. Cal. Nov. 24, 2015). Defendants are not immunized merely because their first violation occurred outside of the 6-year period. "[E]ach payment" within the six-year period was a separate violation and triggered a new limitations period. *Id.*; *see Tibble II*, 135 S.Ct. at 1829; *Wildman v. Am. Century*

---

[2] *Tibble II* abrogated *David v. Alphin*, 704 F.3d 327, 340–41 (4th Cir. 2013), cited by Defendants (at 23). *See Tibble I*, 729 F.3d at 1120 (relying upon *David*).

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

1 *Servs., LLC*, 237 F. Supp. 3d 918, 924–25 (W.D. Mo. 2017); *Dole v. Formica*, No.

2 87-2955, 1991 WL 317040, at *8 (N.D. Ohio Sep. 30, 1991) (a new §1106(a)(1)(C)

3 claim arose "each time the Funds paid the Union an excessive administrative fee").

4 **IV.   Defendants failed to prudently monitor Plan fiduciaries (Count VII).**

5 The Committees *never* provided any written documentation to the Board

6 regarding the Plan's investment results, fees and expenses, service provider

7 selection, or the basis for their fiduciary decisions. SGD ¶¶323–324. They also did

8 not provide any such information to the CEO *until 2016*. SGD ¶323. The trier of

9 fact could thus easily find that a prudent fiduciary in that position would have used

10 more diligent oversight to ensure that the Plan was being managed prudently.

11 Moreover, as described above, the Investment Committee failed to exercise

12 oversight of the ITA department's review of the Emerging Markets Fund, and the

13 Administrative Committee failed to exercise oversight of Northrop personnel

14 involved with reviewing and amending Hewitt's fees. The monitoring claims

15 against the Committees thus present genuine disputes of fact.

16 **V.   Committee members are personally liable for the Committees' breaches.**

17 Defendants cite no authority for their theory that individual fiduciaries avoid

18 liability unless they "single-handedly" exercise fiduciary authority, as opposed to

19 exercising such authority as part of a group. The record shows that each of the

20 individual Defendants participated in their respective Committees' actions (or

21 omissions) discussed above. SGD ¶¶12, 69; Defs.' SUF ¶¶12, 69. Thus, in addition

22 to being specifically named as fiduciaries in the Plan document,[3] each individual

23 both "ha[d]" and "exercise[d]" discretionary authority and control over the Plan's

24 administrative fees or assets. *See* 29 U.S.C. §1002(21)(A)(i), (iii).

25 **CONCLUSION**

26 Because the material facts are in dispute, the Court should deny the motion.

27

28 ___

[3] "The Administrative Committee *and each of its members* are 'named fiduciaries' of the Plan." Plan §16.01 (emphasis added); *id.* §17.05 (Inv. Comm. job titles).

March 29, 2019                         Respectfully submitted,

By: /s/ Sean E. Soyars
Sean E. Soyars (*pro hac vice*)
SCHLICHTER, BOGARD & DENTON
*Class Counsel and Lead Counsel for Plaintiffs*

WILLIAM A. WHITE (SBN 121681)
HILL, FARRER & BURRILL LLP
*Local Counsel for Plaintiffs*

SCHLICHTER BOGARD & DENTON
ATTORNEYS AT LAW
100 S. 4TH STREET, STE 1200
ST. LOUIS, MO 63102

NO. 16-CV-6794-AB (JCX)

PLTFS' MEM. OF POINTS AND AUTHORITIES IN OPP. TO MOTION FOR PARTIAL SUMM. J.