UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFTON W. MARSHALL, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN CORPORATION, et al.,<br><br>　　　　　Defendants. | Case No. 2:16-cv-06794-AB (JCx)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS' EXPERT MARCIA WAGNER [174]** |

## I.   INTRODUCTION

Before the Court is Plaintiffs' Motion to Disqualify Defendants' expert witness Marcia S. Wagner. ("Mot.," Dkt. No. 174.) Plaintiffs oppose the Motion. ("Opp'n," Dkt. Nos. 207.) Having considered the parties' submissions, the relevant law, and the record in this case, as well as the arguments of counsel at oral argument, the Court **DENIES** Plaintiffs' Motion.

## II.   BACKGROUND

This is a class action against Defendants for breach of various fiduciary duties under the Employee Retirement Income Security Act ("ERISA"). In late September 2018, Defendants retained the founder of the Wagner Law Group, Marcia Wagner, to

1.

rebut the opinion of Plaintiffs' expert, David Witz. The firm's conflicts check revealed that a partner of her firm, Tom Clark, had represented Plaintiffs in a related action—*In re Northrop Grumman Corp. ERISA Litigation*, No. 06-cv-6213-AB (JCx) (C.D. Cal.) ("*Grabek*")—while working as an associate from 2008 to 2013 at Schlichter, Bogard & Denton, the same law firm as Plaintiffs' current counsel. (*See* Dkt. No. 174-2, Declaration of Jerome J. Schlichter ("Schlichter Decl.") ¶ 3.) During this time, Mr. Clark was an attorney of record in *Grabek* and "was materially involved in all aspects of that representation." (*Id.* ¶ 4.) He recorded over 2,500 hours on tasks relating to the representation of the *Grabek* plaintiffs and "investigated, analyzed, and developed the claims" asserted in *Grabek*. (*Id.* ¶¶ 3-4.) Plaintiffs contend that his work "led to the claims asserted in this action concerning the unlawful payment of Plan assets to Northrup Grumman for services performed by Northrop employees." (*Id.*)

After learning of Mr. Clark's involvement in *Grabek*, Ms. Wagner's firm researched the relevant ethics rules and determined that there was no conflict preventing Ms. Wagner from serving as an expert in this case. Nonetheless, the firm immediately instituted an ethical screen to prevent Mr. Clark from disclosing client confidences. (Dkt. No. 207-2, Declaration of Marcia Wagner ("Wagner Decl.") ¶¶ 6-8.) Ms. Wagner personally instructed Mr. Clark that he could not work on this case, access files related to this case, or contact or discuss this case with any attorneys or staff involved in this case. (*Id.* ¶ 8.)

Plaintiffs now move to disqualify Ms. Wagner from testifying as an expert in the current action based upon an imputed conflict theory.

### III. LEGAL STANDARD

"There is no bright-line rule for expert disqualification." *Veazey v. Hubbard,* No. 08-00293, 2008 WL 5188847, at *5 (D. Haw. Dec.11, 2008) (citing *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004). Courts must "balance the policy objectives that favor disqualification—ensuring fairness and

2.

preventing conflicts of interest—against policies militating against disqualification, including guaranteeing that parties have access to witnesses who possess specialized knowledge and allowing witnesses to pursue their professional callings." *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 3991107, at *5 (N.D. Cal. Aug. 2, 2013) (citing *Space Sys./Loral v. Martin Marietta Corp.*, No. 95-20122, 1995 WL 686369, at * 2 (N.D. Cal. Nov. 15, 1995)).

District courts have recognized that "disqualification may be appropriate . . . when a party retains expert witnesses who previously worked for an adversary and who acquired confidential information during the course of their employment." *Space Sys./Loral*, 1995 WL 686369 at *2. Courts generally disqualify an expert based on a prior relationship with an adversary if "(1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation." *Hewlett-Packard*, 330 F. Supp. 2d at 1092-93. "In addition to these two factors, the Court also should consider whether disqualification would be fair to the affected party and would promote the integrity of the legal process." *Id.* at 1093. Disqualification is a "drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Id.* at 1092.

**IV.  DISCUSSION**

Plaintiffs move to disqualify Ms. Wagner from testifying as an expert in this case on two grounds.  First, Plaintiffs argue that Mr. Clark's alleged conflict of interest is imputed to Ms. Wagner.  (Mot. at 7-14.)  Second, Plaintiffs contend Ms. Wagner's testimony that Plaintiffs' proffered expert Mr. Witz is not qualified to offer an expert opinion in this case creates a conflict because Mr. Witz is a client of Ms. Wagner's firm. (Mot. at 19-21.) The Court will address each argument in turn.

