Nancy G. Ross*
 nross@mayerbrown.com
Brian D. Netter*
 bnetter@mayerbrown.com
Samuel P. Myler*
 smyler@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone:   (312) 782-0600
Facsimile:    (312) 701-7711
*Admitted *Pro Hac Vice*

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFTON W. MARSHALL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN CORPORATION, et al.,<br><br>Defendants. | Case No. 16-CV-6794 AB (JCx)<br><br>**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Hon. André Birotte Jr.<br><br>Trial Date: October 15, 2019 |

# **<u>TABLE OF CONTENTS</u>**

**Page**

I.     SUMMARY OF PLAINTIFFS' REMAINING CLAIMS (L.R. 16-4.1(A)) ........................................................................................... 1

II.    ELEMENTS OF PLAINTIFFS' REMAINING CLAIMS (L.R. 16-4.1(B)) ........................................................................................... 1

III.   BRIEF DESCRIPTION OF THE KEY EVIDENCE IN OPPOSITION TO PLAINTIFFS' CLAIMS (L.R. 16-4.1(C) ........................... 4

IV.    DEFENDANTS' AFFIRMATIVE DEFENSES (L.R. 16-4.1(D)) .............. 11

V.     ELEMENTS OF DEFENDANTS' AFFIRMATIVE DEFENSES (L.R. 16-4.1(E)) ..................................................................... 11

VI.    BRIEF DESCRIPTION OF THE KEY EVIDENCE IN SUPPORT OF DEFENDANTS' AFFIRMATIVE DEFENSES (L.R. 16-4.1(F) ......... 12

VII.   ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1(H)) .................... 13

VIII.  ANTICIPATED ISSUES OF LAW (L.R 16-4.1(I)) ................................. 13

IX.    BIFURCATION OF ISSUES (L.R. 16-4.3) ............................................. 17

X.     JURY TRIAL (L.R. 16-4.4) ...................................................................... 18

XI.    ATTORNEYS' FEES JURY TRIAL (L.R. 16-4.5) .................................. 18

i

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*Acosta v. City Nat'l Corp.*,
   922 F.3d 880 (9th Cir. 2019) ................................................................. 9

6

7

*Acosta v. Pac. Enters.*,
   950 F.2d 611 (9th Cir. 1991) ................................................................. 3

8

*Baird v. BlackRock Institutional Trust Company, N.A.*,
   322 F. Supp. 3d 966 (N.D. Cal. 2018) ................................................. 8

9

10

*Bowles v. Reade*,
   198 F.3d 752 (9th Cir. 1999) ............................................................... 17

11

12

*Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*,
   259 F.3d 1036 (9th Cir. 2001) ............................................................. 17

13

14

*Carter v. San Pasqual Fiduciary Trust Co.*,
   2016 WL 6803768 (C.D. Cal. Apr. 18, 2016) ..................................... 2

15

16

*In re Computer Scis. Corp. ERISA Litig.*,
   635 F. Supp. 2d 1128 (C.D. Cal. 2009) ........................................... 2, 3

17

18

*Fink v. Nat'l Sav. & Tr. Co.*,
   772 F.2d 951 (D.C. Cir. 1985) (Scalia, J. concurring) ...................... 15

19

*Fite v. Merrill Lynch & Co.*,
   2010 WL 11556808 (C.D. Cal. Nov. 2, 2010) .................................... 2

20

21

22

*Forsyth v. Humana, Inc.*,
   827 F. Supp. 1498 (D. Nev. 1993), *aff'd in part, rev'd in part*, 114
   F.3d 1467 (9th Cir. 1997) ................................................................... 16

23

24

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ............................................................................. 3

25

26

*Kanawi v. Bechtel Corp.*,
   590 F. Supp. 3d 1213 (N.D. Cal. 2008) ....................................... 11, 15

27

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ........................................................................... 14

28

ii

*Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit*
  *Plan,*
    136 S. Ct. 651 (2016) .................................................................................. 3

*Patelco Credit Union v. Sahni,*
    262 F.3d 897 (9th Cir. 2001) ................................................................ 3, 17

*Peabody v. Davis,*
    636 F.3d 368 (7th Cir. 2011) ...................................................................... 7

*Pegram v. Herdrich,*
    530 U.S. 211 (2000) ..........................................................................*passim*

*Peralta v. Hispanic Bus., Inc.,*
    419 F.3d 1064 (9th Cir. 2005) .................................................................... 3

*Perez v. Silva,*
    2015 WL 6957464 (N.D. Cal. Nov. 11, 2015) ......................................... 16

*Sulyma v. Intel Corp. Inv. Pol'y Cmte.,*
    909 F.3d 1069 (9th Cir. 2018), *cert. granted,* 2019 WL 936242
    (U.S. June 10, 2019) ........................................................................... 11, 12

