JEROME J. SCHLICHTER (SBN 054513)
jschlichter@uselaws.com
NELSON G. WOLFF (admitted *pro hac vice*)
nwolff@uselaws.com
MICHAEL A. WOLFF (admitted *pro hac vice*)
mwolff@uselaws.com
KURT C. STRUCKHOFF (admitted *pro hac vice*)
kstruckhoff@uselaws.com
SCHLICHTER, BOGARD & DENTON LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934
*Counsel for Plaintiffs*

WILLIAM A. WHITE (SBN 121681)
wwhite@hillfarrer.com
HILL, FARRER & BURRILL LLP
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Facsimile: (213) 620-4840
*Local Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFTON W. MARSHALL *et al.*,<br><br>                    *Plaintiffs*,<br><br> v.<br><br>NORTHROP GRUMMAN<br>CORPORATION, *et al.*,<br><br>*Defendants* | Case No. 16-CV-6794 AB (JCx)<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW**<br><br>Hon. André Birotte Jr.<br><br>Final Pre-Trial Date:<br>October 4, 2019, at 11:00 a.m.<br><br>Trial Date:<br>October 15, 2019, at 8:30 a.m. |

# Table of Contents

LR 16-4.1(a) Plaintiffs' claims ................................................................................ 1

LR 16-4.1(b) Elements of Plaintiffs' claims ....................................................... 2

LR 16-4.1(c) Plaintiffs contentions of fact and law for each claim ......................... 5

LR 16-4.1(d) Defendants' affirmative defenses ...................................................... 14

LR 16-4.1(e) Elements of Defendants' affirmative defenses ................................ 14

LR 16-4.1(f) Key evidence relied on in opposition to each affirmative

      defense .............................................................................................. 15

LR 16-4.1(h) Identification of anticipated evidentiary issues ................................ 16

LR 16-4.1(i) Identification of issues of law ......................................................... 17

LR 16-4.5 Plaintiffs' claim to attorney fees ......................................................... 19

1

**LR 16-4.1(a) Plaintiffs' claims**

2   On August 14, 2019 (Doc. 264), the Court entered summary judgment in favor

3   of Defendants on the claims of violation of 29 U.S.C. § 1104(a)(1)(A) asserted in

4   Counts II and III of the Second Amended Complaint (Doc. 132) and on the claims

5   asserted in Counts II, VI, and VII of the Second Amended Complaint. In light of

6   that judgment, and reserving their right to appeal, Plaintiffs intend to pursue the

7   following claims at trial:

8   **Claim 1**: By causing the Northrop Grumman Savings Plan ("Plan") to engage

9   Northrop Grumman Corp. to provide unnecessary administrative and investment-

10  related services and/or to pay Northrop unreasonable compensation for putative

11  services, without determining without conflict of interest that those services were

12  necessary to the administration of the Plan and that hiring Northrop to provide

13  those services was in the interest of participants and the compensation paid was

14  reasonable, Defendants breached their duty of loyalty and/or prudence under 29

15  U.S.C. § 1104(a)(1)(A) and (B). (Count I)

16  **Claim 2**: By causing the Plan to engage Northrop to provide services to the

17  Plan and to deliver Plan assets to Northrop, Defendants committed prohibited

18  transactions under 29 U.S.C. § 1106(a)(1)(A), (C) and/or (D). (Count IV)

19  **Claim 3**: By causing the Plan to use Northrop to provide putative services to

20  the Plan and causing the Plan to deliver Plan assets to Northrop, Defendants

21  committed prohibited transactions under 29 U.S.C. § 1106(b)(1) and/or (2). (Count

22  V)

23  **Claim 4**: By causing the Plan to continue to engage the services of active

24  managers in the Plan's Emerging Markets Equity Fund, Defendants breached their

25  duty of prudence under 29 U.S.C. § 1104(a)(1)(B). (Count III)

26  **Claim 5**: By receiving Plan assets under circumstances which it knew or should

27  have known constituted prohibited transactions as shown in Claims 2–3 and/or the

28  inurement of plan assets to an employer in violation of 29 U.S.C. § 1103(c)(1),

Northrop is subject to disgorgement of those Plan assets and any profits earned on them under 29 U.S.C. § 1132(a)(3). (Count VIII)

**LR 16-4.1(b) Elements of Plaintiffs' claims**

The elements required to establish Plaintiffs' claims are:

**Claim 1**:

1. Each Defendant was a fiduciary of the Plan.

2. Each Defendant caused the Plan to have Northrop provide administrative and investment-related services to the Plan and caused the Plan to deliver Plan assets to Northrop.

3. Each Defendant failed to discharge his duties with respect to the Plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; or (ii) defraying reasonable expenses of administering the plan; or (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C. § 1104(a)(1).

