JEROME J. SCHLICHTER (SBN 054513)
jschlichter@uselaws.com
NELSON G. WOLFF (admitted *pro hac vice*)
nwolff@uselaws.com
MICHAEL A. WOLFF (admitted *pro hac vice*)
mwolff@uselaws.com
KURT C. STRUCKHOFF (admitted *pro hac vice*)
kstruckhoff@uselaws.com
SCHLICHTER, BOGARD & DENTON LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934
*Lead Counsel for All Plaintiffs*

WILLIAM A. WHITE (SBN 121681)
wwhite@hillfarrer.com
HILL, FARRER & BURRILL LLP
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Facsimile: (213) 620-4840
*Local Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### (Western Division)

| | |
|---|---|
| CLIFTON W. MARSHALL, et al.,<br><br>                              *Plaintiffs*,<br> v.<br><br>NORTHROP GRUMMAN CORPORATION, et al.,<br><br>                              *Defendants*. | Case No. 16-CV-6794 AB (JCx)<br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE REGARDING STEVE POMERANTZ**<br><br>Date: October 4, 2019<br>Time: 11:00 a.m.<br>Courtroom 7B – 7th Floor<br><br>Hon. André Birotte Jr. |

**INTRODUCTION**

Defendants cannot meet the "high standard" that Dr. Steve Pomerantz's testimony is inadmissible on "all potential grounds". *In re Northrop Grumman Corp. ERISA Litig.,* No. 06-6213-AB, Doc. 728 at 2 (C.D. Cal. Mar. 3, 2017) ("*Grabek*"). Pomerantz is highly experienced in the investment management field with specialized expertise evaluating the performance of publicly traded securities portfolios and fund managers on behalf of investment management firms and institutional investors. His knowledge and experience as an investment professional will advance the Court's understanding of the imprudent process employed by the Investment Committee in retaining the actively managed Emerging Markets Equity Fund ("EM Fund") and the resulting losses to the Plan.[1] Defendants' generalized attacks on Pomerantz's testimony are unfounded and do not affect the admissibility of his testimony. The Court should deny Defendants' motion *in limine* and have Defendants test the weight of his testimony through cross examination and presentation of contrary evidence. *Boeing Co. v. KB Yuzhnoye*, No. 13-730-AB, 2015 WL 12803452, at *2 (C.D. Cal. Nov. 3, 2015).

**BACKGROUND**

Pomerantz provides written direct testimony in support of Plaintiffs' claim that Defendants breached their duties by maintaining the active EM Fund in the Plan. Doc. 132 ¶¶ 117–121 (Count IV). Applying his knowledge and experience as an investment professional, he will testify regarding the Fund's underperformance relative to its index and peer group, the Investment Committee's inconsistent process to retain an active strategy in the Fund at the time it decided to transition the Plan's other funds to a passive strategy, and the Plan's losses caused by the Committee's actions. Doc. 281 ¶¶ 20–51, 56–58.

---

[1] Defendants do not challenge Pomerantz's damage calculations. Doc. 267 at 5 (2:2–9). "Doc." page references are to the CM/ECF header page number.

**ARGUMENT**

The Court has "broad discretion to decide whether to admit expert testimony". *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). "[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, adv. comm. notes (2000). The standard for admissibility under Rule 702 is "flexible". *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993). *Daubert* is "not overly concerned about the prospect that some dubious scientific theories may pass the gatekeeper". *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," *Daubert*, 509 U.S. at 596, rather than "exclusion", *Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir. 2010).

*Daubert's* gatekeeping obligation is "lessened where, as here, this Court sits as the trier of fact." *Boeing,* 2015 WL 12803452, at *4 (*citing Fierro v. Gomez*, 865 F. Supp. 1387, 1395 n.7 (N.D. Cal. 1994)). Motions in *limine* to exclude expert testimony are "generally superfluous" and "inapplicable" in bench trials. *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com*, No. 10-3738-AB, 2015 WL 12697750, at *2 (C.D. Cal. Apr. 10, 2015) (*quoting United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009)). The better approach is for the Court to admit testimony "subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (quotation marks and citation omitted).

