JEROME J. SCHLICHTER (SBN 054513)
jschlichter@uselaws.com
NELSON G. WOLFF (admitted *pro hac vice*)
nwolff@uselaws.com
MICHAEL A. WOLFF (admitted *pro hac vice*)
mwolff@uselaws.com
KURT C. STRUCKHOFF (admitted *pro hac vice*)
kstruckhoff@uselaws.com
SCHLICHTER, BOGARD & DENTON LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934
*Lead Counsel for All Plaintiffs*

WILLIAM A. WHITE (SBN 121681)
wwhite@hillfarrer.com
HILL, FARRER & BURRILL LLP
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071-3147
Telephone: (213) 620-0460
Facsimile: (213) 620-4840
*Local Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
## (Western Division)

| | |
|---|---|
| CLIFTON W. MARSHALL, et al., | Case No. 16-CV-6794 AB (JCx) |
| *Plaintiffs*, | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE REGARDING DAVID WITZ** |
| v. | |
| NORTHROP GRUMMAN CORPORATION, et al., | Date: October 4, 2019 |
| *Defendants.* | Time: 11:00 a.m. |
| | Courtroom 7B – 7th Floor |
| | Hon. André Birotte Jr. |

**INTRODUCTION**

Defendants have moved in *limine* to exclude *all* testimony of David Witz. Rather than making *specific* objections to *specific* opinions, Defendants again filed an improper "amorphous" motion seeking to bar all of his testimony. *In re Northrop Grumman Corp. ERISA Litig.,* No. 06-6213-AB, Doc. 728 at 2 (C.D. Cal. Mar. 3, 2017) ("*Grabek*"); *see* Doc. 167-1. Particularly problematic is that Plaintiffs are left deciphering Defendants' generic motion to determine what arguments apply to his prior Rule 26(a)(2) report (and for what paragraphs) in comparison to his written direct testimony submitted in this case (Doc. 282).[1] The Court should not be forced to "rule in a vacuum" on the admissibility of Witz's testimony at this stage.

Witz has nearly 40 years of relevant experience in the retirement plan industry with direct involvement in the provision of administrative services to defined contribution plans and consulting with fiduciaries and employers on accepted industry standards. Defendants' generalized attacks are disfavored in this bench trial where the "better approach" is to admit the contested testimony and allow vigorous cross examination. *Boeing Co. v. KB Yuzhnoye*, No. 13-730-AB, 2015 WL 12803452, at *4 (C.D. Cal. Nov. 3, 2015) (*citing Fierro v. Gomez*, 865 F. Supp. 1387, 1395 n.7 (N.D. Cal. 1994)). Although Defendants insist that Witz lacks sufficiently *specific* experience to testify, that overly narrow view is not the standard. Witz satisfies the minimum threshold for qualification and offers testimony that will advance this Court's understanding of Defendants' unlawful practice of receiving Plan assets for putative administrative and investment-related services provided by Northrop employees. Defendants' motion should be denied because Defendants have not met the "high standard" that Witz's testimony is inadmissible "on all potential grounds." *Grabek*, Doc. 728 at 2.

---

[1] For instance, Defendants do not appear to challenge his testimony related to the investment-related services performed by Northrop's Investment Trust & Administration ("ITA") department or his damage calculations.

## BACKGROUND

Witz provides direct testimony in support of Plaintiffs' claims that Defendants breached their fiduciary duties and committed prohibited transactions by causing the Plan to distribute Plan assets to Northrop as putative payment for services performed by Northrop employees. Doc. 132 ¶¶ 105–110, 122–134 (Counts I, IV–V). Witz intends to offer substantially similar opinions as he was going to provide in *Grabek* regarding the appropriate process for an employer to receive payment from a plan for administrative services, and the reasonable compensation for any services not outsourced to third parties. Doc. 282 ¶¶ 15–78.[2]

## I.    Qualifications.

Witz has nearly 40 years of experience in the retirement benefits field. Doc. 282 ¶ 1. He has provided independent fiduciary, recordkeeping, and consulting services to numerous retirement plans, including advice to fiduciaries. *Id.* From this experience, he has developed an understanding of the practices and procedures to be followed by fiduciaries. *Id.* ¶ 15. He has witnessed fiduciary practices of numerous ERISA plans and has personal knowledge of the manner in which prudent and loyal fiduciaries comply with ERISA's stringent standards. *Id.*