**A.  Ms. Wagner Is Not Disqualified Under Standards Applicable to Expert Witnesses.**

Generally, "[t]he party seeking disqualification of an expert witness bears the

3.

burden of demonstrating that it was reasonable for it to believe that a confidential relationship existed, and, if so, whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate." *Hewlett-Packard,* 330 F. Supp. 2d at 1093 (citation omitted). Courts consider whether the adversary "disclosed confidential information to the expert that is relevant to the current litigation." *See Ziptronix, Inc. v. Omnivision Techs., Inc.,* No. 10-05525, at *1, 2013 WL 146413 (N.D. Cal. Jan. 14, 2013) (citing *Hewlett-Packard,* 330 F. Supp. 2d at 1093). Confidential information is defined as information "of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege," including discussions of a party's "strategy in the litigation," a party's "view of the strengths and weaknesses of each side," and the "role of each of [a party's] experts to be hired and anticipate defenses." *Hewlett-Packard,* 330 F. Supp. 2d at 1093.

  Here, Plaintiffs represent that they reasonably believed they had a confidential relationship with Mr. Clark and shared confidential information with him relating to the *Grabek* litigation. Plaintiffs, however, fail to demonstrate that Mr. Clark disclosed any of this confidential information to Ms. Wagner. Plaintiffs also fail to clearly assert any prejudice that they might suffer from Ms. Wagner's retention as an expert. Plaintiffs overlook the fact that Mr. Clark and Ms. Wagner "are not the same person and instead . . . rely upon a theory of imputed disqualification." *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1085 (C.D. Cal. 2001). But as Defendants note, "*Stencel* explicitly rejected a 'strict imputed disqualification rule for expert witnesses akin to that which applies to attorneys." (Opp'n at 4 (quoting *Stencel*, 174 F. Supp. 2d at 1081).)

  Plaintiffs attempt to distinguish *Stencel* "based on the specific 'facts and circumstances'" of *this* case, noting that Defendants have not submitted evidence from Mr. Clark confirming "he has not disclosed to [Ms. Wagner] [any] confidential information." (Dkt. No. 222 at 1.) Plaintiffs, however, cite no authority, and the Court

has found none, that such evidence is necessary where, as here, the conflicted party is immediately and properly screened from any participation in the case[1] and the evidence shows he has had no interactions with others relating to the case apart from disclosing that he represented the plaintiffs in a related case. (*See* Wagner Decl. ¶¶ 7-10.)

Because the disqualification doctrine generally applicable to expert witnesses does not have a strict imputed disqualification rule, and Plaintiffs have failed to demonstrate that Ms. Wagner, as opposed to Mr. Clark, possesses confidential information, Ms. Wagner is not disqualified under the standard applicable to expert witnesses.

**B. Ms. Wagner Is Not Disqualified Under the Rules of Professional Conduct Applicable to Attorneys.**

Plaintiffs next argue that disqualification is necessary because the ethics rules of Massachusetts (the state in which Ms. Wagner is barred) and California (the state in which this action is pending) prohibit Ms. Wagner from serving as an expert in this case. (Mot. at 10-19.) Defendants counter by arguing that neither states' ethics rules disqualify Ms. Wagner from testifying as an expert. The Court agrees for the reasons indicated below.

---

[1] Ms. Wagner declares that she "personally instructed Mr. Clark that he was to be prohibited from working on this case; accessing any files related to this case; or contacting or discussing this case with any attorneys or other staff involved in this matter"; that Mr. Clark "has had absolutely nothing to do with this case"; that she "instructed the two other attorneys who assisted in preparing [her] testimony for this case . . . that they were prohibited from contacting or speaking with Mr. Clark"; and that "neither [she] nor anyone else working on this case have received any information from Tom Clark relating to or derived from his representation of the plaintiffs in the *Grabek* litigation." (Wagner Decl. ¶¶ 8-10.)

5.

### 1. Under the Massachusetts Rules, a Class-Action Lawyer Represents Only the Named Plaintiffs for Conflicts Purposes.

Massachusetts Rule of Professional Conduct 1.7 states "[w]hen a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer. . . ." *Id.*, cmt. 25; *see also In re Rail Freight Fuel Surcharge Antitrust Litigation*, 965 F. Supp. 2d 104, 114-15 (D.C. Cir. 2013); *Tauric v. Rosas*, No. 2:10-417-WBS (EFBx), 2011 WL 2671517, at *3 (E.D. Cal July 6, 2011); *Sharp v. Next Entm't Inc.*, 163 Cal. App. 4th 410, 433-34 (2008). Here, the class representatives in *Grabek* are not class representatives in this matter.[2] Because Mr. Clark is not conflicted under the Massachusetts rules neither is Ms. Wagner.