*Tibble v. Edison Int'l,*
    2010 WL 2757153 (C.D. Cal. 2010) ................................................2, 3, 15, 16

*Tibble v. Edison Int'l,*
    843 F.3d 1187 (9th Cir. 2016) .................................................................. 16

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996) .................................................................................. 17

*White v. Chevron Corp.,*
    2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd,* 2018 WL
    5919670 (9th Cir. Nov. 13, 2018) ........................................................... 2, 3

*Wright v. Oregon Metallurgical Corp.,*
    360 F.3d 1090 (9th Cir. 2004) .................................................................... 2

**Statutes**

28 U.S.C. § 1961 ............................................................................................ 16

29 U.S.C. § 1002(21)(A) ........................................................................ 13, 14

iii

29 U.S.C. § 1103(c)(1) ................................................................ 4

29 U.S.C. § 1106(a) .................................................................... 4

29 U.S.C. § 1132(c)(3) ................................................................ 4

29 U.S.C. § 1104(a)(1) ................................................... 2, 3, 14, 15

29 U.S.C. § 1106(a) ......................................................... 1, 3, 11

29 U.S.C. § 1106(b) ........................................................ 1, 3, 9, 15

29 U.S.C. § 1108 ........................................................................ 11-13

29 U.S.C. § 1109(a) ....................................................................... 16

29 U.S.C. § 1113(2) .................................................................. 11, 16

29 U.S.C. § 1132(2) ......................................................................... 12

29 U.S.C. § 1132(a)(3) ..................................................................... 17

**Other Authorities**

29 C.F.R. § 2550.408b-2 .......................................................... 8, 11

29 C.F.R. § 2550.408c-2 .......................................................... 9, 11

Pursuant to Local Rule 16-4, defendants Northrop Grumman Corp. et al. ("Northrop") respectfully submit this Memorandum of Contentions of Fact and Law:

## I.   Summary of Plaintiffs' Remaining Claims (L.R. 16-4.1(a))

Claim 1: Defendants breached their duties of loyalty and prudence by causing the Northrop Grumman Savings Plan (the "Plan") to pay improper and unreasonable administrative fees to Northrop.

Claim 2: By permitting Northrop to be reimbursed for services rendered to the Plan, Defendants caused the Plan to engage in transactions prohibited by 29 U.S.C. § 1106(a)(1)(A), (C), and (D).

Claim 3: By permitting Northrop to be reimbursed for services rendered to the Plan, Defendants caused the Plan to engage in transactions prohibited by 29 U.S.C. § 1106(b)(1) or (2).

Claim 4: Defendants breached their duty of prudence by continuing to utilize an active management strategy for the Plan's Emerging Markets Equity Fund until November 2014.

Claim 5: To the extent Northrop Grumman Corp. received assets that it knew or should have known resulted from prohibited transactions, it is required to disgorge those proceeds.

## II.   Elements of Plaintiffs' Remaining Claims (L.R. 16-4.1(b))

### Claim 1
### (Breach of Fiduciary Duty—Reimbursements to Northrop)

(1) the defendant(s) acted in a fiduciary capacity;

(2) the defendant(s) did not follow the process that an experienced fiduciary would have employed (prudence) or took actions motivated by a desire to serve the interests of themselves or others, rather than of plan participants (loyalty);

(3) the failure to follow a prudent or loyal process caused a loss to the plan.

1

*See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Tibble v. Edison Int'l*, 2010 WL 2757153, at *24 n.19 (C.D. Cal. 2010); *White v. Chevron Corp.*, 2017 WL 2352137, at *23 (N.D. Cal. May 31, 2017), *aff'd*, 2018 WL 5919670 (9th Cir. Nov. 13, 2018); *In re Computer Scis. Corp. ERISA Litig.*, 635 F. Supp. 2d 1128, 1139 (C.D. Cal. 2009); 29 U.S.C. § 1104(a)(1).

<u>Claim 2</u>
<u>(Party-in-Interest Prohibited Transaction—Reimbursements to Northrop)</u>

(1) the defendant(s) acted in a fiduciary capacity;

(2) the defendant(s) caused the plan to engage in a transaction;

(3) the defendant(s) knew or should have known that the transaction constituted a direct or indirect:

    a.  sale, exchange, or leasing of property between the plan and a party in interest;

    b.  furnishing of goods, services, or facilities between the plan and a party in interest; or

    c.  transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.

*See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004); *Carter v. San Pasqual Fiduciary Trust Co.*, 2016 WL 6803768, at *5-6 (C.D. Cal. Apr. 18, 2016); *Fite v. Merrill Lynch & Co.*, 2010 WL 11556808, at *6 (C.D. Cal. Nov. 2, 2010); 29 U.S.C. § 1106(a)(1).