4. If not liable for a direct breach each Defendant (1) participated knowingly in, or knowingly undertook to conceal, an act or omission of another fiduciary, knowing such act or omission was a breach; (2) by failure to comply with § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, enabled such other fiduciary to commit a breach; or (3) had knowledge of a breach by such other fiduciary, unless he made reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

5. Such breach caused a loss to the Plan or any Defendant profited from the use of Plan assets of the Plan. 29 U.S.C. § 1109(a).

**Claim 2:**

1. Each Defendant was a fiduciary of the Plan.

2. Each Defendant caused the Plan to have Northrop provide administrative and

investment-related services to the Plan and caused the Plan to deliver Plan assets to Northrop.

3. Each Defendant knew or should have known that doing so constituted a direct or indirect (A) exchange of property between the Plan and a party in interest, (C) furnishing of goods, services, or facilities between the plan and a party in interest, or (D) transfer to, or use by or for the benefit of a party in interest, of any Plan asset. 29 U.S.C. § 1106(a)(1).

4. If not liable for a direct breach each Defendant (1) participated knowingly in, or knowingly undertook to conceal, an act or omission of another fiduciary, knowing such act or omission was a prohibited transaction; (2) by failure to comply with § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, enabled such other fiduciary to commit a prohibited transaction; or (3) had knowledge of a prohibited transaction by such other fiduciary, unless he made reasonable efforts under the circumstances to remedy the prohibited transaction. 29 U.S.C. § 1105(a).

**Claim 3:**

1. Each Defendant was a fiduciary of the Plan.

2. Each Defendant caused the Plan to have Northrop provide administrative and investment-related services to the Plan and caused the Plan to deliver Plan assets to Northrop.

3. Each Defendant (1) dealt with the assets of the plan in his own interest or for his own account or (2) in his individual or in any other capacity acted in a transaction involving the plan on behalf of Northrop, whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. 29 U.S.C. § 1106(b).

4. If not liable for a direct breach each Defendant (1) participated knowingly in, or knowingly undertook to conceal, an act or omission of another fiduciary, knowing such act or omission was a prohibited transaction; (2) by failure to comply

with § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, enabled such other fiduciary to commit a prohibited transaction; or (3) had knowledge of a prohibited transaction by such other fiduciary, unless he made reasonable efforts under the circumstances to remedy the prohibited transaction. 29 U.S.C. § 1105(a).

**Claim 4**:

1. Each Defendant was a fiduciary of the Plan.

2. Each Defendant caused the Plan to continue to engage the services of active managers in the Plan's Emerging Markets Equity Fund.

3. Each Defendant failed to discharge his duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C. § 1104(a)(1)(B).

4. If not liable for a direct breach each Defendant (1) participated knowingly in, or knowingly undertook to conceal, an act or omission of another fiduciary, knowing such act or omission was a breach; (2) by failure to comply with § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, enabled such other fiduciary to commit a breach; or (3) had knowledge of a breach by such other fiduciary, unless he made reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

5. Such breach caused a loss to the Plan. 29 U.S.C. § 1109(a).

**Claim 5**:

1. Defendant Northrop received Plan assets.

2. Defendant Northrop knew or reasonably should have known that its receipt of Plan assets was the result of prohibited transactions under 29 U.S.C. § 1106 or constituted the inurement of Plan assets to an employer under 29 U.S.C. § 1103(c)(1).

**LR 16-4.1(c) Plaintiffs contentions of fact and law for each claim**

Plaintiffs' contentions of fact and law for each of the claims are:

**Claim 1**:

It is undisputed that the Plan is governed by ERISA. Defendant Administrative Committee is named the fiduciary of the Plan with exclusive authority to administer the Plan and control Plan assets. 29 U.S.C. § 1102(a); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 370–71 (4th Cir. 2014). Defendant Investment Committee is named the fiduciary of the Plan with authority over investment matters. 29 U.S.C. § 1102(a). The members of each Committee are specifically identified in the Plan document as named fiduciaries. Plan § 16.01, § 17.05.

The duties of an ERISA fiduciary "are the highest known to the law." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (*en banc*, quoting *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996)). Fiduciaries must "act with complete and undivided loyalty to the beneficiaries of the trust, and with an eye single to the interests of the participants and beneficiaries." *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984) (quotation marks and citations omitted). "Perhaps the most fundamental duty of a trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) (quotation marks and citation omitted). Good faith is not a defense to a breach of the duty of loyalty. *Leigh*, 727 F.2d at 124.

The "presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 299 (5th Cir. 2000). "When it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries.'" *Howard*, 100 F.3d at 1488–89 (quoting *Leigh*, 727 F.2d at 125–26).