## I.     Pomerantz is sufficiently qualified.

Pomerantz has broad and relevant experience in the investment management industry. He has held various positions in research and management at major investment management firms, acted as a portfolio manager for different asset classes, performed qualitative and quantitative due diligence on portfolios offered to investors, *including emerging markets*, and advised large institutional clients on

the selection of investment options. *E.g.,* Doc. 281 ¶¶ 1–6; *cf. Tibble v. Edison Int'l*, No. 07-5359-SVW, 2010 WL 2757153, at *29 (C.D. Cal. July 8, 2010) (noting Pomerantz's work as a registered investment advisor, consulting for an investment advisor, and consulting with insurance company with $1 billion in assets). Rule 702 is satisfied because his testimony will "advance [the Court's] understanding to any degree" of the inferior performance of the EM Fund, the imprudent process employed by the Investment Committee, and the amount of Plan losses. *Abarca v. Franklin Cty. Water Dist.,* 761 F. Supp. 2d 1007, 1028–29 (E.D. Cal. 2011) (citation omitted). His qualifications easily meet the "low" threshold for admissibility. *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd*., No. 10-544, 2011 WL 5417090, at *3 (N.D. Cal. Oct. 27, 2011) (*citing Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1015–16 (9th Cir. 2004)); *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994).

Other district courts, including this District, have admitted Pomerantz's testimony on matters related to the selection and oversight of ERISA plan investments. *Tibble,* 2010 WL 2757153, at *30 (monitoring share classes of mutual funds in a 401(k) plan); *Goldenberg v. Indel, Inc*., No. 09-5202, 2012 WL 3780555, at *17 (D. N.J. Aug. 30, 2012) (appropriate target asset allocation); *Tussey v. ABB, Inc*., No. 06-4305, 2012 WL 1113291, at *37 (W.D. Mo. Mar. 31, 2012) (calculation of losses caused by unlawful removal of fund in 401(k) plan). The First Circuit recently endorsed Pomerantz's damage opinions on the losses suffered by a 401(k) plan from retaining *actively* managed funds, in which he used Vanguard index funds as the prudent alternatives to measure losses. *Brotherston v. Putnam Inv., LLC*, 907 F.3d 17, 32–34 (1st Cir. 2018); *Brotherston*, No. 15-13825, Doc. 138-1 at 25 (D. Mass. Mar. 15, 2017) (expert report).

Defendants' challenges to Pomerantz's perceived lack of specialization are unfounded. He has professional experience with emerging markets securities, including conducting due diligence on emerging markets fund managers when

employed by several hedge funds, assisting a $1 billion retirement plan in structuring its investment menu with exposure to emerging markets and passive and active investments, and consulting on actively managed emerging markets portfolios. Doc. 281 ¶¶ 3–6; Doc. 202-2 at 2–3 (18:1–19:25), 4–6 (32:1–34:14), 9 (39:12–19). He has years of experience evaluating portfolios and investment strategies on behalf of both sophisticated investment management firms and institutional investors, including defined contribution plans. Doc. 281 ¶¶ 3–6.[2] Even if Pomerantz did not have the requisite level of "specialization" (which he does), that is not the standard because Rule 702 "embrace[s] more than a narrow definition of qualified expert". *Thomas*, 42 F.3d at 1269. General qualifications suffice. *Hangarter*, 373 F.3d at 1015–16 (finding the district court did not abuse its discretion in permitting expert witness with general qualifications in insurance field to testify specifically about bad faith claims); *United States v. Bilson*, 648 F.2d 1238, 1239 (9th Cir. 1981) (expert's testimony admissible regarding psychological tests despite the fact that the expert was "not a licensed psychologist").

Defendants ignore Pomerantz's academic research on relevant topics that also show his investment knowledge. Doc. 281 at 24. For instance, he published an analysis of fee structures of actively and passively managed mutual funds, including those offered by Vanguard, and discussed the vast "evidence that active mutual fund management is unable to consistently outperform active management". Stewart Brown and Steve Pomerantz, *Some Clarity on Mutual Fund Fees*, 20 U. PA. J. BUS. LAW 767, 769, 779–81 (2018);[3] John Freeman, Stewart Brown & Steve Pomerantz, *Mutual Fund Advisory Fees: New Evidence and a Fair Fiduciary Test*, 61 OKLA. L. REV. 83 (2008).[4] He has evaluated the differences in performance