Witz previously worked for four different third party administrators that provided administrative services to ERISA retirement plans. *Id.* ¶¶ 2, 4–5. He owned and personally ran one of them, Corporate Benefit Planning. *Id.* ¶ 4.  For almost 20 years, he was directly involved in the provision of administrative services for defined contribution plans. *Id.* ¶ 2. He acted as a fiduciary providing investment advice to clients. *Id.* ¶ 5. Since 2004, Witz has provided custom risk management and consulting services to fiduciaries and service providers of defined contribution plans through Fiduciary Risk Assessment LLC and PlanTools. *Id.* ¶¶ 6–8.

During his professional career, Witz has assessed both internal and external

---

[2] Defendants did not move to exclude Witz's testimony on the basis that he was not sufficiently qualified or offered unreliable opinions. *See Grabek*, Doc. 679.

expenses charged to plans. *Id.* ¶ 9. He has evaluated the reasonableness of administrative expenses (including internal expenses) for a defined contribution plan with $4.2 billion in assets and over 100,000 participants. *Id.* He has advised employers regarding whether they should charge employer expenses to their plans. *Id.* He is the Chief Fiduciary Officer for two investment advisory firms where he regularly counsels the firms' advisors on fiduciary practices and whether their employer clients should charge their plans for employer expenses. *Id.* ¶¶ 6, 10.

## II.   Expert testimony.

Relying upon his 38 years of experience, Witz will provide testimony regarding the process and procedures that prudent fiduciaries follow when an employer seeks reimbursement for services performed by its employees and how Defendants deviated from those standards. *Id.* ¶¶ 15–60. Witz will assess the services performed by Northrop's benefits departments and ITA based on information produced by Defendants in this case. *Id.* ¶¶ 61–72. Applying his knowledge and experience when administering defined contribution plans, Witz will explain how non-recordkeeping services could have been performed by 4 full-time employees (if any) instead of 70+ Northrop employees that billed time to the Plan. *Id.* ¶¶ 61–66. He will then describe the services that Northrop's ITA department performed in the general oversight over Plan investments, *id.* ¶ 67, and explain how these services could have been performed by one full-time employee (if any), not 16 employees employed by Northrop, based on the Plan's investment structure. *Id.* ¶¶ 68–72.

Witz then calculates the Plan's losses from the unlawful payments to Northrop. *Id.* ¶¶ 73–76. To the extent the Court finds that Defendants are entitled to an offset for reasonable compensation, Witz provides that calculation. *Id.* ¶¶ 77–78. He determines a reasonable fee based on independent and reliable sources, including from the Department of Labor's Bureau of Labor Statistics, reporting median annual salaries for employees who perform similar services. *Id.* ¶ 77.

**ARGUMENT**

Federal Rule of Evidence 702 grants the Court "broad discretion to decide whether to admit expert testimony". *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). "[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, adv. comm. notes (2000). The standard for admissibility under Rule 702 is "flexible". *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993). *Daubert* is "not overly concerned about the prospect that some dubious scientific theories may pass the gatekeeper". *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir. 2010). In bench trials, *Daubert's* gatekeeping obligation is "lessened." *Boeing*, 2015 WL 12803452, at *4; *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018).

Motions to exclude experts in bench trials are "generally superfluous" and "inapplicable". *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com*, No. 10-3738-AB, 2015 WL 12697750, at *2 (C.D. Cal. Apr. 10, 2015) (*quoting United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009)). "[T]he question of reliability need not be determined in advance of trial." *Wolkowitz v. Lerner*, No. 07-777-CAS, 2008 WL 1885770, at *5 (C.D. Cal. Apr. 21, 2008) (citations omitted). The better approach is for the Court to admit Witz's testimony "subject to the ability later to exclude it or disregard it if it turns out not to meet" Rule 702. *Flores*, 901 F.3d at 1165 (quotation marks and citation omitted).