### 2. California Rule 1.9 Does Not Apply to an Attorney Serving as an Expert Witness.

Rule 1.9 provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter *represent* another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." Cal. R. Prof. Conduct 1.9(a) (emphasis added). Contrary to Plaintiffs' suggestion, Rule 1.9 does not apply to an attorney testifying as an expert witness. An attorney testifying as an expert does not "represent" the party offering her testimony. (*See* Opp'n at 4 (citing numerous cases, treatises, and the ABA Model Rules).) Experts perform "a very different function in litigation than do lawyers." *Stencel*, 174 F. Supp. 2d at 1085.

---

[2] In any event, district courts in Massachusetts have also recognized that experts do not "represent" clients within the meaning of Massachusetts Rule 1.9, even when those experts are attorneys. *Millgard Corp. v. Gadsby Hannah, LLP*, No. 04-12388-RWZ, 2006 WL 1973410, at *3 (D. Mass. July 13, 2006) ("Mr. Lewin is being offered as an expert witness, not as counsel to Gadsby, thus the conflict-of-interest rules governing attorneys do not apply.").

"Attorneys are advocates, charged with selflessly serving their client's interests. Expert witnesses, on the other hand, are employed to assist the parties in their pretrial preparation, and if called to testify, to give their unbiased opinion in order to assist the trier of fact in understanding the relevant evidence." *Id.* at 1085-86; *see* Fed. R. Evid. 702. Because Ms. Wagner does not "represent" Defendants in the current matter, Rule 1.9 does not bar her from testifying as an expert witness.

### 3. Rule 3-310(E) Disqualifies Mr. Clark from Serving as an Expert In This Case.

Defendants rely on California Rule 1.9—the current rule outlining lawyers' duties to former clients —and distinguishes cases cited by Plaintiffs—such as *Plumley v. Doug Mockett & Co.*, 2008 WL 5382269, at *1 (C.D. Cal. Dec. 22, 2008) and *Brand v. 20th Century Ins. Co./21st Century Ins. Co.*, 124 Cal. App. 4th 594, 599 & n.1 (2004)—as cases analyzing "the *prior* version of California's ethics rules, which contained materially different language." (Opp'n at 7.) But the *prior* version of California Rule 1.9—Rule 3-310(E)—was in effect when Defendants retained Ms. Wagner as an expert witness (late September 2018) and when she submitted her expert report (October 2018).[3] The Court therefore analyzes whether Rule 3-310(E) disqualifies Mr. Clark from testifying as an expert in this litigation and whether that conflict is imputed to Ms. Wagner.

Rule 3-310(E) states: "A member shall not, without the informed written consent of the client or former client, *accept employment adverse* to the client or former client where, by reason of the representation of the client or former client, the *member has obtained confidential information material to the employment*." (Emphasis added). Defendants recognize that the phrase "accept employment adverse to [a] . . . former client, is "language that, unlike the current rule's focus on 'represent[ation],' could

---

[3] Former Rule 3-310(E) was operative until October 31, 2018, while current Rule 1.9 became effective November 1, 2018.

plausibly be read to encompass 'employment' as an expert witness." (Opp'n at 7 (citing *EEOC v. Exxon Corp.*, 202 F.3d 755, 759 (5th Cir. 2000), which stated that another jurisdiction's "broader 'employment' language suggests that serving as an expert witness might also be disallowed").) Courts apply a "substantial relationship" test under which receipt of confidential information is presumed if "confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation." *H. F. Ahmanson & Co. v. Salomon Bros.*, 229 Cal. App. 3d 1445, 1454 (1991). The Court examines "the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." *Desert Med. Imaging, Indio, LLC v. VMG Health, LLC*, No. ED CV-17-01835-JGB (SHKx), 2018 WL 6131580, at *3-4 (C.D. Cal. Feb. 8, 2018) (citation omitted).  When a party establishes a substantial relationship, a court presumes access to confidential information and must disqualify the attorney. *Beltran v. Avon Prod., Inc.*, 867 F. Supp. 2d 1068, 1078 (C.D. Cal. 2012).

Here, Mr. Clark billed over 2,500 hours in *Grabek* and was involved in all aspects of that litigation. The Court finds the issues presented in *Grabek* and this case are not identical, but could reasonably be determined to be substantially related. *Desert Med. Imaging, Indio, LLC*, 2018 WL 6131580, at *5.  Mr. Clark is thus presumed to possess client confidences revealed in his prior representation that are relevant to the current action. Because this case constitutes a substantially related matter to the former representation, Mr. Clark is disqualified from serving as an expert witness in this matter.