<u>Claim 3</u>
<u>(Self-Dealing Prohibited Transaction—Reimbursements to Northrop)</u>

(1) the defendant(s) acted in a fiduciary capacity;

(2) the defendant(s) caused the plan to engage in a transaction;

(3) the transaction involved plan assets;

(4) the defendant(s) used the plan assets in a manner that benefited them personally.

*See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004);

2

*Patelco Credit Union v. Sahni*, 262 F.3d 897, 901-03 (9th Cir. 2001); *Acosta v. Pac. Enters.*, 950 F.2d 611, 620 (9th Cir. 1991); 29 U.S.C. § 1106(b).

Claim 4
(Breach of Fiduciary Duty—Emerging Markets)

(1) the defendant(s) acted in a fiduciary capacity;

(2) the defendant(s) did not follow the process that an experienced fiduciary would have employed;

(3) the failure to follow a prudent process caused a loss to the plan.

*See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Tibble v. Edison Int'l*, 2010 WL 2757153, at \*24 n.19 (C.D. Cal. 2010); *White v. Chevron Corp.*, 2017 WL 2352137, at \*23 (N.D. Cal. May 31, 2017), *aff'd*, 2018 WL 5919670 (9th Cir. Nov. 13, 2018); *In re Computer Scis. Corp. ERISA Litig.*, 635 F. Supp. 2d 1128, 1139 (C.D. Cal. 2009); 29 U.S.C. § 1104(a)(1).

Claim 5
(Disgorgement—Reimbursements to Northrop)

(1)   Northrop received Plan funds as a result of a prohibited transaction under Section 1106(a) or wrongful diversion of Plan assets in violation of Section 1103(c)(1);

(1)   Northrop had actual or constructive knowledge that it received funds as a result of a prohibited transaction under Section 1106(a) or wrongful diversion of Plan assets in violation of Section 1103(c)(1);

(2)   Specific property in Northrop's possession or profits Northrop derived from that specific property can be traced to the funds Northrop received as a result of a prohibited transaction under Section 1106(a) or wrongful diversion of Plan assets in violation of Section 1103(c)(1).

*See Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 658 (2016); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002); *Harris Trust & Sav. Bank v. Salomon Smith Barney*, Inc., 530 U.S. 238, 250-51 (2000); *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064,

3

1075 (9th Cir. 2005); 29 U.S.C. §§ 1103(c)(1), 1106(a), 1132(c)(3).

**III.   Brief Description of the Key Evidence in Opposition to Plaintiffs' Claims (L.R. 16-4.1(c))**

Claim 1
(Breach of Fiduciary Duty—Reimbursements to Northrop)

ERISA departed from common-law norms by permitting fiduciaries to "wear different hats"—serving, at some times, in a corporate capacity; and, at other times, in a fiduciary capacity—so long as they "wear the[ir] fiduciary hat when making fiduciary decisions." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Plaintiffs repeatedly rely on common-law analogies that the Supreme Court has rejected as "problematic" in their challenge to Northrop's provision of services to the Plan.

Throughout this litigation (and the earlier case raising a similar issue), Plaintiffs' papers have implied that it is *never* permissible for an ERISA-governed retirement plan to retain the plan sponsor to provide necessary services and to reimburse the sponsor for the fair value of those services.  But the law does not support such an absolute position.

Rather, for purposes of their claim for breach of the fiduciary duty of prudence, Plaintiffs must be able to demonstrate that a reasonable individual familiar with such matters could not have followed Defendants' processes for evaluating the reimbursements to Northrop and could not have reimbursed Northrop for the same amounts.  Plaintiffs will not be able to prove that claim.

As a factual matter, the Administrative and Investment Committee were appointed to oversee the Plan.  The Committees relied primarily on outside vendors to perform the myriad administrative tasks necessary to ensure the efficient operation of the Plan.  But certain administrative tasks either could not be outsourced or could not be outsourced efficiently. To ensure that those tasks were completed for the benefit of Plan participants, the Committees entered into an

4

1   arrangement with Northrop Grumman Corp.

2          The evidence will show that Northrop personnel performed tasks that

3   benefited Plan participants and that the Plan paid a fair amount commensurate with

4   those services.  Indeed, the arrangement between the Plan and Northrop makes

5   good sense for employers with plans as large and complex as Northrop's.

6          Moreover, the evidence will show that Defendants developed and

7   implemented a comprehensive process for vetting disbursements from the Plan.

8   Defendants (1) had a robust training process to instruct fiduciaries and Northrop

9   employees as to their respective responsibilities; (2) formulated and approved

10  budgets for anticipated reimbursements; (3) employed a timekeeping, invoicing,

11  and expense reimbursement process to keep tabs on every request for

12  reimbursement; (4) implemented compensation benchmarking studies to ensure

13  that the Plan paid only the reasonable amount for employees' services; and (5)

14  relied on internal performance reviews and goal-setting programs to ensure that the

15  Plan was receiving top-quality service.

16         Because Plaintiffs will be unable to show that the processes employed by

17  Defendants were inappropriate or unreasonable, they will likely contend that

18  Defendants were bound by a set of outdated procedures from a two-decade-old

19  written policy.  But the evidence will show that Defendants were free to formulate

20  any effective review process, were not tied to a particular paper-laden process from

21  the past, and updated the 1999 model with a more effective oversight regime that

22  served the interests of Plan participants.