Plan assets must not inure to the benefit of the employer, in this case Northrop Grumman. 29 U.S.C. § 1103(c)(1). Instead, plan assets must be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan. 29 U.S.C. § 1103(c)(1), § 1104(a)(1)(A). Plan fiduciaries must act solely in the interest of the participants and beneficiaries (29 U.S.C. § 1104(a)(1)) and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims (29 U.S.C. § 1104(a)(1)(B)). Defendants abdicated their responsibility over Plan assets by allowing Northrop to take just over $6 million in Plan assets in 2010–2015, allegedly for services that various Northrop corporate departments provided to the Plan. Defendants in fact delegated to the heads of the very departments that received Plan assets authority to authorize these payments to themselves. This allowed those executives to offload corporate expenses onto the Plan for their own, and Northrop's, benefit, which was neither prudent nor in the interest of participants and beneficiaries.

Although the Administrative Committee and Investment Committee caused the Plan to enter into Administrative Services Master Contracts (called an ASA) with a detailed approval process for payments to Northrop—including among other things having an independent fiduciary, at least annually, determine that the services Northrop provided were necessary for the administration of the Plan and that the quality and level of Northrop's services and charges were equal to those of an outside provider—Defendants never followed those provisions and never determined on a continuing, year-to-year basis, that the services Northrop was providing benefitted the participants and beneficiaries of the Plan or that Northrop's charges therefor were reasonable. Defendants also never inquired whether the Plans' third-party recordkeeper or other professionals could provide the same

services for a lower cost. Consultants informed Defendants that the Plan's administrative expenses were higher than similar plans. The ASA was an attorney-recommended prudent process for allowing Northrop to provide services to the Plan and receive payments from Plan assets without violating ERISA and Defendants did not follow that process.

Anyone who exercised any discretionary authority, discretionary control, or discretionary responsibility over the services that Northrop employees provided to the Plan or the amounts Northrop received from the Plan or who exercised any control over Plan assets acted as a fiduciary. 29 U.S.C. § 1002(21)(A); *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251 (1993). "Congress intended the term ['fiduciary'] to be broadly construed." *Blatt v. Marshall & Lassman,* 812 F.2d 810, 812 (2d Cir. 1987) (citations omitted); *see also Reich v. Lancaster*, 55 F.3d 1034, 1046 (5th Cir. 1995).

A prudent investigation requires a reasoned decision-making process. *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 796 (7th Cir. 2011). "'Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are obliged to minimize costs.'" *Tibble*, 843 F.3d at 1198.

Plaintiffs contend that none of the services Northrop provided were necessary or worth what Northrop was paid and thus that Defendants must restore to the Plan all amounts that were paid to Northrop. In addition, Defendants must restore to the Plan what that money would have gained from Plan investments. *Tibble*, 843 F.3d at 1198 ("lost investment opportunity"). Therefore, Plan damages should be brought forward at the rate of the S&P 500® index (or like fund), which is a recognized proxy for plan investment performance. *Tussey v. ABB, Inc*., No. 06-4305, 2012 WL 1113291, at *36 (W.D. Mo. Mar. 31, 2012), *aff'd*, 746 F.3d 327, 337 (8th Cir. 2014) (reversed on other grounds). This is based on recognized principles for calculating plan losses under 29 U.S.C. § 1109(a). The Plan should be

restored to the position it would have been in had there been no breach. *Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011); *Bierwirth*, 754 F.2d at 1056.

The measure of Plan losses need not be exact; it need only be a matter of "just and reasonable inference, although the result be only approximate." *Martin v. Feilen*, 965 F.2d 660, 672 (8th Cir. 1992) (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, (1931)); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 285 (2d Cir. 1992). "When precise calculations are impractical, trial courts are permitted significant leeway in calculating a reasonable approximation of the damages suffered." *Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036, 1047 (9th Cir. 2001) (citing *Sutton v. Earles*, 26 F.3d 903, 918 (9th Cir. 1994)).

Defendants have the burden of proving that a lower damages measure is more appropriate. *Sec'y of DOL v. Gilley*, 290 F.3d 827, 830 (6th Cir. 2002); *Bierwirth*, 754 F.2d at 1056. "This is nothing more than application of the principle that, once a breach of trust is established, uncertainties in fixing damages will be resolved against the wrongdoer." *Bierwirth*, 754 F.2d at 1056. Defendants also have the burden of proving that a prudent fiduciary would have made the same decision they made or that they acted properly. *Tatum*, 761 F.3d at 356–57, 363–64; *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1995) (quoting *Martin*, 965 F.2d at 671); *see also Kim v. Fujikawa*, 871 F.2d 1427, 1430–31 (9th Cir. 1989) (quoting *Bierwirth*, 754 F.2d at 1056).