---

[2] Defendants are wrong that Pomerantz has served exclusively as a litigation expert since 2000. *E.g.,* Doc. 281 ¶¶ 4–6.
[3] https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=1567&context=jbl; *see also* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3050589.
[4] https://stevepomerantz.com/final_OK.pdf.

among active portfolio managers and written about tools to evaluate investment returns. Steve Pomerantz, *The Pursuit of Alpha in a Fund of Hedge Funds: A Performance Attribution Analysis,* GORDAN ASSET MGMT., Mar. 2006;[5] Steve Pomerantz, *Monte-Carlo Analysis: A Tool For Evaluating Investment Returns*, Fall/Winter 2005.[6]

Defendants are incorrect that Pomerantz has no fiduciary experience. He served as investment fiduciary when he was a registered investment advisor. Doc. 281 ¶ 3; Doc. 202-2 at 9 (39:7–11). Even if he has not acted as an ERISA fiduciary, that is not controlling because he is qualified to testify. *Grabek*, Doc. 728 at 6.

Defendants claim that Pomerantz failed to recognize the differences between benchmark indices for emerging markets. Doc. 267 at 7–8. However, Northrop's Investment Trust & Administration (ITA) department did not distinguish between indices of EM index funds at the time it evaluated the performance of these managers. *See, e.g.,* Doc. 232-14 at 34–38 (ITA passive file). Regardless, whatever differences may exist go to weight of his testimony and not admissibility because Pomerantz does not testify that the index for the EM Fund was inappropriate, that the Investment Committee used the wrong index to evaluate investment returns, or that the Committee selected an imprudent emerging markets index fund that tracked the wrong index. Further, for purposes of measuring loss, Pomerantz used the exact same index fund that the Investment Committee included in the Plan (SSgA Daily Emerging Markets Non-Lending Fund). *See* Doc. 281 ¶ 56.

For limited opinions (Ex. B ¶¶ 76–81, Doc. 267-3), Defendants claim that Pomerantz must have served as an ERISA fiduciary to offer testimony relevant to the duty of prudence. Doc. 267 at 9–10. The test is a "prudent person" standard focuses on whether the fiduciaries "employed the appropriate methods to investigate the merits of the investment and to structure the investment." Doc. 264

---

[5] https://www.stevepomerantz.com/The%20Pursuit%20of%20Alpha.pdf.
[6] https://stevepomerantz.com/pomerantz-com-fed-newsl-fall-winter05.pdf.

at 14 (*quoting Donovan v. Mazzola,* 716 F.2d 1226, 1232 (9th Cir. 1983)).
Pomerantz applies his experience as an investment professional to conclude that the
Investment Committee did not consider adequate information when evaluating the
active strategy in the EM Fund. Doc. 281 ¶¶ 49–51. He is qualified to provide that
opinion. *See Tibble,* 2010 WL 2757153, at *25, *29 (relying on Pomerantz's
testimony in finding that the fiduciaries acted imprudently).

Overall, Defendants' challenges to Pomerantz's qualifications only affect the
"weight" of his testimony and thus should be explored through cross examination.
*United States v. Garcia,* 7 F.3d 885, 889–90 (9th Cir. 1993) ("lack of particularized
expertise goes to the weight accorded her testimony, not to the admissibility");
*Victorino v. FCA US LLC*, No. 16-1617, 2018 WL 2551312, at *5 (S.D. Cal. June
4, 2018) ("lack of specialization affects the weight"); *Abarca,* 761 F. Supp. 2d at
1028 ("[g]aps in an expert witness's qualifications or knowledge generally go to the
weight"). It would be an abuse of discretion to exclude Pomerantz's testimony
"solely on the ground that [his] qualifications are not sufficiently specific" because
he is "generally qualified." *In re Silicone Gel Breast Implants Prod. Liab. Litig.,*
318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) (Matz, J.) (citation omitted).