**I.    Witz offers opinions relevant to industry standards.**

Witz made clear that he is not offering legal conclusions. Doc. 202-03 at 2–4 (27:24–29:19). His written direct testimony makes this clear and cannot be construed as summarizing the law, opinions "exclusively on purely legal disputes", or "run[ning] roughshod over the well-recognized rule" that an expert cannot give

legal conclusions. Doc. 266 at 6–7.[3]

As a retirement plan professional, Witz provides testimony regarding relevant industry practices and his understanding of the DOL's guidance that he relies on in practice when advising fiduciaries. Doc. 282 ¶¶ 15–28.[4] His testimony will assist the Court in understanding the appropriate process a prudent and loyal fiduciary would follow when seeking reimbursement of expenses from a plan. *Madrigal v. Allstate Indem. Co.,* No. 14-4242-SS, 2015 WL 12746232, at *5–6 (C.D. Cal. Oct. 29, 2015) (permitting expert testimony on industry practices); *In re Bard IVC Filters Prod. Liab. Litig.*, No. 15-2641, 2017 WL 6523833, at *6 (D. Ariz. Dec. 21, 2017) (permitting testimony on FDA regulations and the legal requirements the FDA may impose on manufacturers). The fact that he makes limited references to the law does not automatically render his opinions inadmissible. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible") (citation omitted).

Nor does Witz interpret the Administrative Services Master Contract ("ASA") and opine that Defendants failed to comply with its terms. *See* Doc. 282 ¶¶ 29–36. As such, he does not "summarize" evidence that "reads frightening like a judicial opinion". Doc. 266 at 9 (6:3–4). At most, Witz describes the provisions that are set forth in that agreement and how it represents a reasonable contract and arrangement for an employer to provide services to a retirement plan based on his role as a consultant and advisor to retirement plans. Doc. 282 ¶ 30. He is permitted to testify regarding these relevant facts, including the terms of the ASA, that form the basis

---

[3] "Doc." page references are to the CM/ECF header page number.

[4] Indeed, the DOL publishes this guidance to educate fiduciaries on their obligations and the applicability of ERISA standards to particular factual circumstances.  https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance. *See also* https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/retirement.

of his opinions. Fed. R. Civ. P. 26(a)(2)(B); *Berman v. Sink*, No.13-597, 2016 WL 8730672, at *8 (E.D. Cal. May 27, 2016) (permitting expert to interpret evidence that formed the basis for his opinions).

Although Defendants may disagree with the advice Witz provides to clients (*e.g.,* Doc. 282 ¶ 20), or claim that he failed to consider other legal authority, their challenges to the "underpinnings" of his opinions go to its weight. *See Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987); *Hangarter,* 373 F.3d at 1017 n.14. Defendants also are incorrect about the law. The principle that a corporate fiduciary must recuse itself from a fiduciary decision to hire an affiliated party for plan services to avoid violating § 1106(b) is set forth in 29 C.F.R. § 2550.408b-2(f). *See* 29 C.F.R. § 2550.408b-2(f) (example 7). DOL Advisory Opinion 97-03 notes that "it would generally be necessary to avoid violations" of § 1106(b)(1) and (b)(2) to have "an independent fiduciary" determine whether to pay expenses from plan assets. DOL Adv. Op. 97-03, 1997 WL 28100, at *4.

## II. Witz is sufficiently qualified to testify.

Rule 702 "embrace[s] more than a narrow definition of qualified expert". *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir.1994). Only "minimal foundation" is required. *Id.* "A witness can qualify as an expert through practical experience in a particular field[.]" *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991). "Any challenges to [an expert's] qualifications, including his lack of specialization, affects the weight of the testimony[.]" *Victorino v. FCA US LLC*, No. 16-1617, 2018 WL 2551312, at *5 (S.D. Cal. June 4, 2018) (citations omitted). A court abuses it discretion by excluding expert testimony "solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified." *In re Silicone Gel Breast Implants Prod. Liab. Litig.,* 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) (citation omitted).