### 4. Mr. Clark's Conflict Under Rule 3-310(E) Is Not Imputed to Ms. Wagner.

Defendants claim that Mr. Clark is not involved in this case and has been screened. Courts have reached different conclusions as to whether an attorney can rebut a presumption of shared confidences and avoid disqualification by establishing

8.

that the firm imposed effective screening measures. *Compare In re County of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000) (noting that "[t]he [California] courts of appeal developed a general rule that the presumption is not rebuttable" but interpreting *People v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1151 (1999), as suggesting that the California Supreme Court "may be inclined" to allow law firms to erect ethical walls to avoid disqualification), *with Beltran,* 867 F. Supp. 2d at 1083 (doubting that ethical screening can prevent disqualification), *and j2 Glob. Commc'ns, Inc. v. EasyLink Servs. Int'l Corp.*, No. CV 09-04189-DDP (AJWx), 2012 WL 6618609, at *9 (C.D. Cal. Dec. 19, 2012) (finding presumption of shared confidences was irrebuttable, thus requiring disqualification, when the conflicted attorney was not timely walled off). However, at least one California appellate court has determined that a law firm *can* rebut the presumption of shared client confidences if it imposed (1) ethical screening "when the conflict arose" and (2) the firm imposed "preventative measures to guarantee that [confidential] information will not be conveyed." *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776, 801, 810 (2010) (emphases omitted); *see also Heller v. NBCUniversal, Inc.*, No. CV 15-09631-MWF (KSx), 2017 WL 10560640, at *3-4 (C.D. Cal. June 30, 2017).

Courts may also consider additional factors, such as "[1] physical, geographic, and departmental separation of attorneys; [2] prohibitions against and sanctions for discussing confidential matters; [3] established rules and procedures preventing access to confidential information and files; [4] procedures preventing a disqualified attorney from sharing in the profits from the representation; and [5] continuing education in professional responsibility." *Kirk*, 183 Cal. App. 4th at 810-11 (citation omitted). "[T]he inquiry before a trial court considering the efficacy of any particular ethical wall is *not* to determine whether all of a prescribed list of elements (beyond timeliness and the imposition of prophylactic measures) have been established; it is, instead, a case-by-case inquiry focusing on whether the court is satisfied that the tainted attorney has not had and will not have any improper communication with others at the firm

1 concerning the litigation." *Id.* at 811.

2     Here, Defendants have presented evidence that Mr. Clark was immediately
3 screened from the case and has no access to files relating to this case. Mr. Clark and
4 Ms. Wagner have had no interactions with each other with respect to this matter apart
5 from Mr. Clark disclosing that he represented the plaintiffs in *Grabek*. Ms. Wagner
6 also declares that she has received no confidential information from Mr. Clark. Ms.
7 Wagner works in the Boston office of her firm and is thus physically and
8 geographically isolated from Mr. Clark in the St. Louis office. The Court is satisfied
9 that the screening procedures are effective.[4] Plaintiffs contend that Mr. Clark may
10 have already disclosed confidential information to members of the firm before Ms.
11 Wagner was retained and before construction of an ethical wall. Based on the parties'
12 filings, however, the ethical wall was erected at the outset of Ms. Wagner's
13 involvement in this case.

14     The Court therefore declines to impute Mr. Clark's conflict to Ms. Wagner.

### C. Mr. Witz's Relationship with Ms. Wagner's Firm Does Not Create a Conflict of Interest.

17     The Court similarly rejects Plaintiffs' argument that Ms. Wagner's testimony as
18 to whether Mr. Witz is qualified to offer an expert opinion in this case creates a
19 conflict. "As a general rule, courts do not disqualify an attorney on the grounds of
20 conflict of interest unless the former client moves for disqualification." *Kasza v.*
21 *Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998). Plaintiffs therefore lack standing to

---

[4] At oral argument, Plaintiffs' counsel emphasized the fact that they were not informed about the potential conflict. However, under the former rules, "notice is not an element required in order for an ethical wall to rebut the presumption of imputed knowledge and prevent disqualification of the law firm." *Kirk*, 183 Cal. App. 4th at 813. "Any ethical wall must ultimately be judged by whether it is sufficient to meet its purpose: satisfying the trial court that the tainted attorney has not had and will not have any involvement with, or communication concerning, the litigation that would support a reasonable inference that confidential information was or will be disclosed." *Id.* at 814.

10.

raise the alleged conflict of interest. Even assuming that Plaintiffs have standing, there is no conflict because "Mr. Witz is not—and has never been—a client of Ms. Wagner's firm; rather, Mr. Witz's company is the client." (Opp'n at 18; *see also* Wagner Depo. 103:17-19.) Moreover, Mr. Clark, not Ms. Wagner, represented Mr. Witz's company, and Mr. Clark has been screened from this litigation. At oral argument, defense counsel confirmed that Ms. Wagner does not have access to any information about Mr. Witz's corporation based on her firm's representation.

Thus, Plaintiffs again fail to demonstrate that disqualification of Ms. Wagner is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion.

Dated: July 23, 2019

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

11.