23         Plaintiffs cannot prevail on their breach-of-loyalty claim either.  Plaintiffs

24  would need to be able to show "actual disloyal conduct" in which a fiduciary acted

25  to advance Northrop's interests instead of the Plan's.  But their case is based

26  entirely on the inference that employees who wear multiple hats will necessarily

27  favor Northrop's corporate interests even when acting in a fiduciary capacity.  That

28  assumption is prohibited by law and is unsupported by the facts.

5

1    The evidence will show that Defendants did not engage in any "actual

2    disloyal conduct" in connection with their decision to reimburse Northrop for the

3    cost of the administrative services Northrop provided. As an initial matter, the

4    governing plan documents, Board of Trustee Resolutions, and delegation materials

5    distinguished between Northrop and the Committees.  This distinction ensured that

6    while the Committee members were Northrop employees, the Committee was a

7    distinct entity, operating in the interests of Plan participants. None of the

8    administrative payments at issue were paid to or otherwise inured to the direct (or

9    even incidental) benefit of Defendants.  Indeed, as to the individual Defendants,

10   Plaintiffs have failed even to adduce evidence of fiduciary status, because the

11   individuals lacked independent authority to exercise discretion over Plan

12   administration.

13   With respect to the Committees, retaining and reimbursing Northrop for the

14   cost of the services Northrop provided was in participants' best interests and

15   provided Defendants no tangible benefit. The services provided by Northrop were

16   reimbursed at cost and without any profit or markup for Northrop.  Northrop's lack

17   of profit is irreconcilable with Plaintiffs' contention that the reimbursement

18   arrangement benefited Northrop at the expense of Plan participants.

19   Even if Plaintiffs were to prove a breach of fiduciary duty, they would not be

20   entitled to the damages they seek.  As Plaintiffs acknowledge, Defendants can only

21   be held liable for the amount that Northrop was reimbursed in excess of what a

22   reasonable fee would have been for the services provided.  But Plaintiffs grossly

23   underestimate the number of staffers required to perform the services rendered by

24   Northrop and the salaries to which they were entitled.[1]

25   _____

[1] Plaintiffs also conflate reimbursements to Northrop for time worked by Northrop
26   Grumman Corp. employees and reimbursements for expenses paid to other
     vendors.  Defendants will show that Northrop was properly reimbursed for
27   necessary travel, lodging, and other miscellaneous expenses (*e.g.*, shipping costs),
     which were indisputably incurred by Northrop as evidenced by the receipts
28   accompanying the invoices.  Plaintiffs present no evidence that these expenses

In addition to Plaintiffs' flawed calculation of what a "reasonable" fee would have been, Plaintiffs' damages calculation fails to account for damages offsets to which Northrop is entitled. In particular, in January 2017, Northrop returned $4.2 million of reimbursements to the Plan as part of a settlement with the U.S. Department of Labor.  Northrop obviously is not required to return any reimbursements *twice*, because that would result in a windfall.

Finally, to the extent there are any damages after accounting for both (a) what a reasonable fee would have been and (b) the $4.2 million settlement offset, Plaintiffs' demand is further exaggerated by their decision to use the S&P 500 index as a measure of interest.  When bringing damages forward to account for investment returns, the appropriate interest rate is one that puts the plan in the position it would have been in had there been no breach. *See Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011). In the event that Plaintiffs prevail in establishing liability on any of their claims related to the Plan's payments to Northrop, Defendants will present evidence that the allegedly improper payments were paid out of all of the Plan's investments on a pro rata basis, that had these payments never been paid they would have remained invested in the Plan's various investment options, and that over the relevant time period the performance of these investments varied widely and typically underperformed the stocks-only S&P 500. Thus, the performance of the Plan's investments as a whole, not the performance of the S&P 500, is the appropriate basis upon which to calculate any interest on the damages attributable to the alleged breach.

Claim 2
(Party-in-Interest Prohibited Transaction—Reimbursements to Northrop)

The factual defenses to Plaintiffs' party-in-interest prohibited transaction claim largely parallel the responses to the fiduciary-breach claim.

were excessive or unreasonable, nor do they present any evidence that the expenses were incurred providing services that were not necessary to administer the Plan.

7

Department of Labor regulations recognize that where a plan sponsor, such as Northrop, provides administrative services to its employees and plan participants, the plan sponsor is entitled to reasonable compensation in return.  Defendants set into place a robust set of procedures, summarized above, to ensure that Northrop would be reimbursed only for the reasonable costs of necessary services.