In addition to an award of damages, the Court has full equitable powers to award such relief as it deems appropriate under the circumstances. 29 U.S.C. § 1109(a) (breaching fiduciaries are "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary"). Among the equitable remedies Plaintiffs request and which the Court should order are imposing a constructive trust on all Plan assets wrongfully delivered to Northrop, removing fiduciaries found to be in breach, ordering Defendants to

provide an accounting of specific amounts of Plan assets the Court finds to have been wrongfully delivered to Northrop but not adequately accounted for in the evidence, impose a surcharge on Defendants for all amounts of Plan assets found wrongfully delivered to Northrop, enjoin any further breaches of duty, and order restitution of any funds delivered to a non-fiduciary who knew or reasonably should have known were delivered as the result of a violation of ERISA. 29 U.S.C. § 1132(a)(2); *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut.*, 982 F.2d 1031, 1036 (6th Cir. 1993); *Humphrey v. United Way of the Tex. Gulf Coast*, 2010 WL 4791486, at *15–17 (S.D. Tex. Nov. 15, 2010) (citing *Old Security Life Ins. Co. v. Continental Ill. Nat'l Bank & Trust Co.*, 740 F.2d 1384, 1397 (7th Cir. 1984)); *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000); Restatement (Second) of Trusts § 172, § 173 (1959). For example, after determining the method by which a plan's lost investment opportunity should be calculated, Judge Wilson ordered the parties to make that calculation and submit a stipulation of the damages under that method or an explanation of any disagreements. *Tibble v. Edison Int'l*, No. 07-5359-SVW, Doc. 567 at 24 (C.D. Cal. Aug. 16, 2017); *id.*, Doc. 570 (Sep. 5, 2017)(stipulation).

**Claim 2:**

Defendants' fiduciary status is the same as above. Northrop, as employer, is a party in interest under 29 U.S.C. § 1002(14)(C). To prove a prohibited transaction under § 1106(a), Plaintiffs need only prove that Defendants caused the Plan to engage in a transaction, that it knew or should have known constituted a direct or indirect (A) exchange of property between the Plan and Northrop (C) furnishing of services by Northrop to the Plan or (D) transfers to, or use by or for the benefit of Northrop of Plan assets. These transactions are prohibited *per se*. *Harris Trust*, 530 U.S. at 241–42 (2000). ERISA's prohibited transaction provisions "should be construed broadly in order to effectuate Congress's 'overriding concern with the protection of plan participants and beneficiaries.'" *Patelco Credit Union v. Sahni*,

262 F.3d 897, 908 (9th Cir. 2001); *Lowen v. Tower Asset Mgmt. Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987). The prohibitions of § 1106 apply "regardless of whether the transaction is 'fair' to the plan." *Reich v. Compton*, 57 F.3d 270, 288 (3d Cir. 1995).

Section 1106(a) "begins with the premise that virtually all transactions between a plan and a party in interest are prohibited, unless a statutory or administrative exemption applies." *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1222 (N.D. Cal. 2008). Evidence of payments to a recordkeeper "in exchange for services rendered to the Plan" establishes a violation of § 1106(a). *Braden*, 588 F.3d at 601–02.

Defendants engaged in prohibited transactions by having Northrop furnish services to the Plan and by transferring Plan assets to Northrop as claimed payment for those services, as described above.

ERISA provides certain exemptions from its broad prohibited transactions (29 U.S.C. § 1108, ERISA § 408), but Defendants have the burden proving they qualify for those exemptions. *Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2015), *rev'd on other grounds*, 136 S. Ct. 758 (2016) (quoting *Howard*, 100 F.3d at 1488); *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016) (citing other circuits that agree). Under 29 U.S.C. § 1108(b)(2) and 29 C.F.R. § 2550.408b-2, Defendants will have to prove that the services Northrop provided were necessary for the administration of the Plan, that the arrangement for those services and Northrop's compensation was reasonable, and that the compensation paid to Northrop was reasonable. Employers such as Northrop can receive only reimbursement of expenses properly and actually incurred in providing necessary services to the Plan. 29 U.S.C. § 1108(c)(2); 29 C.F.R. § 2550.408c-2. Conflicted fiduciaries must hire an independent fiduciary to decide whether to hire and how much to pay an employer to provide plan services. 29 C.F.R. § 2550.408b-2(e); 29 C.F.R. § 2550.408b-2(f); *Howard*, 100 F.3d at 1488–89. Defendants did none of

1  these things.