## II.     Pomerantz offers reliable testimony.

Drawing on his knowledge and experience as an investment professional,
Pomerantz applies available quantitative data and the criteria used by the
Investment Committee and the ITA in determining that a prudent fiduciary would
have transitioned the EM Fund to passive management at the same time as the
Plan's other funds if a consistent process had been applied. Doc. 281 ¶¶ 31–48;
Doc. 267-3 ¶¶ 85–97. That is not "scientific" testimony subject to the traditional
*Daubert* factors, like the jury trials in *Lowert v. Boiron, Inc.*, 212 F. Supp. 3d 917,
925–930 (C.D. Cal. 2016), concerning the efficacy of a pharmaceutical drug, or in
*Pooshs v. Phillip Morris USA, Inc.,* 287 F.R.D. 543, 546–48 (N.D. Cal. 2012),
concerning the causation of the plaintiff's lung cancer from tobacco use. *Cf.* Doc.

267 at 10 (7:19–26). The "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable" to an expert's testimony "whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology behind it." *Hangarter,* 373 F.3d at 1017 (*quoting Hankey*, 203 F.3d at 1169). This is because the "relevant reliability concerns may focus upon personal knowledge or experience". *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Since this is a bench trial, "the question of reliability need not be determined in advance". *Wolkowitz v. Lerner*, No. 07-777-CAS, 2008 WL 1885770, at *5 (C.D. Cal. Apr. 21, 2008) (citations omitted).

Pomerantz's testimony regarding the actions a prudent fiduciary would take after applying a consistent process and considering the quantitative data available to investment professionals is reliable non-scientific testimony based on his knowledge and experience, the reliability of which is "not contingent upon a particular methodology or technical framework." *Hangarter,* 373 F.3d at 1018; *cf. Lust v. Merrill Dow Pharms. Inc.,* 89 F.3d 594, 597 (9th Cir. 1996) (scientific testimony required to link birth defects to a pharmaceutical drug); *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 993 (C.D. Cal. 2012) (expert testimony inadmissible due to failure to provide economic analysis based on the required *Brown Shoe* indicia to define the relevant market in antitrust litigation). And Defendants make no attempt to articulate what specific scientific "methodology" Pomerantz was required to apply in this case.

Pomerantz did not use "exactly one piece of analysis". Doc. 267 at 11 (8:2). He analyzes peer ranking data for Vanguard index funds for emerging markets and the other asset classes that the Investment Committee transitioned to passive management, as well as the historical performance of the EM Fund compared to the Plan's comparable International Equity Fund *and* the Plan's other core investments. Doc. 281 ¶¶ 34–42; Doc. 267-3 ¶¶ 85–97. He emphasizes how the EM Fund failed to meet its active investment objective. Doc. 281 ¶¶ 27–30; Doc. 267-3 ¶¶ 43–44,

66–57, 62. He shows that the Fund's active managers underperformed passive management. Doc. 281 ¶¶ 24–25; Doc. 267-3 ¶¶ 82–84. He then calculates Plan losses caused by the Committee's decision to keep the EM Fund in active management. Doc. 281 ¶¶ 56–59; Doc. 267-3 ¶¶ 98–100.[7]

Even if Pomerantz has not exclusively devoted his professional career to researching emerging markets, he is amply qualified to apply objective performance criteria to investment decisions. *Garcia,* 7 F.3d at 889 (despite having only "glanced through a book on the subject", expert qualified based on experience); *In re Zicam Cold Remedy Mktg., Sales Practices, & Products Liab. Litig.,* No. 09-2096, 2011 WL 798898, at *5–6 (D. Ariz. Feb. 24, 2011) (expert with expertise in nasal anatomy was qualified to interpret studies on the drug delivery system despite having never performed research on the subject). Any "perceived deficiencies in the thoroughness of [Dr. Pomerantz's] research" go to the weight of his testimony. *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, No. 09-3032, 2012 WL 12951706, at *2 (E.D. Wash. June 27, 2012).

Contrary to Defendants' incorrect contention, Pomerantz has used peer ranking data in practice. Doc. 281 ¶ 34 n.31; Doc. 202-2 at 11–13 (123:16–125:4). This data also is used by other investment fiduciaries, including the Investment Committee, the ITA, and Northrop's own consultant (Callan). *See* Fiduciary360, *Prudent Practices for Investment Stewards*, Practice 4.1.1 (at 45), 2011 (noting comparison to peer group);[8] Doc. 281 ¶¶ 28–30, 38–39 (Callan peer rankings); Doc. 214-12 at 5 (ITA policy to "[c]ompare investment results against peers"). It is also relevant to the Court's determination of whether the Investment Committee acted imprudently

---

[7] Defendants do not challenge the reliability of these calculations. *Contra Colby v. Newman,* No. 11-07413-SVW, 2012 WL 12885118, at *6 (C.D. Cal. Nov. 20, 2012) (challenges to forensic accountant's calculation of lost profits); *cf.* Doc. 267 at 13.