Contrary to Defendants' assertions, Doc. 226 at 9–11, Witz has experience advising fiduciaries and employers regarding the process for an employer to seek

reimbursement of expenses from a plan. Doc. 282 ¶¶ 5, 9–10; Doc. 202-3 at 8–12 (40:6–41:9, 45:13–47:5), 34–35 (144:22–145:25); Declaration of Kurt Struckhoff, ¶ 2, Ex.1 at 211:25–214:1. He has assessed the reasonableness of *internal* and external fees charged to plans, including for a $4.2 billion defined contribution plan with over 100,000 participants. Doc. 202 ¶ 9; Doc. 202-3 at 7–8 (31:5–7, 33:7–9), 17–18 (59:13–60:1), 37 (216:11–24). Although he may not have been "directly" engaged by a client since 2004, Doc. 266 at 10 (7:11–17), Defendants ignore Witz's experience consulting with advisors of retirement plans pertaining to their clients seeking reimbursement of employer expenses, as well as his role as the Chief Fiduciary Officer of two advisory firms wherein he counsels the firms' advisors regarding whether their clients should seek reimbursement of employer expenses. Doc. 282 ¶ 10; Doc. 202-3 at 10–14 (45:13–49:18), 34–35 (144:22–145:25). Rule 702 is satisfied because his testimony will "advance[] the [Court's] understanding to any degree" of these issues. *Abarca v. Franklin Cty. Water Dist.*, 761 F. Supp. 2d 1007, 1029 (E.D. Cal. 2011). And his qualifications meet the "low" threshold for admissibility. *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. 10-544, 2011 WL 5417090, at *3 (N.D. Cal. Oct. 27, 2011) (*citing Hangarter,* 373 F.3d at 1015–16).

The fact that Witz has not served as an in-house fiduciary is not disqualifying because he is qualified on the subject matter. *Grabek*, Doc. 728 at 6 (although expert "may never have served as a fiduciary, he is still qualified to testify to industry standards"); *LaCava v. Merced Irr. Dist.,* No. 10-853, 2012 WL 913697, at *5 (E.D. Cal. Mar. 16, 2012) ("[w]hether an expert is the 'best' qualified or has sufficient specialized knowledge is generally a matter of weight"). This District also has found Witz's testimony reliable. *Tibble v. Edison Int'l*, No. 07-5359-SVW, 2017 WL 3523737, at *13 (C.D. Cal. Aug. 16, 2017) (testifying regarding a recordkeeper's ability to facilitate a share class change); *id.*, Doc. 541 (testimony).

In addition, Witz has experience performing administrative services for

thousands of defined contribution plans. Doc. 282 ¶¶ 2, 4–5, 63. He is
knowledgeable about the services to be performed both internally and outsourced.
Struckhoff Decl. ¶ 2, Ex. 1 at 63:20–66:6. He worked for third party administrators
until 2004. Doc. 282 ¶ 5; *contra* Doc. 266 at 10 (7:1) (incorrectly claiming his
experience "predates 2000"). As such, he has specialized knowledge regarding the
administrative services necessary to be provided to a retirement plan. Although
Defendants may claim that Witz lacks "particularized expertise", or that he does not
have enough years of experience in certain areas, those issues goes to the weight of
his testimony. *United States v. Garcia,* 7 F.3d 885, 889–90 (9th Cir. 1993).
Defendants can develop any purported "[g]aps" in his qualifications through cross
examination. *Abarca,* 761 F. Supp. 2d at 1028.

**III.     Witz offers reliable testimony.**

Defendants cannot credibly claim that Witz failed to consider relevant
information regarding the services performed by Northrop employees. The ASA
governing the services performed by Northrop's departments does not specify the
administrative services that Northrop employees putatively provided to the Plan.
Doc. 202-5. And Northrop failed to follow its terms by presenting a "description of
the services" and the "names, positions, and duties" of Northrop employees for
whom it sought reimbursement. Doc. 266-3 ¶¶ 70–72, 84–86, 88–92. Witz thus
relied on Northrop's internal records that described the services purportedly
performed. Doc. 202-3 at 79:1–10; Doc. 282 ¶ 62; Doc. 266-3 ¶ 100 n. 109 (*citing*
Northrop documents). One of these documents (NGC0286711) was the *only*
document that Defendants' expert relied on in forming her opinion regarding these
services. Doc. 176-2 ¶ 32 nn.28–29. He also reviewed job responsibilities of
Northrop employees and the services performed by third party service providers.
Doc. 282 ¶¶ 42, 62; Doc. 202-3 at 20–23 (66:16–67:16, 75:13–18, 79:1–10); Doc.
167-3 at 27 (80:7–11), 53–54 (263:23–264:20); Doc. 266-2 at 15 (95:11–16). The
fact that he did not recite all facts during his deposition only affects his credibility