Under the applicable regulations, a service is deemed "necessary" if it is "appropriate and helpful to the plan . . . in carrying out the purposes for which the plan is established or maintained." 29 C.F.R. § 2550.408b-2(b).  As discussed above, Defendants will describe in detail the services Northrop provided to the Plan over the relevant time period and will explain how those services furthered the Plan's objective of promoting retirement savings, allowing participants to save for retirement on a tax-deferred basis, and providing participants investment options appropriate for each participant's needs.

Moreover, the compensation Northrop received for the services it provided was reasonable.  As an initial matter, although the governing regulations entitling Northrop to "reasonable" compensation allow Northrop to include a mark-up or profit margin in the fees it charged the Plan, all of the services Northrop provided over the time period at issue were invoiced to the Savings Plan *at cost*. In addition, as discussed above, Northrop benchmarked trust-chargeable employees' salaries regularly against market data maintained by its corporate compensation department, and thereby ensured that all salary and fringe benefit reimbursements were reasonable. Finally, Defendants' expert will testify that the amounts charged by Northrop to the Plan were reasonable in light of the amount and type of work performed by Northrop's employees.

<u>Claim 3</u>
(Self-Dealing Prohibited Transaction—Reimbursements to Northrop)

29 U.S.C. § 1106(b) generally prohibits plan fiduciaries from engaging in so-called self-dealing, which it defines as "deal[ing] with the assets of the plan in

8

[their] own . . . account[s]," 29 U.S.C. § 1106(b)(1), or "receiv[ing] any consideration for [their] own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan," 29 U.S.C. § 1106(b)(3). Plaintiffs' self-dealing claims necessarily fail because they cannot present any evidence that any fiduciary personally benefited from or received compensation related to the administrative services Northrop provided.  The only defendant that received any compensation as a result of the transactions at issue is Northrop, and as this court has already held, Northrop was not a fiduciary. *See* Dkt. 146 at 6-8 (granting motion to dismiss Claims 1-5 against Northrop on the ground that Northrop was not acting as a fiduciary with respect to the alleged breaches).

Even if Defendants were found to have engaged in self-dealing, Plaintiffs are not entitled to recover amounts that the Plan would have paid anyway.  *See Acosta v. City Nat'l Corp.*, 922 F.3d 880, 887, 891 (9th Cir. 2019).  So Plaintiffs cannot, in any event, recover for "***direct expenses*** properly and actually incurred" in the performance of such services. 29 C.F.R. § 2550.408c-2(b)(2) (emphasis added).

Claim 4<br>(Breach of Fiduciary Duty—Emerging Markets)

Plaintiffs will be unable to prove a breach of fiduciary duty because Defendants' actions resulted from thoughtful and in-depth analyses that comport with—indeed, surpass—fiduciary norms.

Starting years before the class period, Defendants had processes in place to evaluate whether particular asset classes should be offered through active or passive management styles.  During a periodic review in 2010, Defendants identified "[h]istoric underperformance in [passive] emerging markets due to: higher trading costs, less effective derivatives, high index turnover, restrictive foreign investor policies, less liquid names, significant gap risk, [and] participant turnover."  Based on those analytical findings, Defendants concluded that, compared to other asset classes, "[p]assive management is less effective in the EM

9

1    space with most managers chronically underperforming the index over most time

2    periods."  As a result, when certain other funds were shifted to a 100% passive

3    strategy, Defendants established a 50%/50% active/passive split for emerging

4    markets.   By tailoring the analysis to the specific circumstances that affect

5    emerging markets funds, Defendants acted precisely how fiduciaries should act.

6         Plaintiffs appear to be committed to challenging whether Defendants'

7    analysis of emerging markets funds was performed by the right fiduciaries—

8    distinguishing between the oversight of the Investment Committee and the analysis

9    of Northrop's Investment & Trust Administration department.  These subgroups of

10   fiduciaries played appropriate roles in formulating the Plan's emerging-markets

11   policy.   In fact, the fiduciaries played the same roles vis-a-vis the Emerging

12   Markets Equity Fund as they did with respect to the asset classes, which Plaintiffs

13   hail as examples of sound process.  In any event, in light of the analytical results,

14   Plaintiffs cannot prove that a different process would have yielded a different

15   decision.  Indeed, given the prevalence of active management within the emerging

16   markets space, a reasonable fiduciary performing any reasonable process surely

17   could (and likely would) have reached the same conclusion as Defendants.

18        Even if there were some legal duty to offer an emerging markets fund with

19   100% passive management, Plaintiffs' assertion of damages is inflated.  Plaintiffs'

20   computations are based on quarterly data, when more precise monthly data were

21   available and disregard costs that Plaintiffs would have borne in an immediate

22   transition to a different fund manager.