2     The remedies for these prohibited transactions are as stated above. Defendants

3  allowed Northrop to receive just over $6 million in Plan assets in 2010–2015 and

4  must restore to the Plan that full amount, plus the Plan's lost investment

5  opportunity. Defendants have the burden of proving that this amount should be

6  reduced by any direct expenses properly and actually incurred for the Plan's

7  benefit. *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 886–89 (9th Cir. 2019); *Kim*, 871

8  F.2d at 1430–31

9  **Claim 3:**

10     Defendants' fiduciary status is the same as above. To prove a prohibited

11  transaction under § 1106(b), Plaintiffs need only prove that Defendants dealt with

12  the assets of the Plan in their own interest or for their own account or acted in any

13  transaction involving the Plan on behalf of a party (or represented a party) whose

14  interests are adverse to the interests of the Plan or its participants and beneficiaries.

15  29 U.S.C. § 1106(b). Defendants did this by allowing Northrop officers to freely

16  charge the Plan such amounts as they wished for whatever services they provided,

17  without any independent fiduciary oversight. This had the obvious benefit of

18  allowing Northrop's corporate officers to offload expenses from their corporate

19  budgets onto the Plan. The same facts as described above establish prohibited

20  transactions under § 1106(b). DOL regulations are explicit in prohibiting fiduciaries

21  from acting to benefit an employer such as Northrop and requiring that an

22  independent fiduciary determine whether a plan should engage the services of an

23  employer and whether payments are appropriate and lawful. 29 CFR § 2550.480b-

24  2(e). This, Defendants did not do.

25     The exemptions of § 1108 do not apply to § 1106(b) violations. *City Nat'l*, 922

26  F.3d at 886 (citing *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 799 F.3d 1257,

27  1269 (9th Cir. 2015), and *Patelco Credit Union v. Sahni*, 262 F.3d 897, 910–11 (9th

28  Cir. 2001)). There is no "reasonable compensation" exception for prohibited

transactions under §1106(b). *Id.* Thus, the entire $6 million Northrop received in 2010–2015 is prohibited and Defendants are liable for failing to recover those assets for the Plan.

**Claim 4**:

Defendants had an ongoing duty to monitor Plan investments and remove imprudent ones. *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1828–29 (2015). That duty applied equally to the two active managers Defendant Investment Committee and its members retained and allocated Plan assets to in the Plan's Emerging Markets Equity Fund. Active managers charge higher fees than managers who just passively imitate an index of funds in a particular investment category.

In 2010–2011 Defendants determined that active management was unlikely to produce returns net of fees that would exceed passive management and therefore converted all of the Plan's investment options, except the Emerging Markets Equity Fund, to passive management. They did not convert the Emerging Markets Equity Fund to entirely passive management even though, by the end of 2010, the active management caused the Fund to underperform its benchmark over the preceding one-year, three-year, five-year, and ten-year periods. Active management also caused the Fund to be the most expensive investment option in the Plan. Defendants did not come to any reasoned decision for retaining active management in this Fund. They moved to passive management in other funds that had better performance with active managers than had the Emerging Markets Equity Fund.

Defendants' failure to change the Fund to all passive management by December 2010—as it did for the Plan's other core funds— caused the Plan to lose over $28.4 million compared to what it would have earned under passive management.

**Claim 5**:

ERISA § 502(a)(3) authorizes a participant to bring an action to obtain appropriate equitable relief to redress violations of the statute. 29 U.S.C. § 1132(a)(3). That allows a participant to sue a non-fiduciary party in interest who

obtains Plan assets as the result of the plan fiduciaries' engaging in prohibited transactions. *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000). If the recipient of Plan assets knew or reasonably should have known that the transfer resulted from a prohibited or otherwise unlawful transaction ("ill-gotten trust assets"), then the recipient is liable under § 1132(a)(3) for restitution of the assets or disgorgement of the proceeds and profits from disposal of the assets. *Id.* at 250–51.

Northrop is a party in interest because it is the employer who sponsors the Plan. 29 U.S.C. § 1002(14)(C), (E). Since the Northrop executives whom Northrop appointed to their fiduciary positions caused the Plan to transfer its assets to Northrop without in any significant way following the ASAs that were designed to avoid prohibited transactions, Northrop knew or reasonably should have known it was receiving Plan assets as the result of prohibited transactions. It was specifically told by legal counsel that was so. In addition, Northrop knew or reasonably should have known that Plan asserts were inuring to its benefit in violation of 29 U.S.C. § 1103(c)(1).  Consequently, Northrop is subject to an equitable order of disgorgement of all amounts it received from the Plan.

**LR 16-4.1(d) Defendants' affirmative defenses.**

Defendants asserted 26 affirmative defenses in their answers. Doc. 135 at 31–35 (Answer 30–34); Doc. 147 at 32–37 (Answer 31–26). They have abandoned all but two of them.