[8] https://boschfinancial.com/wp-content/uploads/sites/76/2019/03/investment-steward.pdf.

in retaining the EM Fund. *Spano v. Boeing Co.*, 125 F. Supp. 3d 848, 870 (S.D. Ill. 2014) (fund peer rankings relevant to assess fiduciaries' alleged imprudence in maintaining fund).

Defendants challenge the reliability of Pomerantz's testimony based on his failure to include data from *2007* in his analysis of performance. Doc. 267 at 12 (9:1–7). That data was collected years before the Investment Committee decided to invest passively across all Plan funds except the EM Fund. The relevant data to assess the prudence of the Committee's actions at issue is the data available to the Committee "at the time*"* of the challenged decision during 2010. Doc. 264 at 14:24–27 ("the duty of prudence turns on 'the circumstances … prevailing' at the time the fiduciary acts") (*quoting Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)); 29 U.S.C. § 1104(a)(1)(B).[9] Moreover, Pomerantz relied on the same data that was considered by the ITA at the time of the challenged decision. Doc. 281 ¶¶ 38–39; Doc. 187-11 at 135, Doc. 187-12 at 20 (performance data).

Defendants argue about the purported differences in emerging markets benchmark indices, but those differences are meaningless in this case. Doc. 267 at 12 (9:13–25).[10] The ITA did not distinguish between benchmarks of passive EM funds in assessing their performance. Doc. 187-12 at 20. The performance data used by the ITA demonstrated that passive EM funds performed near or better than the median of their peer group for the three years ending March 31, 2010 and March 31, 2009. *Id.* Whatever perceived weaknesses in the "underpinnings" of Pomerantz's testimony go its weight. *Bergen v. F/V St. Patrick*, 816 F.2d 1345,

---

[9] *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1246 (W.D. Wash. 2018) is inapt because Pomerantz drew his conclusions from the operative set of data.

[10] Defendants' reliance on *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018) is misplaced because differences in the *emerging markets* benchmarks do not alter the investment *strategy* of the funds, in contrast to a growth or value orientation for other equity portfolios, *e.g.,* large cap *growth* index. *Meiners* also concerned the plausibility of Plaintiffs' claims at the pleadings stage, not the reliability of expert testimony under Rule 702. *Id.* at 823–24.

1352 n.5 (9th Cir.1987); *Tyco Thermal Controls, LLC v. Redwood Indus., LLC*, No. 06-7164, 2012 WL 2792435, at *4 (N.D. Cal. July 9, 2012).

In passing, Defendants reference minor data input errors in Pomerantz's calculation of the Plan's annual returns. Doc. 267 at 13 n.6. That calculation is immaterial to his emerging markets opinions because it was done to enable Plaintiffs' other expert to calculate lost investment opportunity. For this reason, *Sivolella v. AXA Equitable Life Ins. Co*. is inapt because Pomerantz made no errors on any "critical point". No. 11-4194, 2016 WL 4487857, at *15 (D. N.J. Aug. 25, 2016). Similarly, *CCM Rochester v. Federated Investors, Inc.* was decided in the context of a *jury trial* and Fed. R. Evid. 403, and the court did *not* exclude his opinions related to the poor performance of the subject funds. No. 14-3600, 2016 WL 11617452, at *8 (S.D. N.Y. Aug. 31, 2016). These decisions do not render Pomerantz's testimony inadmissible because another court's exclusion of his opinions "do not directly bear on whether his testimony is reliable in *this* case." *Grabek*, Doc. 728 at 4–5 (emphasis in original).

## CONCLUSION

Defendants' motion should be denied.

September 13, 2019                    Respectfully submitted,

                                     By: /s/ Kurt C. Struckhoff
                                     Kurt C. Struckhoff (*pro hac vice*)
                                     SCHLICHTER, BOGARD & DENTON LLP
                                     *Lead Counsel for Plaintiffs*