and "does not necessarily mean that the analysis in his *report* was flawed." *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. 12-1106, 2013 WL 5402089, at *5 (N.D. Cal. Sept. 26, 2013).

Defendants erroneously claim that Witz was required to conduct a "forensic analysis" (from records that are not available in this case) and have personal knowledge from direct interactions with Northrop employees to testify regarding the non-recordkeeping services needed for the Plan. Doc. 266 at 12. He is not required to have "firsthand knowledge" to testify. *Daubert,* 509 U.S. at 592. Any perceived weaknesses in the "underpinnings" or factual foundation of Witz's testimony go to its weight. *Bergen,* 816 F.2d at 1352 n.5; *Tyco Thermal Controls, LLC v. Redwood Indus., LLC*, No. 06-7164, 2012 WL 2792435, at *4 (N.D. Cal. July 9, 2012). Even if Witz was unaware of a few facts during his deposition, experts may not be excluded "merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

Excerpts from Witz's deposition do not demonstrate a lack of understanding on "central points". Doc. 266 at 12. Witz recalled the four defined contribution plans sponsored by Northrop, Doc. 202-3 at 24 (87:11–14), which was consistent with the recordkeeping agreement, Doc. 170-63 at 9. Although he recalled the approximate number of Northrop employees who billed time to the Plan during his deposition, he provided those details in his written testimony and report. Doc. 282 ¶¶ 45–46, 61, 70; Doc. 266-3 ¶¶ 81, 103. The full-time equivalent number of Northrop employees billing time to the Plan is immaterial to Witz's opinions. *Cf.* Doc. 266 at 11–12. This is because he opines that the general day-to-day administrative functions performed by Northrop's benefits departments are overwhelming performed by outside recordkeepers, including the Plan's recordkeeper (Hewitt), and only four full-time employees at most would be necessary to perform non-recordkeeping services for the Plan. Doc. 282 ¶¶ 62, 77.

Witz bases his opinion that at most four full-time employees were needed to

perform non-recordkeeping services on almost 40 years of experience, including his specialized knowledge of providing administrative services to thousands of plans. Doc. 282 ¶¶ 61, 63. When asked at his deposition, he explained in detail the responsibilities of each of those four employees. Doc. 202-03 at 25–27 (104:18–106:3), 38–44 (249:14–255:24); *see also* Doc. 282 ¶ 64 (outlining those services). His opinion also is independently verified by Northrop's own consultant (TPI). Doc. 282 ¶ 66. Defendants claim that Witz improperly relied on this report "knowing that the relevant time" begins in 2010. Doc. 266 at 12 (9:28). However, Witz was an expert in *Grabek* that covered the administrative services provided from 2000 to 2009. As such, he was familiar with the non-recordkeeping services that were performed in 2007 and those since 2010. He also specifically noted that the same conclusion reached by TPI in 2007 would apply after 2010. Doc. 282 ¶ 66; Doc. 266-3 ¶ 104. Defendants present no evidence to rebut these conclusions.

Defendants also challenge the weight of Witz's experience by comparing the staffing that was required when he administered retirement plans. Doc. 266 at 13. Witz has adequately explained why more employees were required to administer 2,500 separate plans at his prior employer because those tasks were administratively more complex. Struckhoff Decl. ¶ 2, Ex. 1 at 248:3–23. Again, this kind of dispute addresses the weight of Witz's testimony, not its admissibility.

## CONCLUSION

Defendants' motion should be denied.

September 13, 2019                    Respectfully submitted,

By:  /s/ Kurt C. Struckhoff
Kurt C. Struckhoff (*pro hac vice*)
SCHLICHTER, BOGARD & DENTON LLP
*Lead Counsel for Plaintiffs*