23                          Claim 5
                (Disgorgement—Reimbursements to Northrop)

24

25        Plaintiffs' claim for disgorgement is largely derivative of their other claims

     related to reimbursements to Northrop.   The facts that support Defendants'
26
     defenses to those claims apply equally here.  Moreover, Plaintiffs lack evidence to
27
     trace the specific funds for which they seek disgorgement, which is a necessary
28

                                    10

1   element of an equitable disgorgement claim.

2   **IV.   Defendants' Affirmative Defenses (L.R. 16-4.1(d))**

3       <u>Affirmative Defense 1</u>: Payments to Northrop did not constitute prohibited

4   transactions under 29 U.S.C. § 1106(a) because they qualify for the reasonable and

5   necessary exemption under 29 U.S.C. § 1108(b)(2).

6       <u>Affirmative Defense 2</u>:  Plaintiffs' claims are time-barred under 29 U.S.C.

7   § 1113(2) because they had actual knowledge of the facts underlying their claims

8   more than three years before they filed their complaint.

9   **V.    Elements of Defendants' Affirmative Defenses (L.R. 16-4.1(e))**

10                              <u>Affirmative Defense 1</u>
                    <u>(Reasonable and Necessary—Reimbursements to Northrop)</u>

11
12      (1) the expenses paid were necessary for the administration of the Plan;

        (2) the expenses paid to Northrop were reasonable.
13
14      *See Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D. Cal. 2008);

15  29 U.S.C. § 1108(b)(2); 29 C.F.R. §§ 2550.408b-2, 2550.408c-2.

16                              <u>Affirmative Defense 2</u>
                           <u>(Expiration of Limitations Period)</u>

17      (1)    Plaintiffs had actual knowledge of the nature of the alleged breach of

18  fiduciary duty or prohibited transaction;

19      (2)    More than three years elapsed between the date on which Plaintiffs

20  acquired actual knowledge and the date on which Plaintiffs filed their complaint.

21      *See Sulyma v. Intel Corp. Inv. Pol'y Cmte.*, 909 F.3d 1069 (9th Cir. 2018),

22  *cert. granted*, 2019 WL 936242 (U.S. June 10, 2019) (No. 18-1116);[2] 29 U.S.C.

23  § 1113(2).

24

25

26  _____
    [2] *Sulyma* binds this Court until the Supreme Court issues its decision in this case.
27  By citing *Sulyma* for the elements of a limitations claim, Defendants do not
    acquiesce to the holdings of *Sulyma*; to the contrary, Defendants believe that
28  *Sulyma* was wrongly decided.

## VI.   Brief Description of the Key Evidence in Support of Defendants' Affirmative Defenses (L.R. 16-4.1(f))

Affirmative Defense 1
(Reasonable and Necessary—Reimbursements to Northrop)

Defendants' primary submission is that the exemptions specified in 29 U.S.C. § 1108 do not constitute affirmative defenses but rather identify considerations that Plaintiffs must prove to make out a claim for a prohibited transaction. The exemptions are nevertheless identified as an affirmative defense for avoidance of doubt. The evidence supporting Northrop's eligibility for the prohibited transaction exemption is discussed above, in the sections describing the key evidence opposing Plaintiffs' claims that the reimbursements were excessive.

Affirmative Defense 2
(Expiration of Limitations Period)

To make out a limitations defense, Defendants must establish that Plaintiffs had actual knowledge of the nature of the alleged breaches of fiduciary duty more than three years before filing suit. Plaintiffs' emerging markets claim is based on the theory that it was imprudent for Defendants to maintain an active component to the Emerging Markets Equity Fund when other funds were moved exclusively to passive management. But Plaintiffs were on notice of the fund changes no later than 2011, so their deadline to file suit expired by 2014.

With respect to Plaintiffs' reimbursement claims, the evidence at trial will confirm that Plaintiffs had acknowledge knowledge that some of the Plan's administrative services were provided by Northrop Grumman Corp., more than three years before filing suit. Given the *per se* nature of Plaintiffs' liability theories, that knowledge extinguishes Plaintiffs' reimbursement claims.

## VII.   Anticipated Evidentiary Issues (L.R. 16-4.1(h))

Certain evidentiary issues will be presented to the Court through motions *in limine*, to be filed as required by the applicable pretrial schedule. Beyond those issues, Defendants are not presently aware of other evidentiary issues that will

12

1    require this Court's resolution.

2    **VIII.   Anticipated Issues of Law (L.R. 16-4.1(i))**

3        **A. For each alleged fiduciary breach, the Plaintiffs must show that each
         Defendant was acting in a fiduciary capacity.**

4
         To date, Plaintiffs have rooted their reimbursement claims in allegations that

5    Defendants performed their fiduciary duties under a conflict of interest. But under

6    ERISA, an individual is a fiduciary only to the extent that he is performing

7    specified functions:

8            a person is a fiduciary with respect to a plan to the extent
             (i) he exercises any discretionary authority or
9            discretionary control respecting management of such
             plan or exercises any authority or control respecting
10           management or disposition of its assets, (ii) he renders
             investment advice for a fee or other compensation, direct
11           or indirect, with respect to any moneys or other property
             of such plan, or has any authority or responsibility to do
12           so, or (iii) he has any discretionary authority or
             discretionary responsibility in the administration of such
13           plan.