Defendants now assert the following affirmative defenses:

1.      The transactions at issue in Claim 2 are exempt under 29 U.S.C. § 1108(b)(2).

2.      Plaintiffs had actual knowledge of Claims 1–4 before September 9, 2013. 29 U.S.C. § 1113(2).

**LR 16-4.1(e) Elements of Defendants' affirmative defenses.**

The elements required to establish these affirmative defenses are the following:

**Affirmative Defense 1**:

1. Each service Northrop provided to the Plan was necessary for the administration of the Plan;

2. The arrangement under which Northrop provided each service to the Plan and received payment from the Plan was reasonable;

3. Each payment to Northrop for necessary services to the Plan was reasonable.

29 U.S.C. § 1108(b)(2); 29 U.S.C. § 1108(c)(2); 29 C.F.R. § 2550.408b-2; 29 C.F.R. § 2550.408c-2.

**Affirmative Defense 2:**

1. As to Claim 1, each Plaintiff knew before September 9, 2013 of each service Northrop provided to the Plan and each payment the Plan made to Northrop for that service and that Defendants allowed this disloyally and imprudently;

2. As to Claim 2, each Plaintiff knew before September 9, 2013 of each service Northrop provided to the Plan and each payment the Plan made to Northrop for that service and that this was done under an arrangement that did not qualify for the § 1108(b)(2) exemption;

3. As to Claim 3, each Plaintiff knew before September 9, 2013 of each service Northrop provided to the Plan and each payment the Plan made to Northrop for that service and that Defendants allowed this by acting in their own interest or for their own account or acted on behalf of a party whose interests were adverse to the interests of the Plan and Plan participants and beneficiaries.

4. As to Claim 4, each Plaintiff knew before September 9, 2013 that Defendants decided not to convert the EM Fund to passive management without considering the relevant factors and coming to a reasoned decision.

29 U.S.C. § 1132(2); *Sulyma v. Intel Corp. Investment Policy Comm.*, 909 F.3d 1069, 1075–76 (9th Cir. 2018).

**LR 16-4.1(f) Key evidence relied on in opposition to each affirmative defense.**

**Affirmative Defense 1:**

Under 29 U.S.C. § 1108(b)(2) and 29 C.F.R. § 2550.408b-2, Defendants will have to prove that the services Northrop provided were necessary for the administration of the Plan, that the arrangement for providing those services and paying Northrop was reasonable, and that the compensation paid to Northrop was reasonable. Employers such as Northrop can receive only reimbursement of expenses properly and actually incurred in providing necessary services to the Plan. 29 U.S.C. § 1108(c)(2); 29 C.F.R. § 2550.408c-2. Defendants must prove that Northrop received reimbursement only for employees that Northrop would not have paid but for their having worked for the Plan. 29 U.S.C. § 1108(c)(2); 29 C.F.R. §2550.408c-2(b). Plan assets cannot be used to pay for corporate overhead or an expense that Northrop would have incurred even if it had not provided services to the Plan. 29 C.F.R. §2550.408c-2(b)(3). Conflicted fiduciaries must hire an independent fiduciary to decide whether to hire and how much to pay an employer to provide plan services. 29 C.F.R. § 2550.408b-2(e); 29 C.F.R. § 2550.408b-2(f); *Howard*, 100 F.3d at 1488–89.

Defendants did none of these things. Defendants did not hire an independent

fiduciary to determine whether the services Northrop provided were necessary for the administration of the Plan and whether the compensation to be paid Northrop for those services was reasonable in light of the alternatives available to the Plan. The services Northrop provided were for Northrop's benefit and not necessary for Plan administration. They could have been performed by the Plan's outside recordkeeper under its contract. The arrangement under which Northrop provided services and received payments was not reasonable because Defendants did not even follow the process the Plan fiduciaries had established with the ASAs upon advice of counsel to avoid the prohibitions of 29 U.S.C. § 1106. The process Defendants followed was ad hoc and essentially allowed Northrop employees and executives to compensate themselves out of the Plan without any fiduciary acting solely in the interest of the participants determining in advance what services and how much the Plan should pay in light of the alternatives available to it. Defendants allowed reimbursements for salaries of employees without determining whether they would have been paid by Northrop even if they had not worked on the Plan. (The same employees provided services for a variety of Northrop's other employee benefits plans.) Defendants did not determine what an outside service provider would have charged the Plan, so as to determine whether the payments to Northrop were reasonable. Defendants also allowed Northrop to be reimbursed for overhead (general corporate expenses as opposed to employee-specific payments) in the form of a percentage of reimbursed salaries.

### Affirmative Defense 2

Plaintiffs did not have actual knowledge of any of the facts that are elements to this affirmative defense. They could not have dispositive actual knowledge and Northrop services and payments that occurred after September 9, 2013.