14   29 U.S.C. § 1002(21)(A).

15       Given that definition, the Supreme Court has instructed that "the threshold

16   question" in "every case charging breach of ERISA fiduciary duty" is "whether

17   that person was acting as a fiduciary (that is, was performing a fiduciary function)

18   when taking the action subject to complaint." *Pegram*, 530 U.S. at 226.

19       Stated differently, ERISA contemplates that individuals who act as

20   fiduciaries may wear two hats, and that they may act as an employer or plan

21   sponsor—with interests potentially adverse to plan participants—except when

22   ERISA's fiduciary duties apply. *Cf.*, *e.g.*, 29 U.S.C. § 1108(c). The obligation on

23   individuals serving as fiduciaries is that they "wear only one [hat] at a time, and

24   wear the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225

25   (citing *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 443-44 (1999)).

26       Plaintiffs thus bear the burden to identify at the threshold which acts form

27   the basis of their case and to establish that, when undertaking those acts, that each

28

                                             13

Defendant was acting as a fiduciary and not engaging in non-fiduciary employer activities. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see* 29 U.S.C. § 1002(21)(A). If the acts that form the basis of Plaintiffs' theory at trial are non-fiduciary activities, then Plaintiffs' claims will fail at the outset. *See*, *e.g.*, *Friend v. Sanwa Bank*, 35 F.3d 466, 469-70 (9th Cir. 1994).

### B. The duty of prudence does not impose *per se* rules.

Plaintiffs may suggest at trial that certain actions—such as the retention of a plan sponsor to render services to the Plan—are necessarily imprudent. ERISA, however, does not impose *per se* rules of prudence. Rather, "Congress never intended section 1104(a)(1) to establish a per se rule of fiduciary conduct . . . and no court has established such a violation." *Friend*, 35 F.3d at 469 (citing *Fentron Indus., Inc. v. Nat'l Shopmen Pension Fund,* 674 F.2d 1300, 1307 (9th Cir. 1982)).

As is discussed *supra*, Plaintiffs must instead prove at trial that the alleged breach was imprudent under the applicable fiduciary standards for fiduciaries faced with similar goals and circumstances.

### C. To make a prima facie case of imprudence, Plaintiffs must prove causation, which requires a showing of objective imprudence.

Even if Plaintiffs could prove at trial that the Defendants did not follow prudent procedures, "a fiduciary's failure to investigate . . . *alone* is not sufficient to show that the decision was not reasonable." *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995) (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992)). Rather, "to show that . . . [a] decision breached a fiduciary's duty to act reasonably . . . a plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan." *Id.*; *accord Fink v. Nat'l Sav. & Tr. Co.*, 772 F.2d 951, 962 (D.C. Cir. 1985) (Scalia, J. concurring). Thus, "[i]n order to establish this causal link, a plaintiff must demonstrate that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident" such that no prudent fiduciary could have

14

1    made the same decision. *Kuper*, 66 F.3d at 1460.

2         **D. Plaintiffs cannot rely on a theory of "secret loyalty" to Northrop to prove their claims under §§ 1104(a), 1106(b)(1)-(2).**

3

4         Plaintiffs will likely suggest at trial that the Defendants operated under a

5    conflict of interest because they were employees of Northrop. This theory of a

6    "secret loyalty," however, is insufficient to prove disloyal conduct under § 1104(a)

7    (*see Friend*, 35 F.3d at 468-69), or self-dealing under § 1106(b)(1)-(2) (*see Brock

8    v. Citizens Bank of Clovis*, 841 F.2d 344, 346-47 (10th Cir. 1988)).

9         As discussed *supra*, "ERISA contemplates that in many circumstances a

10   plan fiduciary will 'wear two hats,' and may have conflicting loyalties." *Tibble*,

11   2010 WL 2757153, at *18 (quoting *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286,

12   295 (5th Cir. 2000)).

13        Thus, claims for disloyalty that are based solely on a conflict of interest are

14   insufficient as a matter of law. *See, e.g. DiFelice v. U.S. Airways, Inc.*, 497 F.3d

15   410, 422 (4th Cir. 2007) ("[T]he bare allegation of a conflict based on the

16   corporate position of the plan fiduciary" was insufficient to make a claim for

17   breach of loyalty). Instead, the Plaintiffs must prove that each Defendant engaged

18   in fiduciary actions that were *motivated* by disloyalty. *Tibble*, 2010 WL 2757153,

19   at *24 n.19 (citations omitted).