### LR 16-4.1(h) Identification of anticipated evidentiary issues

In addition to the issues identified in Plaintiffs' motions *in limine* and objections and Plaintiffs' proposed findings of fact, and as indicated in the

following section, Defendants appear to contend that the facts and evidence regarding their payments to Northrop before September 9, 2010, especially from *Grabek v. Northrop Grumman Corp.*, are not relevant to Claims 1–3. That is mistaken.

The Court already has recognized the relevance of documents produced in *Grabek* given the "considerable overlap between the parties and issues" in that case and those here. *Grabek*, Doc. 802 at 6. Those documents will "'certainly shed some light on' Defendants['] actions and policies with respect to the claims at issue in *Marshall*.'" *Id*. (quoting *Pac. Fuel Co. LLC v. Shell Oil Co.*, No. 06–0225–AG(AJWx), 2008 WL 11340297, at *3 (C.D. Cal. Sept. 22, 2008)); *see also Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1351–52 (9th Cir. 2013) (finding deposition testimony in one action relevant to a similar action concerning a similar alleged breach in a different year against a different defendant); *Tibble v. Edison Int'l*, No. 07-5359–SVW, 2017 WL 3523737, at *2–3 (C.D. Cal. Aug. 16, 2017) (relying on evidence of actions that occurred before the statutory period); *Tussey v. ABB Inc.*, No. 06-4305, 2012 WL 1113291, at *8 (W.D. Mo. March 31, 2012) (same). Since the unlawful conduct at issue in Claims 1–3 are continuations of the same practices that were at issue in *Grabek*, the same exhibits and evidence that were admitted and discovered in that case are equally relevant and admissible in this case.

**LR 16-4.1(i) Identification of issues of law**

In addition to the issues identified in Plaintiffs' motions *in limine* and objections and Plaintiffs' proposed conclusions of law, Defendants improperly claim they are entitled to offset against the damages they owe to the Plan under Claims 1, 2, or 3 $4.2 million that they claim Northrop paid into the Plan in 2017 as a "reimbursement" of unlawful payments, which payment they claim Northrop made as part of a settlement with the U.S. Department of Labor. That is an invalid argument for the following reasons.

1    First, Defendants have identified no evidence that Northrop in fact paid this

2    amount to the Plan, much less that the payment was a reimbursement of all or a

3    portion of the unlawful payments to Northrop at issue in Claims 1–3. (In fact,

4    Defendants insist these payments were not unlawful.) It is contradictory for

5    Defendants to contend that their payments to Northrop were not unlawful and also

6    contend that Northrop reimbursed the Plan for these unlawful payments under a

7    settlement with the DOL.

8    Second, "payment" is an affirmative defense. Fed.R.Civ.P. 8(c); *Bank Leumi*

9    *Le-Israel, B.M. v. Lee*, 926 F.2d 232, 235 (7th Cir. 1991). Defendants did not plead

10   this affirmative defense. Doc. 135 at 31–35 (Answer 30–34); Doc. 147 at 32–37

11   (Answer 31–26). They have thus waived this defense. *Enlow v. Salem-Keizer*

12   *Yellow Cab Co.*, 389 F.3d 802, 819 (9th Cir. 2004) (citing *Bank Leumi*, 926 F.2d at

13   235).

14   Defendants appear to claim this $4.2 million is an "offset," but that is incorrect.

15   An offset, also known as a setoff, is an equitable doctrine that allows a defendant

16   found liable for an amount due the plaintiff to offset against that amount a debt that

17   the plaintiff owes the defendant. *Los Angeles Cty. Employees Ret. Ass'n v. Towers,*

18   *Perrin, Forster & Crosby, Inc.*, No. 01-1351-DDP, 2002 WL 32919576, at *7–8

19   (C.D. Cal. June 20, 2002) (describing the doctrine and citing cases); *see also United*

20   *States v. Kemen Constr.*, 349 F.Supp.3d 988, 1000 (E.D. Cal. 2018) (citing

21   *Newberry Corp. v. Fireman's Fund Ins. Co.*, 1392, 1398 (9th Cir. 1996), among

22   others); *Cathay Logistics LLC v. Gerber Plumbing Fixtures, LLC*, No. 15-2926-

23   ODW, 2016 WL 3912011, at *5 (C.D. Cal. 2016) ("Setoff and recoupment are

24   equitable defenses under which a defendant may seek to offset sums owing to the

25   plaintiff against sums owing from the plaintiff to the defendant"). Neither Plaintiffs

26   nor the Plan owe any debt to Defendants, so Defendants have no right to an offset.