20        Courts have likewise rejected this "secret loyalty" theory in claims of self-

21   dealing under § 1106(b)(1)-(2). *See Brock*, 841 F.2d at 346-7; *see also Tibble*, 639

22   F. Supp. 2d at 1095-96. Rather, to prove their claims under § 1106(b)(1), Plaintiffs

23   must show that each Defendant actually "benefit[ed] personally from the

24   transaction." *Kanawi*, 590 F. Supp. 2d at 1228 (citing *Patelco*, 262 F.3d at 901-3).

25   And to prove their § 1106(b)(2) claim, Plaintiffs must show that each Defendant

26   was in fact acting on behalf of a party with adverse interests. *See Tibble*, 639 F.

27   Supp. 2d at 1095-96.

28        **E. The Ninth Circuit has expressly rejected the "continuing violation" theory for the three-year limitations period.**

15

Plaintiffs cannot avoid the three-year limitations bar by alleging that the putative fiduciary breaches were a continuing violation that stretched within three years of their complaint's filing date.  The Ninth Circuit has expressly held that "for claims subject to § 1113(2), the earliest date of actual knowledge of a breach begins the limitations period, even if the breach continues." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1196 (9th Cir. 2016).

### F. Plaintiffs have the burden of proving that they are entitled to a "lost earnings" rate in excess of the rate provided in 28 U.S.C. § 1961.

Damages for actions brought under § 1132(a)(2) seek "to restore the trust beneficiaries to the position they would have occupied but for the breach of trust." *Forsyth v. Humana, Inc.*, 827 F. Supp. 1498, 1508 (D. Nev. 1993), *aff'd in part, rev'd in part*, 114 F.3d 1467 (9th Cir. 1997) (quoting *Donovan v. Bierwirth,* 754 F.2d 1049, 1056 (2d Cir. 1985)); *see also* 29 U.S.C. § 1109(a).  In addition to funds wrongfully paid from Plan assets, Plaintiffs may also ask for lost earnings.

Under Ninth Circuit law, there is a strong presumption in favor of calculating the lost earnings of a plan by using the post-judgment interest rate prescribed by 28 U.S.C. § 1961.  *See Perez v. Silva*, 2015 WL 6957464, at *6 (N.D. Cal. Nov. 11, 2015) (citing *Blankenship v. Liberty Life Assur. Co.*, 486 F.3d 620, 627-28 (9th Cir. 2007)).  Courts should use the "'rate prescribed for post-judgment interest under 28 U.S.C. § 1961 . . . unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.'" *Id.* (quoting *Blankenship*, 486 F.3d at 628).  Plaintiffs bear the burden of proving under substantial evidence that the court should apply a higher rate.  *See id.*

### G. Any damages award must be offset by the value of services provided to the Plans.

Because damages under § 1132(a)(2) seek to put the beneficiaries in the position they would have been in but for the breach of fiduciary duty, Plaintiffs cannot recover for the fair value of services reasonably provided to the Plan or for

16

reimbursements returned to the Plan. *See Patelco*, 262 F.3d at 912 (affirming finding that defendant could not reduce damages with an offset because he had not offered sufficient evidence of the fair value of services provided); *Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*, 259 F.3d 1036, 1046 (9th Cir. 2001) (reversing damages award because district court should have based damages on "the *degree* to which the . . . assets were invested in inverse floaters, not upon the fact that assets were invested in inverse floaters at all").

**H. Plaintiffs cannot double recover.**

Plaintiffs' causes of action ask the Court to restore the Plans to the position where they would have been but for the alleged ERISA violations. Defendants dispute the existence of any violations, but it bears mention that, even if there were violations, Plaintiffs cannot recover more than would be necessary to restore the Plans to the proper position.

For example, Plaintiffs may assert claims under 29 U.S.C. § 1132(a)(3) to obtain other appropriate equitable relief, but that relief is only appropriate if Plaintiffs are unable to obtain relief under § 1132(a)(2). *See Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996); *Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999). Thus, if the Court grants relief under § 1132(a)(2), then relief under § 1132(a)(3) would be unavailable to Plaintiffs.

In similar fashion, Plaintiffs cannot recover, for a second time, those funds that have already been returned to the Plan.

**IX.  Bifurcation of Issues (L.R. 16-4.3)**

Defendants do not ask that the court bifurcate any of the issues for trial.

**X.  Jury Trial (L.R. 16-4.4)**

This case will proceed as a bench trial. *See* Dkt. 146.

**XI.  Attorneys' Fees (L.R. 16-4.5)**

Plaintiffs have indicated that, in the event they prevail at trial, they will ask

17

for attorneys' fees.

Dated:  August 23, 2019                    MAYER BROWN LLP
                                           Nancy G. Ross
                                           Brian D. Netter
                                           Samuel P. Myler


                                           By: */s/ Nancy G. Ross*
                                                  Nancy G. Ross

                                           *Attorneys for Defendants*

18