27   Moreover, Defendants did not plead this defense either. Doc. 135 at 31–35 (Answer

28   30–34); Doc. 147 at 32–37 (Answer 31–26). They have thus waived this defense,

even if it were available. *Enlow*, 389 F.3d at 819.

Defendants also cannot claim an "offset" in the sense referred to in *Kim* and *City National* because those cases concerned direct expenses necessarily and actually incurred for the benefit of a plan, not a claimed reimbursement of unlawful payments returned under a settlement with the DOL. *Kim*, 871 F.2d at 1431–32; *City Nat'l*, 922 F.3d at 886–89. In *City National*, the defendant contended that the plan's damages award should be reduced by a $290,000 rebate it claimed to have made to the plan. *City Nat'l*, 922 F.3d at 889. The court rejected that argument because the defendant did not prove it actually made the payment, even though it produced minutes from the plan's fiduciary committee approving the payment. *Id.* Here, no Administrative Committee minutes reflect fiduciary approval of Northrop's claimed $4.2 million payment to the Plan and there is no other proof of payment. And the Defendants did not make or secure this payment.

For these reasons, there is no basis for reducing the damages due to the Plan under Claims 1–3.

**LR 16-4.5 Plaintiffs' claim to attorney fees**

The court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). A plaintiff need only have achieved "some degree of success on the merits" to be entitled to an award. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245, 255 (2010); *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1120–21 (9th Cir. 2010).

In deciding whether to award fees and costs, the court must consider these five factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Simonia*, 608 F.3d 1118 at 1121 (quoting *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980)). No single factor is decisive. *Id.* at 1122. "The *Hummell* factors reflect a balancing" and the Court "need not find that each factor weighs in support of fees." *McElwaine v. US West, Inc.,* 176 F.3d 1167, 1173 (9th Cir. 1999).

The *Hummell* factors must be applied in light of the purposes of ERISA, which, "like the Civil Rights Acts of 1871 and 1964, and the Labor-Management Reporting and Disclosure Act, is remedial legislation which should be liberally construed in favor of protecting participants in employee benefits plans." *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1468 (9th Cir. 1995) (quoting *Smith v. CMTA-IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir. 1984)). Section 1132(g)(1) "should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id.* (quoting *Smith*, 746 F.2d at 589). "As a general rule, ERISA employee plaintiffs should be entitled to a reasonable attorney's fee 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Smith*, 746 F.2d at 589 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). That is because an "important aspect" of ERISA is "to afford [participants and beneficiaries] effective access to federal courts." *Kayes*, 51 F.3d at 1468 (quoting *Smith*, 746 F.2d at 589).

If Plaintiffs prevail on any of their claims, they should be awarded attorney fees under § 1132(g)(1) because they will have shown that Defendants committed a prohibited transaction or breach of a fiduciary duty that is the highest known to the law (*Tibble*, 843 F.3d at 1197), Northrop has agreed to indemnify each defendant from any liability and has ample resources to satisfy an attorney fee award, a fee award would deter other fiduciaries from committing similar breaches, Plaintiffs have acted as class representatives to protect the interests of all participants in the Plan, and the merits of Plaintiffs' claims were stronger than Defendants'.

1   The Court must apply the lodestar method to determine the amount of fees to

2   award the Plaintiffs. This requires first a determination of the total number of hours

3   reasonably expended in obtaining the successful judgment in this case and then a

4   determination of the reasonable hourly rate to apply to those hours. *Schwarz v.*

5   *Sec'y of HHS*, 73 F.3d 895, 901 (9th Cir. 1995) (quoting *Hensley*, 461 U.S. at 433).

6   An award of attorney fees under § 1132(g)(1) should include an award of

7   litigation expenses. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th

8   Cir. 2010). Non-taxable costs "can be awarded as part of a reasonable attorneys' fee

9   since they are typically charged to paying clients by private attorneys." *Id.* at 580

10   (quoting *Davis v. City of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992),

11   *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993)). Such costs include

12   "those sums that the prevailing party incurs in the preparation for and performance

13   of legal services related to the suit." *Grove*, 606 F.3d at 581 (quoting *Central Soya*

14   *Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)); *see also*

15   *Davis v. Macon County*, 927 F.2d 1473, 1488 (9th Cir. 1991). Section 1132(g)(1)

16   includes an award of taxable costs under 28 U.S.C. § 1920 and LR 54-1. *Agredano*

17   *v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996).

19   DATED: August 23, 2019

Respectfully submitted,

By: /s/ Michael A. Wolff
Jerome J. Schlichter (SBN 054513)
Michael A. Wolff (admitted *pro hac vice*)
Kurt C. Struckhoff (admitted *pro hac vice*)
SCHLICHTER, BOGARD & DENTON LLP

*Class Counsel for All Plaintiffs*